UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MWATI MCKENZIE,

Petitioner,

v.

JAMES H. BRUTON, Warden,

Respondent.

Civil No. 00-2350 (PAM/JMM)

REPORT AND RECOMMENDATION

THIS MATTER is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254. These proceedings have been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it is recommended that the petition be summarily dismissed with prejudice pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.[1]

## I. BACKGROUND

On October 23, 1993, Petitioner was convicted in the state district court for Hennepin County, Minnesota, on two counts of first degree murder and one count of attempted murder. He was sentenced to life in prison, and he is presently serving his sentence at the Minnesota Correctional Facility at Oak Park Heights, Minnesota. (Petition, [Docket No. 1], p. 1.)

---

[1] The applicable language in Rule 4 provides as follows:

"If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."

DEC 06 2000

Following his convictions, Petitioner took a direct appeal to the Minnesota Supreme Court.[2] That Court affirmed Petitioner's convictions in a decision dated May 19, 1995. State v. McKenzie, 532 N.W.2d 210 (Minn. 1995). Petitioner sought certiorari review in the U.S. Supreme Court, but his petition was denied on October 10, 1995. McKenzie v. Minnesota, 516 U.S. 926 (1995).

Petitioner made no further effort to challenge his convictions until April 23, 1997, when he filed a post-conviction motion with the trial court. ("Petitioner's Response To Order Of The Court," [Docket No. 8], p. 2; Attachment "Report," p. 8.) The post-conviction motion was denied by the trial court, and Petitioner then filed another appeal with the Minnesota Supreme Court. On August 6, 1998, the Supreme Court rejected Petitioner's post-conviction appeal, and again upheld his convictions. McKenzie v. State, 583 N.W.2d 744 (Minn. 1998).

On July 6, 1999, Petitioner filed a second post-conviction motion. ("Petitioner's Response," p. 2; Attachment "Report," p. 9.) That motion was denied by the trial court on August 9, 1999. (Id.) Petitioner then took a third appeal to the State Supreme Court, but that appeal was dismissed (due to procedural default) on January 20, 2000. ("Petitioner's Response, p. 3.)

On October 20, 2000, Petitioner filed his present federal habeas corpus petition, which lists five grounds for relief. Those claims will not be addressed on the merits, however, because the Court finds that the instant petition is time-barred under 28

---

[2] Under Minnesota law, appeals in first degree murder cases are taken directly to the State Supreme Court, rather than the Minnesota Court of Appeals. Minn.Stat. § 632.14.

U.S.C. § 2244(d).

## II. DISCUSSION

On April 24, 1996, President Clinton signed the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), which effected significant changes in the federal habeas corpus statutes. One of those changes appears at 28 U.S.C. § 2244(d), which establishes a one-year statute of limitations for habeas corpus petitions filed by state prisoners seeking federal court review of a conviction or sentence. This new statute provides that:

> "**(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> **(d)(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted."

In this case, there is nothing in the record to suggest that clauses (B), (C) or (D) of § 2244(d)(1) would have any applicability. In other words, there is no suggestion

that the state created any impediment that prevented Petitioner from seeking federal habeas relief within the prescribed one-year limitation period, nor is there any suggestion that Petitioner's claims are based on any newly-recognized constitutional right or any new evidence that could not have been discovered earlier. Therefore, the one-year statute of limitations began to run in this case, pursuant to § 2244(d)(1)(A), when Petitioner's judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review."

Petitioner's judgment of conviction was finally upheld on direct appeal when the U.S. Supreme Court denied his request for a writ of certiorari on October 10, 1995. See Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998) (state criminal convictions are not final for purposes of § 2244(d)(1)(A) until certiorari has been denied, or the deadline for seeking certiorari has expired), cert. denied, 525 U.S. 1187 (1999). Thus, Petitioner's judgment of conviction became final for purposes of § 2244(d)(1)(A) on October 10, 1995.

The Eighth Circuit Court of Appeals has held, however, that the statute of limitations set forth at § 2244(d)(1) never begins to run any earlier than the date when the statute was enacted, which was April 24, 1996. Nichols v. Bowersox, 172 F.3d 1068, 1073 (8th Cir. 1999). Accordingly, even though Petitioner's conviction became final, for purposes of § 2244(d)(1)(A), on October 10, 1995, the statute of limitations did not actually began to run in this case until April 24, 1996. This means that the limitations period did not expire until April 24, 1997. Id. See also, Ford v. Bowersox, 178 F.3d 522, 523 (8th Cir. 1999) ("[i]n applying § 2244(d)(1) to cases where, as here, the judgment became final before the enactment of AEDPA on April 24, 1996, this Court has adopted a one-year

grace period, ending April 24, 1997, for the filing of habeas petitions").

Petitioner did not file his present petition until October 20, 2000, which was nearly four and a half years after the statute of limitations began to run in this case, and nearly three and a half years after the limitation period expired. It therefore appears, on initial examination, that the instant petition must be time-barred.

However, the Court must also consider the effect of the tolling provisions set forth at 28 U.S.C. § 2244(d)(2). Under that subsection, the statute of limitations is tolled, (i.e., it stops running), while state post-conviction proceedings are pending in the state courts. The tolling provisions of § 2244(d)(2) cannot aid the instant Petitioner, however, because his two state post-conviction proceedings did not toll the statute of limitations long enough to allow his current petition to be timely.

The statute of limitations ran for 364 days, from April 24, 1996 to April 22, 1997, before Petitioner initially tolled the statute by filing his first state post-conviction motion on April 23, 1997. The statute remained tolled from that date until August 6, 1998, when the State Supreme Court handed down its decision affirming the trial court's denial of the first post-conviction motion. See Mills v. Norris, 187 F.3d 881, 883-84 (8th Cir. 1999) (statute remains tolled during the entire period of time that post-conviction proceedings are pending in any of the state courts, including state appellate courts). The statute of limitations then began to run again on August 7, 1998, and it continued to run for another 333 days, until Petitioner tolled the statute once again by filing his second post-conviction motion on July 6, 1999. Thereafter, the statute remained tolled until January 20, 2000, when the Minnesota Supreme Court dismissed Petitioner's appeal in the second post-

conviction proceedings. The statute of limitations began to run once again on January 21, 2000, and this time it continued to run until September 19, 2000 – the date when Petitioner is deemed to have filed his present petition.[3] Thus, the statute of limitations was running for another 241 days, (January 21, 2000, to September 19, 2000), immediately before the commencement of this action.

In all, the statute of limitations was running in this case for a total of 938 days – 364 days before Petitioner filed his first state post-conviction motion, plus 333 days between the completion of the first post-conviction proceedings and the commencement of the second post-conviction proceedings, plus 241 days between the completion of the second post-conviction proceedings and the commencement of the present federal habeas case.[4] Needless to say, the 938 days that the statute of limitations was running in this

---

[3] Because Petitioner is entitled to the so-called "mail-box rule," (see Nichols v. Bowersox, 172 F.3d 1068,1077 (8th Cir. 1999)), his current petition is deemed to have been filed on the date when he gave it to prison officials for delivery to the Court, rather than the date when it was actually received and filed by the Clerk. Petitioner executed his petition on September 19, 2000, (Petition, p. 6), so that obviously is the earliest date when he could have given it to prison officials for mailing. While it seems likely that Petitioner did not actually attempt to mail his petition until sometime later, the Court will give him the benefit of the doubt and assume that he tried to file his petition on the same date that he signed it. Therefore, for purposes of § 2244(d), the present petition is deemed to have been filed -- and the statute of limitations finally stopped running in this case – on September 19, 2000.

[4] Petitioner might believe that his post-conviction motions did more than just temporarily stop the statute of limitations from running while the post-conviction proceedings were pending. He may think that filing a post-conviction motion actually 'resets the clock,' so that a prisoner gets a fresh new one-year limitation period that does not begin to run until the state post-conviction proceedings are completed. That, however, is simply not the case. As explained in Sorce v. Artuz, 73 F.Supp.2d 292, 294 (E.D.N.Y. 1999):

"The tolling provision of AEDPA does not allow the one year

case far exceeds the one-year (365-day) period allowed by § 2244(d)(1). Therefore, even when the tolling provisions of § 2244(d)(2) are taken into consideration, it is clear that the instant petition was filed far too late.

Because it plainly appears on the face of the petition that Petitioner is not entitled to federal habeas corpus review, it is recommended that this action be summarily dismissed pursuant to Rule 4. Moreover, because Petitioner is no longer eligible for federal habeas corpus relief, it is further recommended that the petition be dismissed with prejudice.

Finally, the Court notes that Petitioner has filed several collateral motions in this case -- (i) a motion seeking leave to proceed in forma pauperis, (Docket No. 2), (ii) a motion seeking appointment of counsel, (Docket No. 3), (iii) a "motion to place petition in abeyance," (Docket No. 4), and (iv) a "motion to bring forth issues that were dismissed and

---

> period to run anew each time a post-conviction motion is ruled upon. Instead, the toll excludes from the calculation of the one year period any time during which post-conviction relief is pending. [Citation omitted.] Thus, the provision stops, but does not reset, the clock from ticking on the time in which to file a habeas petition. It cannot revive a time period that has already expired."

See also Lucidore v. New York State Div. of Parole, No. 99 CIV 2936 AJP, (S.D.N.Y. 1999), 1999 WL 566362 at *4 ("Section 2244(d) does not state that the AEDPA's one-year statute begins to run anew after decision on a state collateral attack; such an interpretation would allow an inmate to avoid the effect of the AEDPA's one-year [statute] of limitations by bringing a belated state collateral attack"), aff'd 209 F.3d 107 (2nd Cir.), cert. denied, 121 S.Ct. 175 (2000); Broom v. Garvin, 99 Civ. 1083 (JSM) (S.D.N.Y. Apr. 26, 1999), 1999 WL 246753 at *1 ("the filing of a collateral attack in the state court tolls the AEDPA statute of limitations during the period that it is pending, but it does not commence a new limitations period").

not rule on by MN State Supreme Court due to procedural default," (Docket No. 5). Based on the Court's determination that Petitioner's underlying habeas corpus petition cannot be entertained because it is time-barred, it is recommended that each of these collateral motions be summarily denied.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Application for a Writ of Habeas Corpus, (Docket No. 1), be **DENIED**;

2. Petitioner's "Motion To Proceed Without Prepayment Of Fees And Affidavit," (Docket No. 2), be **DENIED**;

3. Petitioner's "Motion For Appointment Of Counsel," (Docket No. 3), be **DENIED**;

4. Petitioner's "Motion To Place Petition In Abeyance," (Docket No. 4), be **DENIED**;

5. Petitioner's "Motion To Bring Forth Issues That Were Dismissed And Not Ruled On By MN State Supreme Court Due to Procedural Default," (Docket No. 5), be **DENIED**; and

6. This action be **DISMISSED WITH PREJUDICE**.

Dated: December 5, 2000

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before December 20, 2000, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.