00CV2350 PAM/JMM

ORDER AND MEMORANDUM EXHIBIT G.

SCANNED
JUL 2 9 2005
DG
U.S. DISTRICT COURT ST. PAUL

G

STATE OF MINNESOTA | DISTRICT COURT
COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT

Mwati Pepi McKenzie,

Petitioner,

v.

**ORDER AND MEMORANDUM**
FILE NO. 92095956

State of Minnesota,

Respondent.

---

The above-entitled matter came on by submission before the Honorable Diana S. Eagon, one of the judges of the above-named court, on Petitioner Mwati Pepi McKenzie's Petition for Post-Conviction Relief at the Hennepin County Government Center, Minneapolis, Minnesota, 55487.

Petitioner Mwati Pepi McKenzie appeared on the briefs Pro Se; Robert Streitz, Esq., appeared on the briefs for and on behalf of Respondent State of Minnesota.

Now, therefore, based on the files, records, proceedings, and arguments of counsel:

**IT IS HEREBY ORDERED:**

1. That the Petition for Post-Conviction Relief is hereby **DENIED**.
2. That the attached Memorandum is hereby made a part of and incorporated into this Order.

*LET JUDGMENT BE ENTERED ACCORDINGLY*

Date: 12/16/02

BY THE COURT:
Diana S. Eagon
Diana S. Eagon
Judge of District Court

**MEMORANDUM**

This matter is before the Court Petitioner Mwati Pepi McKenzie's Petition for Post-Conviction Relief.

**Facts**

On October 23, 1993, a Hennepin County jury convicted Petitioner Mwati Pepi McKenzie ("Petitioner") of first-degree murder for the September 1992 shooting of Minneapolis police officer Jerry Haaf ("Haaf") twice in the back while Haaf was sitting at a table in a Pizza Shack restaurant. Petitioner appealed his conviction to the Minnesota Supreme Court, which upheld the conviction. State v. McKenzie, 532 N.W.2d 210 (Minn. 1995). Petitioner filed two motions for post-conviction relief, one in 1997 and the other in 1999, both of which were denied.

Petitioner now moves this court, again, to reverse his 1993 conviction. Petitioner argues that Judge Robert Lynn ("Judge Lynn" or "the Judge"), the Judge who presided over Petitioner's murder trial, violated the law and Petitioner's constitutional rights by either not responding to jurors' questions or by responding to them without Petitioner or his attorney present. In support of his motion, Petitioner advances part of the trial transcript and three photocopies of hand-written notes allegedly written by the foreperson of the jury that convicted Petitioner and presented to Judge Lynn. Petitioner alleges that Judge Lynn did not respond to or responded inappropriately to two of these three notes.

**Analysis & Discussion**

Under Minnesota law, "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief, the court shall promptly set an early hearing on the petition . . . ." Minn. Stat. § 590.04, subd. 1. Petitioner maintains that two notes

were passed from the jury to the Judge and that the Judge either did not answer the questions contained in the notes or answered them without Petitioner or his counsel present.[1] Petitioner offers no factual support of his allegation. He merely asserts that he recently received copies of the two notes which were sent to him from "the clerks office" [sic], that he had never seen the notes before, and that the trial record does not contain any reference to the notes. This is the sum of the evidence Petitioner advances in his effort to show the Court adequate support for his motion.

While Petitioner does attach to his brief what he alleges are the two jury notes, he offers no evidence that Judge Lynn ever answered those questions or that he did so outside Petitioner's or Petitioner's attorney's presence. Petitioner also alleges that neither he nor his attorney were informed of the notes. This allegation is conclusory, offered without any evidence whatsoever. Indeed, Petitioner's own brief acknowledges that he does not know whether Judge Lynn responded to (or received) the notes in question. He writes, "petitioner or counsel does not know what actually transpired or whether the responses to the notes <u>or lack thereof</u>, which ever [sic] the case may be, were harmful or harmless" [emphasis added]. Thus, Petitioner argues that Judge Lynn denied Petitioner his constitutional rights, but Petitioner is not sure exactly what Judge Lynn did that thus denied Petitioner his rights.

As Petitioner's bare allegations do not rise to the level of credible evidence of wrongdoing, no evidentiary hearing is required on those allegations. <u>Berg v. State</u>, 403 N.W.2d 316, 318 (Minn. Ct. App. 1987) (stating "[t]he facts alleged must be more than bald assertions or conclusory allegations without factual support.") (<u>See also</u> <u>Gassler v. State</u>, 590 N.W. 2d 769,

[1] Petitioner advances both arguments, stating, "petitioner or counsel does not know what actually transpired or whether the responses to the notes or lack thereof, which ever [sic] the case may be, were harmful or harmless." This acknowledgement of his own complete lack of knowledge as to what transpired undermines Petitioner's argument. <u>See infra</u>.

772 (Minn. 1999)) (stating, "Without factual support, . . . 'argumentative assertions' do not entitle appellant to either an evidentiary hearing or relief.")

The Petitioner's evidentiary burden is "a fair preponderance of the evidence." Hanley v. State, 534 N.W. 2d 277, 278 (Minn. 1995) (stating, "[a] petitioner seeking postconviction relief has the burden of establishing, by a fair preponderance of the evidence, facts which warrant a reopening of the case.") Petitioner submits no evidence of whether Judge Lynn responded to the two jury questions at issue. Petitioner admits that he does not know whether Judge Lynn responded to the jury's notes. Based on the scant evidence proffered, Petitioner is not entitled to an evidentiary hearing as the Petition has not placed any material facts in dispute. See, e.g., State v. Kelly, 535 N.W.2d 345, 347 (Minn. 1995).

As stated, supra, Petitioner fails to support his allegation adequately to raise a question of fact. However, even conceding, arguendo, that Petitioner had supplied the Court with adequate evidence, he would still not be entitled to relief. Petitioner cites Shields v. U.S., 273 U.S. 583 (1927) for the position that a judge's communication with a jury without the defendant present demands reversal of a conviction. Shields, however, is clearly distinguishable from the instant case. In Shields, the judge, without consulting with the attorneys, sent a jury back to deliberate as to Shields' guilt or innocence after the jury had declared itself "unable to agree" on Shields' guilt. The jury then came back with a guilty verdict. In the instant case, if Judge Lynn communicated with the jury without the defendant or his counsel present, such communication was a simple matter of clarification, not, as in Shields, a matter of whether a jury should be considered unable to reach a verdict and dismissed. The Shields court found that the judge's communication with the jury "had the effect of coercing the jury into rendering a verdict which they were plainly reluctant to return." Id. at 587. In the instant case, there is no suggestion in

Petitioner's moving papers that Judge Lynn's response to the jury's questions, if any, similarly coerced the jury to reach a verdict. Furthermore, the questions the jurors allegedly asked Judge Lynn were requests for clarification, not a declaration as to the jury's having reached or not reached a verdict. (See U.S. v. Mejia, 200 F.Supp. 322 (SDNY 2002)) (distinguishing Shields from cases in which "the Court's response was a mere reminder of the procedure already charged for jury communications." Id. at 330).

## Conclusion

Petitioner has not met his burden of providing the Court with sufficient credible evidence to raise a question of fact. Therefore, the Court declines to grant Petitioner's motion.

STATE OF MINNESOTA — DISTRICT COURT

COUNTY OF HENNEPIN — FOURTH JUDICIAL DISTRICT

---

MWATI PEPI MCKENZIE

Petitioner,

v.

STATE OF MINNESOTA

Respondent.

---

MEMORANDUM OF LAW

## I. FACTS

On October 20, 1993, the jury retired to the jury room for deliberations. (T.1471). During deliberations the jury sent the trial court three written notes (App.1-3).[1] The first note was sent and received by the court on October 20, 1993 at 2:25pm (App.1). It read; " Judge Lynn, we would like some clarification on some of the b... if possible pertaining to First Degree Murder charge aiding and abeting? " Foreman Juror #8.

The second note was sent and received by the trial court on October 21, 1993 at 9:15am (App. 2). It read; "Judge Lynn, would it be possible to get the original police statements of Loverine Harris, Richard and Olivia Gregory? " The Jury Foreman #8.[2]

The court never notified petitioner or his counsel about these notes nor

---

1 Petitioner or counsel were never made aware of notes 1 or 2. Petitioner discovered them recently. (APP. 4-6)

2 These two notes were sent by the jury and received by the court in the absence of counsel and petitioner. They were never informed at all about the notes although the notes were preserved and made a part of the record.

did the court make a contemporaneous record of what response if any was made to the jury with regards to their requests in these notes.

The third note was sent and received by the trial court on October 21, 1993 at 1:55pm and this note read; " In order to prove premeditation do we need to decide that they specifically went to the pizza shack to kill Officer Jerry Haaf we are trying to determine premeditaion. (R.E. premeditaion Pg. 19 3rd element). P.S. Jerome Haaf vs any Police Officer? " (App.3).

On October 21, 1993 at 3:03pm the court conducted a hearing in open court. Present were Mr. Widseth attorney for the state; attorney for Petitioner and Petitioner.

The court informed counsel and petitioner that, " At approximately 1:55 this afternoon I received a note from the Jury, which reads as follows:

> ' In order to prove premeditation do we need to decide that they specifically went to the Pizza shack to kill Officer Jerry Haaf? We are trying to determine premeditation. (R.E. premeditation Pg. 19, 3rd element) Thanks #37. Foreman #8 P.S. Haaf vs any police officer, #37).' " (T.1492).

Counsel for Petitioner then addressed the court and requested that the court , " simply ask the jurors to re-read their instructions." He reasoned that, " any kind of answer or change in instruction might direct the jury to answer affirmatively or negatively how to find premeditation. " (T.1493).

Counsel for the state addressed the court and stated, "...or another to the third element on page 19 regarding elements, merely conforms these instructions per the statute." (T.1493).

The court then states that it would, "...read jury instructions 11-01, which is the statutory definition of first degree murder with premeditation-intent. Then read the entirety of jury instruction guide 11-02, which is exactly as was given to the Jury, except for this:...The only words I'm changing is to add " or another " after the name Jerome Haaf." (T.1494).

The trial court then had the jury brought in and the court proceeded to read the instructions to the jury as stated above. (T.1494-97).

On October 23, 1993 the jury returned the verdict finding petitioner guilty of murder in the first degree, and not guilty of attempted first degree murder and premeditated first degree murder.

## II. THE TRIAL COURT PREJUDICIALLY ERRED IN RESPONDING TO QUESTIONS BY THE JURY DURING IT'S DELIBERATIONS WITHOUT NOTIFYING THE PETITIONER, THE ATTORNEYS AND WITHOUT MAKING A CONTEMPORANEOUS RECORD.

### A. Introduction.

A problem of trial practice in Minnesota that arises more frequently than it should as the result of the appeals courts reluctance to send a strong message to the trial courts that such practices will not be tolerated, is communications between the court and the jury during deliberations in the absence of the accused and not infrequently, as in this case his counsel and without a contemporaneous record.

The Confrontation Clause of the Sixth Amendment to the United States Constitution which is applicable to the states through the Fourteenth Amendment guarantees criminal defendants the right to be present at all stages of trial where his absence **might** frustrate the fairness of the proceedings. Faretta v. California, 422 U.S. 806,819. (1975).

In addition, the Due Process Clause protects a defendants right to be present in some situations even when neither witnesses or evidence is presented against the defendant. United States v. Gagnon, 470 U.S. 522, 526, (1985).

Correspondingly, Minn. R. Crim. P. §26.03 Sudv. 1(1), gives the defendant the right to be present at all stages of trial.

The right to be present under this rule is broader than those rights guaranteed by either the Sixth or Fourteenth Amendments. State v. Ware, 498 N.W. 2d 454,457 Minn. 1993).

The rule specifically states that the "...defendant shall be present at... every stage of trial..."

In the case of communications with the court and the Jury after deliberations have begun Minn. R. Crim. P. §26.03 Subdv.19(2),(3), requires that communications between the court and jury after deliberations have begun " should be in open court in the defendants presence." State v. Sessions 621 N.W.2d 751,755-56 (Minn.2001).

The rule specifically states : The Jury " shall be conducted to the courtroom" upon it's request to hear evidence or be informed of any point of law. These provisions are mandatory and " does not depend on the form or the substance of the courts response. State v. Sessions 621 N.W.2d at 756.

The Supreme court has cautioned district courts that a contemporaneous record must be made at each stage of trial with an emphasis on communications between the court and the jury during deliberations. Sessions, 621 N.W.2d at 756.

B. Analysis.

That such communications are entirely improper is settled. The leading case Shields v. United States, 273 U.S. 583 (1927) contained facts similar to those of the case here. In Shields counsel for the government and for the defendants had joined in a request to the court that the jury be held in deliberation until they should agree upon a verdict. Later in the deliberations the Jury sent a note to the judge advising him of their

verdict with regard to some defendants and their inability to agree about the other defendants. The judge sent back a note in response telling the jury they would also have to find these other defendants guilty or not guilty.

These notes were sent and received in the absence of Shields and his counsel, and they were not informed about the notes, although the notes were preserved and made a matter of record.

After the court of appeals had affirmed Shields conviction, the Solicitor General advised the Supreme Court that " the government is unable to find any satisfactory ground for opposing the Petition for Writ Of Certiorari." Shield, 273 U.S. at 587.

A unanimous court, reversed. It was enough for a reversal in the courts view, that the trial court had communicated with the jurors in the absence of the defendant.

Despite this clear rule against such private communications between court and jury, over 75 years ago, they continue to persist. the vital question here is under what circumstances they require that a conviction be set aside?

C. Standard of review.

1. Automatic reversal

Some states adopted the rule, even for civil cases, that a communication between court and jury of which counsel is unaware requires reversal without more. **Kersy Mfg. Co. v. Rozic, 222 A.2d 713 (1966)**. It held that because prejudice is always possible from such communications though the existence of prejudice cannot be demonstrated.

Traditionally even the Minnesota courts have held that a " defendant's absence from the critical stages of his trial merits automatic reversal."

**State v. Bouman, 354 N.W.2d 1,8 (Minn.1984)**.[3] There are cases both federal and state that hold that a defendant denied his right to be present at every stage of the proceedings need make no showing of prejudice to obtain reversal.

**2. Must show prejudice**

There are cases that seem to impose the burden on the defendant to make " some plain showing " of prejudice. **State v. Ware, 498 N.W.2d 454,457-58 (Minn. 1993)**.

**3. Requiring the impossible**

Such rule would in many cases as it would in this one, provide no protection for a defendant. To require him " to show something as prejudicial on which the record is silent, and defendant had no opportunity to hear , would be requiring the defendant the impossible. Such is not the law. **Fina v. U.S. 46 F.2d 643,644 (10th Cir. 1931); State v. Charles, 634 N.W. 2d 425 (Minn. App. 2001)**.

**4. The Chapman Rule**

**a. Harmless beyond a reasonable doubt**

It has long been held that " before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." **Chapman v. California, 386 U.S. 18,24 (1967)**.

3 Responding to deliberating jury's question is a stage of trial requiring defendants presence. **State v. Sessions, 621 N.W.2d 75.**

5. The Mattox Rule

a. Unless harmlessness is made to appear

In any event the rule there announced is consistent with the majority view on the consequences of communications between court and jury. the Supreme Court long ago said that they " invalidate the verdict, at least unless their harmlessness is made to appear." Mattox v. U.S. 146 U.S. 140, 150 (1892).

An infusion of these two rules have been adopted by the State of Minnesota courts and the 8th circuit. Rice v. U.S. 356 F.2d 709 (8th Cir. 1966) " error of court in sending oral answer to jury outside of presence of defendants and their counsel required reversal, where there was no affirmative showing of lack of prejudice."

" The test to determine if the communication was prejudicial is whether or not the error affected the result; if it did not, it is not reversible error." State v. Kelly, 517 N.W.2d 905 (Minn.1994).

D. Potential Prejudice to Petitioner.

1. Notes 1-3.

Notes one and two sent by the jury requested clarification of the law and to see evidence pertaining to the first degree murder charge in count II, the only count petitioner was found guilty of. In note two specifically the jury wanted to review the statements of witnesses who testified with regards to that count of the indictment. Petitioner or counsel was never

informed about the existence of these notes. The court held no hearing relative to these notes, and there was no contemporaneous record made of a response to these two notes.

Conversely, when the court received note three it held a hearing, informed counsel and petitioner of the contents of the note, allowed counsel an opportunity to be heard, brought the jury into open court and responded to the note in detail with counsel and petitioner present on the record.

Note three requested information relating to premeditated murder one of the counts petitioner was found not guilty of. It is apparent by the courts actions with regards to this third note that it was fully aware of the laws, rules and procedures that the court is required to adhere to when it receives a written question in the form of a note from a jury during deliberations.

Why the court in this case failed to follow those procedures when it received the first two notes or what if any response was made to the jury relative to those notes we may never know, but based on the fact that this jury found petitioner not guilty of the counts in which the court did follow the procedures and provided a proper response it's reasonable to conclude that had petitioner been afforded his rights under the law with regards to those first two notes this jury may have found him not guilty of that count as well..

E. <u>Matter Of Record Exact Contents Unknown.</u>

If the communication is part of the record and it's substance is proper, then it can be said affirmatively that the error was harmless. <u>Rogers v. United States, 422 U.S. 35,40 (1975): State v. Kelly 517 N.W.2d 905,908</u>

(Minn. 1994).

But if the court makes no contemporaneous record and it is impossible to be sure exactly what was said to the jury, either because the message was delivered orally through a third person or for some other reason the communication is not part of the record, reversal must follow.

Wheaton v. U.S. C.C.A.8th, 1934 133 F.2d 522,527. The government having admitted that a communication between the bailiff and the jury had taken place had the burden of establishing that the communication was in fact harmless. The affidavit of the bailiff was not competent proof that the communication was harmless, and was not a sufficient basis for the determination of the trial court that no prejudice had resulted."

State v. Shifsky, 69 N.W. 89, (Minn. 1955). " Although where the record is silent as to the possibility of harm, a presumption generally favors the defendant and a new trial is granted. "

The United States Supreme Court held that a conviction could not be affirmed where, " we do not know from this record, nor does the petitioner know what actually transpired, or whether the incidents that may have occurred were harmful or harmless." Remmer v. U.S., 347 U.S. 227,229 (1954).

CONCLUSION.

In this case the record is silent as to what transpired relative to the jury's requests in notes one and two and petitioner nor counsel was ever made aware that the notes even existed. Therefore petitioner or counsel does not know what actually transpired or whether the responses to the notes or lack thereof, which ever the case may be, were harmful or harmless.

The Minnesota Court of Appeals held in dictum as far back as 1984 that " defense counsel and prosecutor should **always** be notified whenever a jury returns with a question or a request to review testimony or other evidence. " **State v. Farr** 357 **N.W.2d at** 167 **(Minn. App. 1984)(citing Mnn. R. Crim. P. § 26.03 subd. 19(2).**

In a most recent case the Minnesota Court of Appeals in **State v. Hendry, 636 N.W.2d 158 (Minn. App. 2001)** stated, " We conclude that the mere failure to notify the attorney's when a jury asks a question is not error as a matter of law, however advisable it might be as a matter of practice. Rather, the attorney's **must** be notified when the jury asks for a review of testimony or other evidence, **Minn. R. Crim. P. § 26.03 subd. 19(2)(1).** or when the jury desires to be informed on a point of law, **Minn. R. Crim. P. § 26.03 subd. 19(3)(1)."**

Because the jury in this case asked to review evidence [ the statements of witnesses Loverine Harris, Richard Gregory, and Olivia Gregory ] and asked to be informed on a point of law [ "...laws pertaining to first degree murder charge aiding and abetting ] the district court erred as a matter of law. See **Hendry, 636 N.W.2d at 165.**

Therefore, it was error as a matter of law for the trial court to receive these communications from the jury and either respond or not respond whichever the case may be and then fail to give notice to petitioner or counsel for petitioner, failing to make a record, suppressing or acquiescing in the suppression of these notes especially given the substance of these communications. And because the court made no record of these communications and suppressed knowledge of these notes for nine years petitioner was unable to avail himself to any sort of appellate review with respect to these communications.

In a situation such as the one before the court today, the law is clear in this country, in this circuit, in this state, "... if the jury asks to review evidence, or desires to be informed on a point of law and the defendant or his counsel is not notified of the communication and for some reason the communication is not part of the record, **reversal must follow.**"

Thus Petitioners conviction should be vacated and the charges dismissed with prejudice or in the alternative remanded for a new trial.