00CV2350 PAM/JMM

EVIDENTIARY HEARING TRANSCRIPTS EXHIBIT I

SCANNED
JUL 29 2005
DG
U.S. DISTRICT COURT ST. PAUL

I

I

STATE OF MINNESOTA | DISTRICT COURT

COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Mwati Pepi Mckenzie,

Petitioner/Appellant,

DISTRICT COURT FILE 92095956
APPELLANT COURT FILE C303321

vs.

**TRANSCRIPT OF PROCEEDINGS**

State of Minnesota,

Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The above-entitled matter came duly on for hearing before The Honorable Diana S. Eagon, one of the Judges of the above-named Court, on December 3, 2003, and December 16, 2003, at the Public Safety Facility, City of Minneapolis, State of Minnesota.

A P P E A R A N C E S

Robert J. Streitz, Esq., Assistant Hennepin County Attorney, appeared as counsel for and on behalf of the Respondent, State of Minnesota.

Pepi Mwati Mckenzie, Petitioner/Appellant, appeared pro se.

Clerk: Barbara Tickner

Court Reporter: Carole J. Smith

WHEREUPON, the following proceedings were duly had:

# I N D E X

WITNESSES:

December 3, 2003
Judge Robert Lynn
Direct Examination by Mr. Streitz..............13
Cross-Examination by Mr. Mckenzie..............25
Redirect Examination by Mr. Streitz............48
Recross-Examination by Mr. Mckenzie............49
Further Redirect Examination by Mr. Streitz.....51
Further Recross-Examination by Mr. Mckenzie.....52

December 16, 2003
Arthur Martinez
Adverse Direct Examination by Mr. Streitz.......74
Cross-Examination by Mr. Mckenzie...............82
Adverse Redirect Examination by Mr. Streitz.....87
Recross-Examination by Mr. Mckenzie.............89

Michael McGlennen
Adverse Direct Examination by Mr. Streitz.......93
Cross-Examination by Mr. Mckenzie.............103
Adverse Redirect Examination by Mr. Streitz....114
Recross-Examination by Mr. Mckenzie...........118

Robert Streitz
Adverse Direct Examination by Mr. Mckenzie.....131
Cross-Examination by Mr. Widseth .............145
Adverse Redirect Examination by Mr. Mckenzie...154

EXHIBITS:

Exhibit 1 -
Offered....................................22
Received...................................22

Exhibit 2 -
Offered....................................24
Received...................................25

Exhibit 3 -
Offered....................................24
Received...................................25

Exhibit 4 -
Offered....................................66
Received...................................67

Exhibit 5 -
Offered....................................66
Received...................................67

Exhibit 6 -
Offered....................................84
Received...................................84

Exhibit 7 -
Offered....................................85
Received...................................85

Exhibit 8 -
Offered...................................102
Received..................................102

Exhibit 9 -
Offered...................................108

Exhibit 10 -
Offered...................................120
Received..................................121

Exhibit 11 -
Offered...................................123
Received..................................124

THE COURT: This matter was scheduled for hearing at 1:30. I just want to make sure there is no one here representing Mr. McKenzie. Is that correct? Nobody has come to my attention in that regard, but I just wanted to make sure and I was going to wait until 1:30, since no one had indicated to me that they were representing Mr. Mckenzie. And it is my understanding Mr. Mckenzie is on his way.

Are you Mr. Mckenzie?

MR. MCKENZIE: Yeah.

THE COURT: On there (indicating) there is a microphone. So let me just indicate we will call the case, State of Minnesota, Plaintiff, versus Mwati Pepi Mckenzie, Defendant. The Court file number -- trial file number 92095956, and the Supreme Court number C303321. The record should reflect that Mr. Mckenzie is here representing himself. Also present is the Assistant Hennepin County Attorney. If you would state your name for the record.

MS. STREITZ: Good afternoon, Your Honor, Robert Streitz, S-T-R-E-I-T-Z.

THE COURT: The matter is before the Court pursuant to the Order of the Supreme Court which indicated that the trial court should conduct an evidentiary hearing and issue Findings and Conclusions

with respect to the trial court's handling of notes one and two. Those were notes submitted by Mr. Mckenzie for his appeal for the post-conviction relief, as well as when Mckenzie and/or his counsel first knew or should have known about issues raised by the handling of those two notes.

Since receiving this Order from the Supreme Court, the Court has received some motions with respect to Mr. Mckenzie from Mr. Mckenzie. And one of those first matters which I want to deal with is Mr. Mckenzie's request to remove Mr. Streitz as the attorney representing the State at this time. And Mr. Mckenzie, I have read your Motion and I will give you five minutes to argue your Motion with respect to the removal of Mr. Streitz.

MR. MCKENZIE: All right. On November 4th I received a letter from Mr. Streitz. Enclosed was a copy of I guess Judge Lynn's side notes, notes that he kept during the trial that weren't part of the record. And in those notes I noticed that in the process of these notes being passed from the jurors to the Judge, the Judge contacted Mr. Streitz, he contacted my counsel, McGlennen. It says McGlennen on here, but it specifically on -- you should have a copy of this.

THE COURT: I do, sir.

MR. MCKENZIE: On 10/20/93 at 2:25 when the jurors asked for clarification on aiding and abetting in first-degree murder, it says specifically, "phoned Streitz." And I guess whatever the conversation was, he okayed it. So my understanding of the Rules of Court in the United States v. Shields, they are not supposed to have communications with the jurors without me being present. I was supposed to be in court. He is well aware of the Rules of Court. He has been in court over 10 years every day except probably weekends, and I want to know why I wasn't called or ask him why they had this communication. It is my counsel, the Judge, and the prosecutor. That is collusion. That is collusion all day. And he knew that he knew about those notes when he filed his brief. I have his brief right here (indicating).

And I -- excuse me -- can I get some water, please? Because my throat is dry.

THE COURT: I see. I will have the Sheriff's Department -- I am unclear as to what their procedure is with respect to water for the defendant. We will make sure that you get some water, Mr. Mckenzie.

MR. MCKENZIE: Okay. (Deputy handing

cup of water to Mr. Mckenzie.) Well, like I was saying, this brief that he filed on October 11, 2002, I mean from reading the brief, I came to the conclusion that, you know, he didn't know anything about what happened. But then when I get the Judge's side notes, he knew. He communicated with the Judge about the whole situation. Whatever the discussion was the record is silent, so I don't even know what happened.

And now 11 years later he is coming and saying, well, it is a harmless error, you know what I am saying? And he is stating all these cases that are pretty much irrelevant and don't -- I don't know why he stated them, but the point is according to Minnesota Rules of Criminal Procedure 26.03, subd. 19(2)(1), Federal Rules of Criminal Procedure 43(a), Minnesota Rules of Professional Conduct 3.8(d), 8.4 (a),(c),(d),(f) all those tell me he shouldn't be representing the State because it is a conflict.

I am sure if the State Supreme Court would have known that Streitz, my counsel, and the judge all colluded together and convened together about this situation and these notes, I would have a new trial right now. I wouldn't -- they sent me back to kind of clear up why my counsel didn't know about it, what is taking so long, do you understand what I am saying? So

he -- I mean, he should be removed and this case should be vacated right now. I should have a new trial right now, because of what those three did.

THE COURT: I just need to deal with the one issue right now that you are dealing with about Mr. Streitz being removed as the attorney.

MR. MCKENZIE: Right.

THE COURT: And we will get to your other issues, okay?

MR. MCKENZIE: Okay.

THE COURT: Mr. Streitz, anything you wanted to add about that?

MS. STREITZ: Yes, Your Honor. When I received the Motion from the defendant I looked up in the Code of Professional Responsibility what his allegations would refer to, 3.8(d), and I don't have them with me, but they have to deal with Brady material. I fail to see how Judge Lynn's notes --

MR. MCKENZIE: No, no, they don't have --

THE COURT: Excuse me, Mr. McKenzie. When he is done I will give you a chance, but you can't interrupt him right now, okay?

MR. MCKENZIE: All right.

MS. STREITZ: -- what Judge Lynn's notes

have to do with any Brady material with respect to 8.4 (a), (c), (d) and (f), those are not -- what is referred to in those Rules has nothing to do with his claims here. They are irrelevant and I would oppose his Motion.

THE COURT: Mr. Mckenzie, I said I would give you an opportunity to respond.

MR. MCKENZIE: Well, can we get a book to clarify that then since he doesn't have a book and I don't have a book? Let's clarify it and read out of the book exactly what his -- the Minnesota Rules of Professional Conduct states. But besides that, okay, the Minnesota Rules of Court 26.03 19(2)(3), those Rules are enough. Those Rules are principles, common law principles, that says what he did was wrong. How can he convene with a judge regarding notes that -- not only just notes, but these are notes dealing with evidence, notes dealing with questions of law. So how can they convene together and then he says that there is no conflict? There is a conflict of interest right there. The Minnesota Rules of Criminal Procedure is clear. It is clear.

THE COURT: The Court will rule that Mr. Streitz is not removed as the attorney in this matter. And then we will get onto the underlying issue that Mr.

Mckenzie raised and which was brought to the Supreme Court, and that had to deal with the notes that he is talking about. Mr. Streitz.

MS. STREITZ: Your Honor, I don't know how the Court would like to proceed. I, in an effort to expedite this whole matter, have asked Judge Robb Lynn, a colleague of yours from Hennepin County District Court who presided over this case, to appear with his log book that contains his contemporaneous notes I believe of all the events occurring in the trial of the defendant, including references to the two notes in question and his handling of those. And if the Court would want me to inquire of the Judge some questions, I would certainly do that.

THE COURT: Well, Mr. Mckenzie has certainly raised the issue as to those two particular notes from jurors. And I guess at this point I take it there is not a dispute that two notes were delivered, and the dispute arises as to what happened and that Mr. Mckenzie is clearly indicating, as I understand it, sir, that you didn't know anything about these notes?

MR. MCKENZIE: It wasn't three notes, it was four. I just found that out, too.

THE COURT: Okay.

MR. MCKENZIE: So there is a note

missing. There is a note that wasn't either put in the file or thrown away, or whatever happened to the note I don't know, but there is a fourth note now.

MS. STREITZ: Well, Your Honor, the State's position is the defendant raised the first two notes. Those are the ones that the Supreme Court sent down and the State is not about to engage in a post-conviction evidentiary hearing on the installment plan. We are prepared to address what the Supreme Court said we are to address and I would call Judge Lynn if the Court grants me permission.

THE COURT: And let me indicate to Mr. Mckenzie the purpose of the hearing today is the Supreme Court's Order that I conduct an evidentiary hearing as to the two notes. Now whether there is a fourth note and whether that is another matter, that clearly is something else. Today we are only going to deal with the two notes.

MR. MCKENZIE: I understand. I would just like that put on the record then.

THE COURT: It is on the record and you have made the record for any future appeal. Then with that, I will have Mr. Streitz then call Judge Lynn so we can find out what happened.

MS. STREITZ: Judge Lynn.

THE COURT: The clerk will swear you in.

**ROBERT H. LYNN,**

after having been duly sworn, was examined and testified on his oath as follows:

MR. MCKENZIE: Excuse me. Before we go on, can we go over my witness list or the people that I need subpoenaed?

THE COURT: We can do that as soon as we get done with Judge Lynn, because if it appears you are going to need some more people we can maybe have it another day, because obviously I haven't subpoenaed them yet for today.

MR. MCKENZIE: Yeah, well, I mean, it wouldn't make sense to have him here and then -- I mean, wouldn't it make sense -- to me, it makes more sense that all this happen in one day, all the witnesses come one after another. I mean --

THE COURT: Sir, we will see when he is done testifying if we need more, and I indicated to you that we will discuss that at that time.

MR. MCKENZIE: All right.

THE CLERK: State your full name for the record, spelling your first and last names, please.

WITNESS LYNN: It is Robert H. Lynn. First name, R-O-B-E-R-T. And the last name, L-Y-N-N.

THE COURT: Mr. Streitz.

By Mr. Streitz:

Q. Good afternoon, Judge Lynn.
A. Good afternoon.
Q. So the record is clear, you are a Hennepin County --

MR. MCKENZIE: Excuse me. Could I get a pencil or pen, so I can make side notes?

THE COURT: He is entitled to make some notes.

MS. STREITZ: Maybe if we find out if there is anything else that he wants, Judge, so that I don't get constantly interrupted I would appreciate that.

MR. MCKENZIE: Well, I mean, if they would let me come in here prepared and stop withholding my legal documents and give me the stuff I need to work with. You should take that up with the Sheriff's Department.

THE COURT: Mr. Mckenzie, I am the one in charge here. You have asked me for something to take some notes with. I am going to make arrangements for you to have that.

MR. MCKENZIE: I apologize for that.

THE COURT: He needs to be able to take some notes. Do you have paper, Mr. Mckenzie?

MR. MCKENZIE: Yes.

THE COURT: You have paper?

MR. MCKENZIE: Yes.

THE COURT: He just needs something to write with.

(Deputy handing Mr. Mckenzie a pencil)

THE COURT: Mr. Mckenzie, you have a pencil there and you have your own paper. Mr. Streitz.

MS. STREITZ: Thank you.

By Mr. Streitz: (Continuing)

Q. Judge Lynn, you are a judge of Hennepin County District Court?

A. I am.

Q. How long have you been on the bench?

A. Fifteen and a half years.

Q. You will have to help me out with the math. Back in 1993, you presided over the trial of State v. Mwati Pepi Mckenzie?

A. Yes, I did.

Q. And at that time, you would have been on the bench how long?

A. Well, I started in August of '88.

Q. So --

A. Five years.

Q. During the course of that trial -- which you presided

over from start to finish, correct?
A. That is correct.
Q. Did you keep a log of the events, I suppose a diary if you will, that took place during the course of that trial?
A. Yes, I did.
Q. And was that from start to finish?
A. It was.
Q. A couple of weeks ago did I send you a letter with respect to appearing today to provide the Court some information relative to two notes that were filed during the course of the jury's deliberation in this matter?
A. Yes, you did.
Q. And did you consult your log that you kept during the course of the trial of the defendant to refresh your memory as to what was done with those two notes?
A. Yes.
Q. And did you bring your log with you today?
A. I have it with me, yes.
Q. And the Supreme Court is interested in two notes. And I have taken the liberty of making copies here, so that we can make sure that references that you make from your log correspond to the two notes in question.
A. All right.

Q. Does your log have any notations for a note that was I guess in the Supreme Court opinion referred to as the first note, which is a note received by you at 2:25 p.m. on October 20th, 1993, that reads as follows: "Judge Lynn, we would like some clarifacation [sic] on some of the bylaws if possible - Pretaining [sic] to First degree Murder charge - Aiding & Abeting [sic] Foreman, Juror #8."?
A. Yes, I do have those notes.
Q. And can you read into the record what your log states happened with respect to that note?
A. My log is for 10/20/93 at 2:25. I wrote, "Note from jury - requesting 'clarification' of aiding & abetting and Murder I - Phoned McGlennen - he wants me to just to say they have the law - Phoned Streitz - ok -"
Q. First of all, who is McGlennen?
A. That is Michael McGlennen. He was co-counsel representing Mr. McKenzie at trial.
Q. And, of course, Streitz would be me?
A. That is true.
Q. And so there was no consultation with anyone other than Mr. McGlennen, the defense counsel, and myself and yourself?
A. And those were by telephone, yes.
Q. And I take it from your note that it was Mr. McGlennen

that must have said he wants you "to just say they have the law"?

A. That is what my notes reflect, yes.

Q. Now that particular note, and I do have a copy of it here, does that appear to correspond to the note you have just referred to?

A. Yes, it does.

Q. Would your response have been any different -- well, first of all, then what was your response to the jury?

A. That my notes again, and I am relying primarily on my notes, I have got written down 2:40 p.m. And again my notes read, "Answer: You have the instructions on the issue." And that is what I would have communicated back to the jury in writing.

Q. Any other references in your log with respect to that particular note, note number one?

A. No, there are not.

Q. The notes that you have just read into the record relative to note number one --

THE COURT: Could I just interrupt a moment. I just want to make sure I heard you correctly. When you indicated that you have the instruction on the issue, and then you communicated that in writing to the jury, is that what you said?

WITNESS LYNN: Well, that would be my

recollection. I did not write that down.

THE COURT: Okay.

By Mr. Streitz: (Continuing)

Q. In these notes that you have just referred to, were they made contemporaneously with the actions that they reflect?

A. Yes, they were.

Q. Judge Eagon just asked you whether or not you actually were face-to-face with the jury when you gave this answer, or if you sent them some other type of communication, and you were telling her you don't recall that?

A. Well, I know it was not face-to-face.

Q. Okay.

A. That I do know.

Q. And do you recall at the time if either the defense counsel or myself protested in any way the way you were handling that?

A. No, you both agreed to it.

Q. Judge Lynn, given the nature of the question posed to you by the jury foreperson at that time, note number one, would your response have been any different had the defendant been present during the conversations as to what to do with their question?

A. No, it would not have.

Q. Why is that?
A. Well, both -- two reasons. I would say one is that both you representing the State and Mr. McGlennen representing Mr. Mckenzie, agreed that this question should not be answered. Apart from that, the jury was given the full instruction of law as it related to the elements of the crime charged. The question they asked asking for some clarification doesn't say what the issue was or what their problem was. And given all of that, I would tell them in any case, and in this case in particular, that they must rely on the instructions they have on the issue.
Q. Let's say hypothetically either Mr. McGlennen or myself or the defendant had he been present wanted you to tell the jury something different at that point, based on your experience and your responsibilities as a judge --
MR. MCKENZIE: Can I object to that, please.
THE COURT: Excuse me. What is your --
MR. MCKENZIE: Can I object to that he - - hypothetically we are dealing with reality here. We are not going back 11 years ago and telling this man to imagine what he would have done. He is saying what he would have done. He didn't put it on the record.
THE COURT: And I will sustain your

objection, Mr. Mckenzie. Mr. Streitz.

By Mr. Streitz: (Continuing)

Q. Does your log also have reference to the second note in question, which was a note that says, "Judge Lynn, Would it be possible to get the original police statements of Loverine Harris, Richard and Olivia Gregory?" And it looks like it is signed, "The Jury" and then "Foreman [sic] #8." Received by you 10/21/93 at 9:15 a.m.?

A. I do have a note reflecting that question.

Q. And again the questions I am going to ask you pertain to what actions, if any, you took with regards to that note. Were those actions were they made contemporaneous -- did you note them contemporaneous with your actions?

A. Yes, I did.

Q. Can you tell the Judge what actions were taken with respect to that note number two?

A. Well, again if I can maybe just read from my notes. I indicate that at "9:00 Jury deliberations continued. 9:15 - Question requesting police statements of L. Harris, Richard and O. Gregory." I wrote then, "Talked to counsel. Answer: No addl. [sic] evidence."

Q. When you made the notation with respect to "Talked to counsel" what does that mean?

A. I am referring again to you and Mr. McGlennen.
Q. And when you say, "Answer," was that the answer you gave to the jury?
A. It is a paraphrase of whatever I sent in was you are not going to get those statements. No additional evidence.
Q. If either counsel -- or why was it that you gave that answer?
A. Again, the same reasons. One is that both counsel, you and Mr. McGlennen on behalf of Mr. Mckenzie, agreed that that was the proper response. And secondly, these are police statements of witnesses which were not introduced, were not evidence in the case. And in any event, the jury would not have them to consider.
Q. And what if any of the parties wanted a different response from you?
A. My answer would have been the same that the jury is not entitled to have these police statements and I would not have sent them in.
THE COURT: Judge, I had an exhibit. Should I mark it PC number 1?
THE COURT: You can start with number 1.
(Whereupon, Exhibit 1 is marked for identification.)
By Mr. Streitz: (Continuing)
Q. Judge Lynn, I want to show you what I have marked as

Exhibit 1 for purposes of this hearing and ask you if you recognize it?

A. I do.

Q. And that is what, sir?

A. It is a copy of my entries with regard to the jury notes in question. They come from my log of cases I tried in the year 1993. It also, of course, includes the matter of State v. Mckenzie.

Q. And does that particular exhibit reflect the true notes and your actions with respect to those that you have just testified to?

A. Yes, it does.

Q. So that is a true and accurate copy of your original log before you?

A. It is.

MS. STREITZ: Mr. Mckenzie, do you want to see this?

MR. MCKENZIE: I have got a copy. Thank you.

MS. STREITZ: I would offer this into evidence for purposes of this hearing, Your Honor.

THE COURT: Any objection, Mr. Mckenzie?

THE DEFENDANT: No, ma'am.

THE COURT: All right, it is received.

By Mr. Streitz: (Continuing)

Q. The log that you have been referring to and reading from this afternoon, Judge Lynn, is that a log -- is that a procedure that you used back then with respect to all trials you were in and actually still use today?

A. It was then and I still do today, yes.

Q. The notes in question -- and again I refer to it as notes one and two, appear to have something stamped on the top of them. What does that "filed" mean?

A. That means that these notes were filed with the District Court on the date stamped on here. Those are usually filed by my staff.

Q. And the date stamped on them?

A. Both of them are date stamped October 26th, 1993, at 3:35 p.m.

Q. So a mere day or two after the verdict in this case?

A. The verdict was rendered the 23rd of October, so, yes, three days later.

Q. So these obviously were in the District Court file at the time the defendant would have appealed his conviction?

A. Well, they certainly were there as of the date on the date stamp, yes.

MS. STREITZ: I have no further questions at this time of Judge Lynn.

THE COURT: Did you want to introduce

those two exhibits, counsel?

MS. STREITZ: Well, I could, Your Honor. I think they are part of the record already, but I certainly can.

THE COURT: Well, just for purposes of Mr. Mckenzie and for yourself should there be an appeal of this Court's decision, perhaps that would be a clearer way for it to go on up.

MS. STREITZ: Okay.

(Whereupon, Exhibit 2 and Exhibit 3 are marked for identification.)

MR. MCKENZIE: What is that the note?

THE COURT: No, the notes.

MR. MCKENZIE: Which one?

THE COURT: Both. We will have them identified, sir, for your benefit and for the Court's benefit.

MS. STREITZ: What I will mark as Exhibit 2, Your Honor, would be the note dated 10/20/93 at 2:25 p.m. And that would be consistent with how the Supreme Court's decision referred to it as note number one.

THE COURT: All right. Mr. Mckenzie, Exhibit 2 is the note dated 10/20/93, 2:25 p.m. Any objection to that?

MR. MCKENZIE: No.

THE COURT: All right.

MS. STREITZ: And Exhibit 3 would be the note referring -- excuse me -- dated 10/21/93 at 9:15 a.m.

THE COURT: Mr. Mckenzie, Exhibit 3, note dated 10/21/93 at 9:15 a.m., any objection to that?

MR. MCKENZIE: No.

THE COURT: All right, that is admitted. And now, Mr. Mckenzie, you may ask the witness questions.

MR. MCKENZIE: Let me get my stuff in order first.

THE COURT: All right.

CROSS-EXAMINATION

<u>By Mr. Mckenzie</u>:

Q. How are you doing?

A. Fine.

Q. All right. The first question is as a judge are you familiar with the rules of court?

A. Yes.

Q. Could you explain them to me?

A. Well, there are a lot of rules.

Q. The basic rules dealing with a defendant's right to be

present, are you familiar with those rules?
A. Yes.
Q. Could you explain them, put them on the record for me, explain them?
THE COURT: Mr. Mckenzie, that is not a proper question. So you have to ask him about a specific rule, not for him to state all the rules for you.
By Mr. Mckenzie: (Continuing)
Q. I would like the Minnesota Rules of Court 26.03?
THE COURT: The one particular Rule of Court, 26.03?
MR. MCKENZIE: 26.03.
THE COURT: Rules of Criminal Procedure?
MR. MCKENZIE: Exactly.
THE COURT: I will have my law clerk find it. Do you have a question while he is doing that for your benefit?
MR. MCKENZIE: I don't want to get sidetracked. I will wait.
THE COURT: Okay.
MS. STREITZ: It should be at page 1064, if we have the same book.
THE COURT: 26.03 you wanted, sir?
MR. MCKENZIE: Yes, ma'am, and all the

subdivisions that go with it. 26.03, 19, subdivisions 2 and 3. 26 -- ah, okay, that is it.

THE COURT: Mr. Mckenzie, I am going to interrupt your questioning of Judge Lynn. Based upon my reading of the requirements of the Supreme Court, I received the answer to the question of when and how the note one was responded to. But as to Exhibit 3, I know when but not how. So this is a Court question as to the method of response to the jury with respect to note number two, the note of October 21st, 1993.

WITNESS LYNN: Looking at my ledger, I did not write down how --

MR. MCKENZIE: The ledger. Are you talking about this here (indicating)?

THE COURT: Exhibit number 1.

WITNESS LYNN: I did not write down how I communicated that. So I am not sure, but I normally would have written something saying you will be receiving no additional evidence.

By Mr. Mckenzie: (Continuing)

Q. So you are saying you did not write it down or make a record of it?

A. I did not write it down in my ledger.

Q. You didn't make a record of it?

A. I didn't write it down in my ledger.

THE COURT: And you don't have an independent recollection?

WITNESS LYNN: I do not.

THE COURT: Thank you. My clerk now has Rule 26.03 for the defendant's benefit.

(Whereupon, photocopy of Rule 26.03 is handed to defendant.)

THE COURT: That is what the Supreme Court asked me to deal with, so we can have Mr. Mckenzie make further inquiry.

By Mr. Mckenzie: (Continuing)

Q. All right, getting back to my question. I asked if you were familiar with the Rules of Court. I am going to be more specific. I am specifically talking about Rule 26.03, Subd. 1, Presence Required. And subdivision 19. Are you familiar with Rule 26.03, the presence of the defendant during trial?

A. Oh, yes, I am familiar with the Rule. I don't have it in front of me either, so --

Q. Well, here, I will let you read it.

THE COURT: I will pass a copy of the Rule to him.

WITNESS LYNN: All right. Rule 26.03

THE COURT: Subdivision 19.

MR. MCKENZIE: No, subdivision 1.

WITNESS LYNN: Yes, I have that in front of me.

By Mr. Mckenzie: (Continuing)

Q. Okay. Why didn't you follow that Rule? Why wasn't that Rule followed during jury deliberation?

A. I believe I did follow it.

Q. So then you are telling me you called me into the courtroom? You held a hearing in open court and made a contemporaneous record of those communications?

A. No. I am reading -- at least reading the Rule here. You were present at arraignment. You were present at impaneling of the jury, the return of the verdict, imposition of sentence.

Q. Okay. So you are saying you followed that Rule?

A. I believe I did, yes.

Q. Okay. What about subdivision 19, "Jury Deliberations and Verdict"?

A. That is a lengthy Rule.

Q. Well, 1. We will start with subdivision 1.

A. All right. Well, I believe I followed that Rule. That has to do with what the jury may take with it into the jury room.

Q. Okay. All right. What about subdivision 2, "Jury Requests to Review Evidence"?

A. I believe I followed that Rule as well.

Q. Okay. So it states here, "If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, the jurors shall be conducted to the courtroom. The court, after notice to the prosecutor and defense counsel, may have the requested parts of the testimony read to the jury and permit the jury to re-examine the requested materials admitted into evidence." So my understanding is what you are telling me regarding -- what did you mark these notes with?

THE COURT: 1.

MR. MCKENZIE: Both of them are 1, Exhibits 1?

THE COURT: The notes from the jury, one is 2 and one is 3. The notes from the Judge is 1.

MR. MCKENZIE: No, we are going with the notes from the jury.

MS. STREITZ: Exhibit number 3 is the note where they are asking for the statements of various witnesses.

MR. MCKENZIE: Okay. So this one would be 2?

MS. STREITZ: Yes.

<u>By Mr. Mckenzie</u>: (Continuing)

Q. All right. With regards to Exhibit 2, I am going to

read this off. Does he have a copy? Did you show him a copy of this note?

A. I don't have those in front of me any longer.

MS. STREITZ: (handing to witness.)

WITNESS LYNN: Thank you. So Exhibit 2?

By Mr. Mckenzie: (Continuing)

Q. Ah, yes. It says, "Judge Lynn, We would like some clarifacation [sic] of some of the bylaws if possible - Pretaining [sic] to First degree Murder charge - aiding & abeting [sic]"

THE COURT: Do you have a question, Mr. Mckenzie?

By Mr. Mckenzie: (Continuing)

Q. All right. So you are telling me that this note is not considered, ah, -- I have to go into my stuff. This ain't working. All right, back to Exhibit 2. I asked you if you were familiar with the Rules of Court regarding a defendant's presence at all stages of trial, which would include jury deliberation, and your question to that was?

A. Well, I am not sure what you mean by present during jury deliberations.

Q. Presence, meaning when the jury asks you -- sends a note to the judge, you are mandated to call counsel, the counsel for the State and the defendant into the

courtroom into open court and make a record of whatever the communications are with whatever their request is, is that right?
A. I don't believe that is right.
Q. You don't believe that is right. Well, tell me then what do you believe this to be?
A. In reading the Rule, I believe it requires all parties to be present, that would be the defendant, both lawyers, and the jury, if there is going to be additional information provided to the jury. The two notes --
Q. Regarding a question of law and a question of evidence?
A. Either one, yes.
Q. Right. So you didn't do that?
A. Well, what I am saying is that there was no additional information provided to the jury in response to either of these questions.
Q. Okay. Well, then what -- that is your job. How come you didn't do that?
A. Because I don't think it is required under the Rules.
Q. All right. On October 20, 1993, at two o'clock, did you receive a note from the jury requesting individual copies of the instructions?
A. Yes, I did.
Q. All right. And this was marked Exhibit 1. This is a -

- I believe this is a copy of notes from your ledger?
A. Yes, it is.
Q. All right. October 20, 1993, at two o'clock, it says, "Jury requested individual copies of instructions." And it says, "complied & notified counsel." First question is where is the jury's request? How did that request come about? Or how did it get to you that they requested these instructions?
A. And I have no recollection.
Q. So you didn't -- there was no notes passed, you made no record of it in open court?
A. I cannot answer because I don't have an independent recollection, other than what I wrote in my notes.
Q. Well, I have to take it that you didn't know then. All right. It says, "complied" right here.
A. Yes.
Q. What does that mean? You "complied" how?
A. The jury requested individual copies. They had one copy of the instructions that went in with them. They requested an individual copy for each juror, so I made a copy of the original and each juror had its own copy.
Q. And you didn't make a record of what you sent to the jury then?
A. I did not make a record.
Q. So you don't know if you sent them the instructions

that my lawyer agreed with or something else?
A. No, I am sure I sent them a copy of the instructions they already had.
Q. But you don't recollect how you got this communication or how this communication came about, but you recollect what you sent them?
A. Yes, that is true.
Q. All right. And it says here you "notified counsel"?
A. Yes.
Q. Exactly who?
A. Again, that would be Mr. Streitz and Mr. McGlennen.
Q. And what was their response?
A. I don't recall.
Q. All right. On October 20th at 2:25, did you receive a note from the jury requesting clarification of aiding and abetting of murder I?
A. Yes.
Q. I believe that was in your ledger, too?
A. Yes.
Q. And it says here you "phoned McGlennen" and you -- well, let's start with him. So you got this note from the jury. How did that come about? How did you receive that note?
A. Normally, the deputy who is supervising the jury brings the note to me. So I would assume that is what

happened here.

Q. All right. So when you "phoned McGlennen," exactly what was the conversation about?

A. I can't recall that particular conversation. I can tell you what my practice is, but I can't tell you that particular conversation.

Q. I am here because of your practices, so we want to talk about that.

MS. STREITZ: Your Honor, I would ask the defendant to be told he can ask questions --

MR. MCKENZIE: I apologize for that.

THE COURT: Thank you, sir. I was just going to say that you need to be respectful.

By Mr. Mckenzie: (Continuing)

Q. All right. It says right here on your ledger your notes says, "he wants me to put to say they have the law." And what would -- the law would be -- is the law the instructions, or exactly what do you mean by that when you put that there?

A. First of all, you misread by handwriting.

Q. Yeah, I must have. Right here it says, "he wants me to put to say they have the law."

A. And let me just tell you what I wrote. It is, "he wants me to just to say they have the law."

Q. Okay. I apologize for that.

A. That is all right. And the "law" refers to the instructions the jury already has.

Q. Okay. So you talked about these instructions on October 20th at two o'clock. Did the instructions they requested where you said, "individual copies of instructions"?

A. There is, yes. There is one set of instructions.

Q. Right.

A. So that is the "law". And when I am writing down, "just to say they have the law," the "law" is the instructions they have.

Q. Okay. I just want to clarify that we are talking about the same instructions that they asked for on October 20th?

A. That is true.

Q. Okay. So then they ask for -- all right. On 2:25 on October 20th, your ledger says, "Note from jury requesting 'clarification' of aiding & abetting & Murder I." With regards to this question, or your notes here, would you consider that "clarification" to be a question of law that they asked you?

A. Yes, I would consider it to be a question of law.

Q. At that time when you received either one of these notes, the one at two o'clock or the one at 2:25 on October 20th, did -- in the process of communicating

with Streitz or McGlennen, was there some discussion ever that I should be present during -- was there a discussion I should be present? Was there a discussion regarding, ah, holding a hearing in open court? Was there a discussion regarding having a record made of what was going on?

A. The discussion was I would read the note as it came to me from the jurors. And I asked each of the lawyers how they think it should be handled or responded to, and in both instances I wrote down what their response was.

Q. Can I take that as a no? I mean, I want you to specifically answer the question, because it seems to me you are going somewhere else. I asked you -- I am going to ask this again.

A. All right.

Q. In the process of getting these notes, when you received the notes and you contacted McGlennen and you contacted Streitz, at any time did Streitz or McGlennen discuss that this should be done in open court, that a hearing should be held, a record should be kept of the communications, and that I should be present?

A. I can't tell you exactly. I can tell you that if anyone had demanded that that is what we would have done.

Q. Okay. So I will say that it wasn't demanded and it wasn't discussed then. Am I all right to say that? I don't want to put words in your mouth. I just want to get exactly what happened at that time.

A. I understand and it is the best answer I can give you.

Q. Okay, I will take that. Were you aware that I was supposed to be present when all this took place on October 20th at two o'clock and at 2:25?

A. I think I have already answered that with regard to -- are you talking about the Rules of Procedure?

Q. Yeah.

A. I guess I have already answered how I read those Rules.

Q. All right. On October 21st -- I have this marked here -- 1993 at 9:15 the jury sent you a third note regarding police statements of Loverine Harris, Richard Wright (phonetic) and Olivia Gregory.

MS. STREITZ: I think that is a misstatement of the facts. It is the second note.

MR. MCKENZIE: Oh, excuse me. What exhibit is that? Exhibit 3?

MS. STREITZ: Right.

MR. MCKENZIE: I need some space here. Did you give him a copy of that?

THE COURT: He has it.

By Mr. Mckenzie: (Continuing)

Q. With regards to that question, did you consider that request to imply that they wanted to review evidence?
A. I considered it a request for additional evidence, yes.
Q. October 21, 1993, did you receive a note from the jury requesting the elements of -- that would be Exhibit 2 -- no.
MR. MCKENZIE: We are only here discussing these two notes, right?
THE COURT: Yes, sir.
MR. MCKENZIE: Okay. I think I am going somewhere else.
By Mr. Mckenzie: (Continuing)
Q. All right. Okay, before my trial took place -- I can't remember the exact date -- there was trial before mine of Mr. A. C. Ford. Are you familiar with that trial?
A. I know it took place.
Q. Okay. Are you familiar with when I believe it was Deborah Hedlund went on vacation during jury deliberations --
MS. STREITZ: Your Honor, I am going to object to this. What relevance does this have to do --
THE COURT: And I just need to find out from Mr. Mckenzie the issue is these two notes, --
MR. MCKENZIE: Exactly.
THE COURT: -- Judge Lynn's response and

not somebody else's trial.

MR. MCKENZIE: It is all germane to what is going on here. What I am doing is showing -- I have Affidavits here from another attorney that when A. C. Ford was in trial Judge Hedlund went on vacation. And at that time, he set in in her courtroom while the jury was deliberating, the juries were deliberating, and some notes were passed to him dealing with questions of law and evidence. So I have a signed Affidavit here and a letter from A. C. Ford's counsel that those notes were given to Judge Lynn. He did the same exact thing that he did in my case, he didn't respond to the notes, he didn't make a record of the notes. He communicated with counsel without having Mr. Ford present.

THE COURT: But, sir, that is not relevant --

MR. MCKENZIE: But so --

THE COURT: He has already indicated what he has done in this case.

MR. MCKENZIE: I understand, but the --

THE COURT: Whether he did it in another case isn't relevant to whether or not your rights were abridged by his procedure in your case.

MR. MCKENZIE: I understand that.

THE COURT: So we are only going to deal