with your case.

MR. MCKENZIE: But my point is that he has a history of doing this. This isn't -- I mean, it is germane because it is showing a history.

THE COURT: Sir, if he has a history and if it is wrong, then it is wrong whether he has a history or not. If it is right, it doesn't make any difference --

MR. MCKENZIE: Well, I just want to make a record of it in this court and I would like these placed into evidence.

THE COURT: I am not admitting those. It has nothing to do --

MR. MCKENZIE: Then I would like to place them on the record as an offer of proof then.

THE COURT: All right. Make your offer.

MR. MCKENZIE: Offer of proof that I have an Affidavit right here stating that Judge Lynn has a history of not -- of not following the Rules of Procedure in the court, or not answering notes, or not putting these communications with juries on record. He has a history of not allowing defendants to be present during the stages of this. That is why I am here now. That is why the State Supreme Court sent me back.

THE COURT: That is your argument. Is

there anything else you wanted to state with respect to your offer of proof?

MR. MCKENZIE: That it is. I would just like to have these as offer of proof.

THE COURT: Any objection?

MS. STREITZ: I object. They are not relevant.

THE COURT: All right. I will sustain the objection. They are not relevant.

By Mr. Mckenzie: (Continuing)

Q. All right. Let's go to this note on 10/21. I believe it is -- that would be Exhibit 3, right?

MS. STREITZ: Yes.

MR. MCKENZIE: The note from 10/21?

THE COURT: Yes, sir.

By Mr. Mckenzie: (Continuing)

Q. Did I ask the question about this first note here regarding the request for individual copies? We talked about that, right?

THE COURT: Yes, sir.

By Mr. Mckenzie: (Continuing)

Q. Now let's go back over this just so I can get this right in my mind to make the record clear, because I see I am having a few problems. So what we will do is go to October 20th, 1993, at two o'clock, the "jury

requested individual copies of instructions", you "complied & notified counsel"?

A. Yes.

Q. Did you make a record? A record in open court, excuse me?

A. Meaning with a court reporter and all parties present?

Q. Yes.

A. No, I did not.

Q. Okay. Did you -- was I present?

A. No.

Q. All right. When you notified Streitz, did the conversation come up that I should be present or that with regard to this specific note that a record of this should be done in open court, a record should be made and I should be present?

A. I don't recall the conversation at all. All I have are my notes here.

Q. All right. So when you talked to Mr. McGlennen, the same thing you don't recollect that either, right?

A. It would be the same answer, yes.

Q. Okay. October 20 of 1993 at 2:25, "Note from jury - requesting 'clarification' of aiding & abetting of Murder I," you already stated in your understanding that that was a question of law, right?

A. Yes, I did.

Q. All right. Now it says here you "Phoned McGlennen." And in that conversation did you and McGlennen ever, ah, -- did you ever discuss that that specific communication -- or in your conversation that that note, the question of law, that a hearing should be held in open court, I should be present, and a record should be made?
A. Again, I don't recall the specifics of the conversation, so I have to just rely on what I have written on my ledger.
Q. And when you talked to Streitz, the same --
A. It would be the same answer.
Q. All right. On October 21st, 1993, at nine o'clock with regards to -- it must be Exhibit 3, right?
THE COURT: Yes, sir.
By Mr. Mckenzie: (Continuing)
Q. At 9:15 the jury requested police statements which to your understanding they were questions of evidence, right?
A. Yes, I understood that as a question asking for additional evidence.
Q. All right. Also here it says you "Talked to counsel." And the counsel you talked to would have been Robert Streitz and Michael McGlennen?
A. Yes.

Q. Let's back up. At any time when you talked to counsel, did you talk to Arthur Martinez who represented me at that time, or did you talk to I believe it was George Widseth who was I believe was co-counsel representing the State?
A. My recollection of that is it was Mr. McGlennen and Mr. Streitz that I talked to about these issues.
Q. Okay. Thanks. Now when you talked to Mr. McGlennen, did anytime again did the discussion come about that I should be present, that a record should be made, and a hearing should be held in open court?
A. And again, I don't recall.
Q. Okay. And when you talked to Streitz, same question?
A. Same answer.
Q. All right. Okay, as a matter of fact, on October 21st, 1993, at 1:55, you received a question from the jury and it says here, "Re" - and I am going to take that as regarding -- "elements" -- this is from your ledger, right?
A. Yes.
Q. "Elements of Murder I" -- what is that premeditated?
A. Well, "Premed," meaning premeditated.
Q. All right. I just want to clear it up. "Conference w/counsel" --
MS. STREITZ: Your Honor, I am going to

object to this line of questioning. That is a third note and that is not what the Supreme Court said we are here to address.

THE COURT: I will let him ask the question. You may be correct. I don't know where this is going, but I will give him a little bit of leeway.

By Mr. Mckenzie: (Continuing)

Q. All right. This specific note, you had a conference with counsel which would have been Streitz and McGlennen, right?

A. Yes.

Q. Okay. And it says here, "3:05 Answered in open court w/d present." That would have been me at that time, defendant present?

A. That is true.

Q. Okay. What made you decide at that time to follow the Rules of Criminal Procedure in holding a hearing, making a record in open court with counsel, and my being present?

A. Well, I guess I will differ. I think I followed the Rules all the way through. But with regard to this one, this as I recall was a matter in which there was some additional information to be provided to the jury. That being the case, all parties were present including yourself.

Q. Okay. So then throughout these other notes you are saying -- well, my understanding is that you are telling me that the jury never requested anything?
A. No --
Q. Could you repeat what you said, because I am not following you?
A. The other two questions, which are Exhibits 2 and 3 --
Q. No. Go back to this 10/21 at 3:05 when everybody was here at this hearing. There was a hearing conducted regarding the note. How come --
THE COURT: I am sorry, Mr. Mckenzie, but you have got to listen to what he says because that is what he is talking about.
MR. MCKENZIE: I am getting confused, because I am not understanding his --
THE COURT: Well, let him answer.
MR. MCKENZIE: I am just trying to clarify so I get it right.
By Mr. Mckenzie: (Continuing)
Q. Let's just put it this way: At 3:05 there was a hearing held. I was present, you were present, Streitz was present. And my attorney, Martinez, was present at that hearing. How come that didn't take place when all these other notes, all these other requests for law and evidence or clarification, or whatever you want to say,

how come all of that didn't take place then?

A. Because with regard to the earlier two notes, there was no new additional information being given to the jury.

MR. MCKENZIE: I am done. I am done.

THE COURT: Okay. Mr. Streitz, anything you wanted to add?

REDIRECT EXAMINATION

By Mr. Streitz:

Q. Judge Lynn, just a couple of follow up questions, hopefully. When you are talking about the instructions that were given to the jury, are those the instructions of law that both myself, Mr. Widseth and the two defense attorneys for Mr. Mckenzie would have been privy to and had some input in prior to the jury being instructed on those laws?

A. Yes.

Q. Nothing more was ever provided other than what you had told the attorneys was going to be the instructions in the case?

A. That is true.

Q. With respect to Exhibit 3, which is the note that they had wanted to know if they could get some additional evidence, that was evidence that was not admitted in the trial, correct?

A. That is true.

Q. Can you ever under any law, any rule, give a jury once a case has been submitted to them additional evidence during their deliberations?

A. I don't believe so.

Q. Did the defense attorneys at any point ask you to have the defendant present for purposes of discussing what, if anything, your response would be to the first two notes in question?

A. Again, I am sorry, I don't recall if either did. All I can say is had they I would have done that.

MS. STREITZ: I have no further questions. Thank you, sir.

THE COURT: Mr. Mckenzie, anything additional?

MR. MCKENZIE: Yeah, I got -- I mean he was raising some issues.

RECROSS-EXAMINATION

By Mr. Mckenzie:

Q. So you are telling me that the Rules or the Procedures of Court dictate that you ask counsel if I should be present -- or excuse me -- a defendant should be present regarding questions coming from a jury in a hearing being held, is that what you are saying?

A. No. I think I have explained why I handled the matters the way I did. But what I am trying to say is that if

someone had demanded that you be present and we do this in court, I would have done that. It is simple to do.

Q. Okay. Are you aware that the Rules of Court or law in general basically states that a lawyer can't waive the defendant's right without my consent, or without defendant's consent?

A. Well, I am not -- well, that is kind of a broad question.

Q. No, it is not. I am not trying to make it a broad question. I am just trying to make it a simple yes or no question. When a defendant has a right to be present, are you aware that his counsel or his agent, or whoever is representing him, does not have a right to waive his presence without that particular defendant's consent?

A. Yeah, I would agree with that as a proposition of law.

Q. Would you agree with that as a proposition of a rule -- the Minnesota Rules of Court or Criminal Procedure, because I believe it says that in here? I mean, if you want me to dig through my records, I will get the law for you.

A. Well, I understand what you are saying. I think I answered it before about the way I read that Rule.

Q. Okay. Well, let me clarify. It is my understanding of what your answer is of saying, no, an attorney does not

have a right to waive a defendant's presence?
A. Correct.
Q. Is that what you are telling me?
A. I suppose as a general proposition, yes, that is true.

THE COURT: In a criminal case.

WITNESS LYNN: In a criminal case, yes.

MR. MCKENZIE: All right. No more questions.

THE COURT: Anything further, Mr. Streitz?

FURTHER REDIRECT EXAMINATION

By Mr. Streitz:

Q. Well, Judge Lynn, I want to move from a general proposition to a specific proposition, because that is why we are here, specifically as it pertains to notes one and two, or referred to as Exhibits 2 and 3. Did you believe that you had complied -- the way you handled those notes, did you believe you were in compliance with Criminal Rule of Procedure 26.03, subdivision 19?
A. Yes.

MS. STREITZ: No further questions.

MR. MCKENZIE: I have a few questions, now.

FURTHER RECROSS-EXAMINATION

By Mr. Mckenzie:

Q. Back to the question I asked you. I am going to just put on the record that State v. Trial (phonetic), State v. Ware (phonetic), and I believe State v. Werthie (phonetic). These are all Minnesota State Supreme Court decisions that basically say that an attorney does not have the right to waive a defendant's presence without his consent. I just want to put that on the record and clarify that for Judge Lynn.

THE COURT: I am the one you need to clarify it for.

MR. MCKENZIE: All right. Excuse me, I have another question right now since we are going through this. As this proceeds on in the future, is it possible that I can call him back?

THE COURT: I think we are done with whatever we are going to be dealing with him about this particular issue.

MR. MCKENZIE: Well, I mean, I might have some more questions in the future. I mean, because right now I am really out of place because I don't know the courtroom procedures or the process of how all this goes, because my understanding was we were supposed to come down here, go over a few motions and get my witness list in order who was going to be

subpoenaed and who weren't going to be subpoenaed.

THE COURT: Sir, when we are done with Judge Lynn, if you feel there is somebody else that you need to have as a witness with respect to this particular issue, we will discuss that. But we will be done with Judge Lynn whenever we are done with the questioning of Judge Lynn. And now we are left with any questions you might have with respect to Mr. Streitz' last question, because you can only ask him questions that relate to the questions he just asked.

MR. MCKENZIE: Could you repeat that then?

THE COURT: You asked him whether or not with respect to Exhibits 2 and 3 if he believed he complied with the Rules of Criminal Procedure 26.03, subdivision 19. And his answer was "yes."

MR. MCKENZIE: What subdivision was he talking about?

THE COURT: 19, sir.

MR. MCKENZIE: 1, 2, 3? I mean, it is 2 here.

THE COURT: Subdivision 2 of 19, yes, that is what you all have been talking about.

MR. MCKENZIE: Well, I don't know he might have been talking about 1. That is why I asked

that question.

By Mr. Mckenzie: (Continuing)

Q. Okay. So you are saying you followed -- you believe you followed the Rules of Criminal Procedure, Rule 26.03, subd. 1(1)? Do you have that copy?

A. Yes, I do believe that.

MR. MCKENZIE: Thank you. No more questions.

THE COURT: All right.

(Whereupon, the witness is excused.)

THE COURT: So we have concluded the testimony of Judge Lynn. And Mr. Mckenzie, you have indicated that you thought you might need some other additional people as witnesses with respect to this particular issue. Are you still making that request?

MR. MCKENZIE: Yes, ma'am.

THE COURT: And who are these other people?

MR. MCKENZIE: All right.

THE COURT: Are you looking for the list of people you had submitted to me?

MR. MCKENZIE: No, I have it. I am just putting my stuff back in order.

THE COURT: Okay. So who do you think -- I am sorry. Which additional witness do you think is

necessary for the proper presentation of the record with respect to the matter that has been referred to me by the Supreme Court, and the reason for your need for that particular person?

MR. MCKENZIE: Michael McGlennen is one.

THE COURT: Okay.

MR. MCKENZIE: And the reason why is because he was one of the attorneys that represented me and had conversation with Judge Lynn. And I don't know if the attorney was conversating with Streitz or not. So right now, I am assuming that.

THE COURT: All right. I concur that Michael McGlennen is a person who would have evidence relevant to this matter, since Judge Lynn did indicate he spoke with Mr. McGlennen. So as to the issue that I have been directed by the Supreme Court to deal with, and that is when you and/or your attorney were first notified, I believe that he would be a proper witness.

MR. MCKENZIE: Okay. Robin Magee, she -- because the whole situation about this was, well, he did three post-convictions and three appeals, or whatever. So she was one of the attorneys that her and Keith Ellison did a brief dealing with three judges, Judge Lynn, at that time I believe it was Chief Judge Kevin Burke, and Judge Hedlund, Deborah Hedlund. You

know, the basic -- what am I looking for? Ah, the basis of the appeal was basically they convened and they came along with that I had a right to be present, etc., etc. So the reason why she is needed as a witness is to clarify if she knew about these notes, because I didn't start doing my appeals until this one right here. I think there was one before that. But -- so I need to know exactly who and what and, you know, what type of investigations they went about as far as trying to get these notes, because that is the question in the air, well, how did all this come about and who knew about it and who didn't know about it. So that is why she is needed as a witness.

THE COURT: All right. Mr. Streitz, do you have any response?

MS. STREITZ: Well, Your Honor, I have a response to Mr. McGlennen being called, if I may?

THE COURT: You may. I guess you could make your response on the record and I apologize for not deferring to your argument first, but based upon my reading of what the Supreme Court told me I needed to do, I think if Mr. Mckenzie wants Mr. McGlennen, I guess I will be willing to give him an opportunity. But go ahead you can make your record.

MS. STREITZ: Well, I mean, that is

fine, Your Honor, but it seems to me that you have ample -- you have conducted as much evidentiary hearing as is necessary. If McGlennen were to come into court, he has three options. One, with respect to what Judge Lynn said about being notified as to the notes and the Judge's responses, which Mr. McGlennen went along with, would be either: 1) Judge Lynn is correct 2) Judge Lynn is wrong, or 3) I have no recollection.

Now I wasn't going to bring this up because I didn't think it was necessary. I spoke to Mr. McGlennen and it was the third option that he told me over the phone that would be his testimony. He has no independent recollection. He has no reason to dispute Judge Lynn's testimony. In fact, he told me that he had communications with Mr. Mckenzie a couple years prior to this in which Mr. Mckenzie was apparently asking him about these additional notes, which seems to shed light on the fact that Mr. Mckenzie knew about these notes before he claims he did.

MR. MCKENZIE: I object to that.

THE COURT: Well, Mr. Streitz, that gives me all the more reason to believe that it is appropriate for Mr. McGlennen to come and testify.

MS. STREITZ: And if he wants to subpoena him, I guess --

THE COURT: And I had indicted when he has asked me prior to this hearing for the subpoenas, I indicated that at today's hearing I would hear who he needed to subpoena and make a decision. So with respect to Mr. McGlennen, I think that is quite appropriate.

MS. STREITZ: With respect to Ms. Magee and Mr. Ellison, I don't know what relevance they have with respect to these particular two notes since they weren't trial counsel. They did apparently represent him on one of his three post-convictions. It would certainly seem to me that if they are representing a defendant, they should have known that entire file inside and out, and those notes were part of the file. But I don't know if they are necessary to come in here and testify as to the issue before this Court.

THE COURT: Anybody else, sir?

MR. MCKENZIE: Well, can I --

THE COURT: I have heard the arguments of both of you about Ms. Magee, and so the next person you want?

MR. MCKENZIE: Excuse me?

THE COURT: The next person you want?

MR. MCKENZIE: Arthur Martinez. He represented me at trial.

THE COURT: But he wasn't one of the people that Judge Lynn spoke to.

MR. MCKENZIE: Yeah, but I am trying to find out or make a record of who knew what, when and how they knew about it.

THE COURT: As long as it is with respect to these two notes that the Supreme Court has directed me to take any testimony.

MR. MCKENZIE: All right. Michael Cromett. He is the attorney who did my first direct appeal.

THE COURT: And his last name is spelled what?

MR. MCKENZIE: Cromett, C-O-R -- excuse me -- C-R-O-M-E-T-T.

THE COURT: Okay.

MR. MCKENZIE: And juror number eight, whoever that may have been. I don't know.

THE COURT: For what purpose?

MR. MCKENZIE: Because Judge Lynn is saying he doesn't recollect how he received the notes or if he communicated with this person or that person. I mean, his memory to me seems that -- I mean, he has a bad memory. And I want to know exactly if the Judge communicated with this juror, or any of the jurors,

since he doesn't recollect if he did or not. So maybe they could shed light on that situation.

THE COURT: Okay, Mr. Streitz, with respect to that issue, did you want to make a record?

MS. STREITZ: About Mr. Cromett or just juror number eight?

THE COURT: Juror number eight apparently.

MS. STREITZ: Juror number eight, Your Honor, I would object vehemently to that. This was an anonymous jury. Secondly, I have no Schwartz motion in front of me alleging any impropriety. The only issue that this Supreme Court sent down to this court is hold an evidentiary hearing as respect to what Judge Lynn did with respect to these notes. And to bring a juror in who over 10 years ago presided over a case which these jurors were told they were anonymous I think would be improper.

THE COURT: I will deny the request for a subpoena with respect to juror number eight. Anybody else?

MR. MCKENZIE: No, that is -- you subpoenaed Magee and Ellison, right?

THE COURT: No, sir, I haven't said I would. I definitely told you I will permit a subpoena

for McGlennen. I will not for juror number eight, and I haven't told you what I am going to do about Magee, Ellison or Cromett.

MR. MCKENZIE: Okay. So what are you going to do?

THE COURT: My direction from the Supreme Court relates to these particular issues that we have been through several times. And I do believe that Mr. McGlennen's testimony, what he remembers, doesn't remember, whether he later had communication with you about the notes, is relevant. I do not believe with respect to the issues that I have been given by the Supreme Court to decide at an evidentiary hearing that the testimony of your subsequent counsel for your various appeals is relevant. The question is what is the record and that is the situation. So we will find a different date for a continuation of this hearing. And I did not bring my calendar, so I will indicate to counsel and to you, Mr. Mckenzie, what the new date would be.

MR. MCKENZIE: Okay. Also there is two things I want to raise. One was when I received these notes from down here at this District Court in the mail, I called Michael Cromett on a Saturday, Saturday morning, and asked him if he knew about those notes.

That is the conversation that he is talking about. And I already sent you an ~~Affidavit~~ Ex. M before I got down here letting you know I had -- I didn't know anything about these notes before I received them.

THE COURT: Yes, sir, I understand that is your position.

MR. MCKENZIE: Okay. I just want to clarify that for him and also he is a witness. Streitz is a witness. He is all -- throughout this whole discussion, his name came up about 10 or 15 times out of the Judge's mouth. His name is in the Judge's ledger.

THE COURT: Sir, the issue isn't whether or not Mr. Streitz knew about what went on with these notes. The issue is whether your counsel knew and whether you should have been present. That is the issue. So that is what I have to decide, not whether Mr. Streitz knew. So I will continue this -- oh, I am sorry. Anything further? You said two matters and I just heard you say one.

MR. MCKENZIE: No, that was two.

THE COURT: I misunderstood. All right. I will continue this matter for further taking of Mr. McGlennen's testimony and I will notify you, Mr. Mckenzie, as to when that will occur.

MR. MCKENZIE: What about these -- the appointment of counsel?

THE COURT: Appointment of counsel?

MR. MCKENZIE: Yeah. You sent me a letter saying --

THE COURT: Originally, yes, sir. I originally indicated that by law you had a right to appointment of the State Public Defender's Office. And it is my understanding that they had pursuant to statute refused to represent you.

MR. MCKENZIE: Okay.

THE COURT: Because they have represented you on three prior appeals and --

MS. STREITZ: On direct appeal, Your Honor.

THE COURT: I am sorry. One direct appeal, yes.

MR. MCKENZIE: Well, my reason being is because it is obvious I am not really too familiar with the questions, what type of questions to ask, how to approach the court, things like that. I just need somebody to stand by and inform me of those things. That is pretty much it.

THE COURT: You have done a very good job, sir. And we will continue the hearing when we

have Mr. McGlennen present and you present and Mr. Streitz present.

MR. MCKENZIE: All right. Thank you.

MS. STREITZ: Thank you, Your Honor.

(Whereupon, the proceedings of December 3, 2003, concluded and the proceedings of December 16, 2003 follow.)

* * *

THE COURT: We are back on the record on the State of Minnesota versus Mwati Pepi Mckenzie, Court file number 92095956. We are back to continue the evidentiary hearing on the issue that was referred back to the Court by the Supreme Court. Mr. Mckenzie, I need to -- let me just indicate Mr. Mckenzie is personally present. Also present is Assistant Hennepin County Attorney, Mr. Streitz. Mr. Mckenzie I need to indicate to you that I subpoenaed Mr. McGlennen and also Mr. Martinez. They are waiting to testify, so I don't which one you would like to have testify first.

MR. MCKENZIE: What about the rest of the witnesses?

THE COURT: Those are the only two that are relevant to what I have to decide at this point. Now maybe their testimony will indicate that I do need

to subpoena others, but in terms of the hearing today those were the two that the Court determined were relevant for the issue that the Supreme Court had indicated I needed to address.

MR. MCKENZIE: Cromett?

THE COURT: Pardon?

MR. MCKENZIE: My attorney that did my direct appeal. I thought he was subpoenaed?

THE COURT: No, sir. The two people I subpoenaed were the ones who were present or were representing you at the trial, and who one or the other of which Judge Lynn was claiming he gave notice to.

MR. MCKENZIE: Okay. Well, before we start, is it okay if I put a few things on the record with regards to the last hearing we had?

THE COURT: You may put something on the record.

MR. MCKENZIE: Ah, the last appearance Mr. Streitz made a comment that he had talked to Michael McGlennen prior to this hearing.

THE COURT: Yes, sir.

MR. MCKENZIE: And from what I got from what he said, it was an assumption that I had known about these notes prior to February 26th. And I would like to submit this Affidavit and the actual envelope

that the notes came in from the Hennepin County Government Center and place them into evidence as proof that --

THE COURT: All right, you want those in as an exhibit?

MR. MCKENZIE: Yeah, or I mean --

THE COURT: One of the deputies can get that and we will number it.

MR. STREITZ: They are already part of the record as part of this proceeding.

THE COURT: Well, it is a copy. One moment because you can't make a record and mark exhibits.

(Whereupon, Exhibit 4 and Exhibit 5 are marked for identification.)

MR. MCKENZIE: Does he have any objections as to that?

THE COURT: Just one moment. The envelope will be Exhibit number 5. Exhibit number 4 then, Mr. Mckenzie, is your Affidavit dated November 6, 2003, regarding when you received the brown envelope. And number 5 is the brown envelope with a return address at the Government Center and a metered stamp on it.

MR. STREITZ: No objection.

THE COURT: Those are received without objection.

MR. MCKENZIE: All right. Also the notes from the Judge's ledger was that Exhibit 3?

THE COURT: No. The notes from the Judge's ledger was Exhibit 1.

MR. MCKENZIE: Okay.

THE COURT: Exhibit number 2 is the note pertaining to first-degree murder charge aiding and abetting.

MR. MCKENZIE: All right.

THE COURT: And number 3 is the original police statement.

MR. MCKENZIE: Okay. Are we going to go over the motions I sent before I -- I sent them last week I believe it was. It was I believe three of them.

THE COURT: Okay. There was a request for you to keep all legal materials while housed at the Adult --

MR. MCKENZIE: No, those -- okay. We can got over those.

THE COURT: That was number one, and I arranged for the Sheriff's Department to let you do that.

MR. MCKENZIE: Okay.

THE COURT: Motion to allow you to wear proper attire.

MR. MCKENZIE: Right.

THE COURT: And had proper attire been available, that would have been permitted. Transcript of the December 3rd hearing, the Court -- you were here at the hearing, no transcript was ordered by the State, and the Court did not order a transcript of that proceeding because you were here to take notes. So it wasn't like something happened outside of your presence.

MR. MCKENZIE: Okay.

THE COURT: And then the law library at Stillwater, I have no authority over the Commissioner of Corrections.

MR. MCKENZIE: Okay.

THE COURT: So those were the three matters that I --

MR. MCKENZIE: What about the Motion to subpoena the District Court records and to conduct a summary hearing?

THE COURT: Mr. Mckenzie, the issue that was referred back to me dealt with these two notes and what Judge Lynn did about those two notes.

MR. MCKENZIE: Right.

THE COURT: And so the whole District Court record apparently there was no record taken of any communication there to my knowledge.

MR. MCKENZIE: That was the reason for the subpoena so I could find out exactly what -- not his entire records, but dealing with that particular file as to how he received the communications from the jury on October 20th.

THE COURT: This is his entire communication is what he indicated at the last hearing.

MR. MCKENZIE: And there is a Motion I sent to conduct a summary hearing with regards to juror number six under Minnesota Rules of Evidence 606.b and Minnesota Rules of Criminal Procedure 26.03, 19(6).

THE COURT: That wasn't an issue that the Supreme Court sent back to me. The Supreme Court sent back to me just the issue surrounding these two notes, and they were submitted by juror number eight.

MR. MCKENZIE: Oh, excuse me. That was the premise of me putting these Motions together. I am not going outside of the Court order, I am just putting them in in order to get more information and how these notes were received. I mean, because from the last hearing there is notes that are not even recorded or filed, and I need to know --

THE COURT: These two notes were filed. They were file stamped.

MR. MCKENZIE: I am talking about the notes on October 20th at two o'clock.

THE COURT: And that is file stamped October 26th at 3:34.

MR. MCKENZIE: No, not according to the Judge's ledger. That note -- there is a note missing.

THE COURT: Are you referring to the two o'clock request?

MR. MCKENZIE: Exactly.

THE COURT: For individual copies of instructions?

MR. MCKENZIE: Yes.

THE COURT: Okay. That didn't come in the form of a note. That is an administrative type of thing that is communicated to staff asking for copies, just like if they had asked for pencils or if they had asked for more water, things like that. Those aren't sent to the Judge in the form of a jury question.

MR. MCKENZIE: Oh, okay. And I also submitted a Motion to reconsider removal of prosecutor Streitz pursuant to Article 1, Section 6, of the United States, saying that I have compulsory process for obtaining witnesses in my favor and in that he -- I

mean, dealing with those two notes that were from the Supreme Court basically states that we are supposed to conduct an evidentiary hearing regarding those two notes. He knows about those two notes. He discussed it, you know, the situation with the Judge. So I mean if Michael McGlennen is a witness and Arthur Martinez is a witness, he would be a witness too, or considered a witness in my favor. It is with regards strictly to those two notes.

THE COURT: I don't think that there is any doubt that the notes were given to Judge Lynn and that you were not present at least when these two notes were addressed by Judge Lynn. So to that extent, there is no dispute. What is at issue is whether you knew about it and if you did know, what did you know. So Mr. Streitz isn't relevant to that, because he wasn't your lawyer. So my Order stands with respect to your request.

MR. MCKENZIE: All right. Well, we can start calling witnesses then.

THE COURT: Which one did you want first, Mr. Martinez or Mr. McGlennen?

MR. MCKENZIE: Ah, we can call Mr. Martinez in.

THE COURT: Mr. Martinez.

**ARTHUR MARTINEZ,**

after having been duly sworn, was examined and testified on his oath as follows:

THE CLERK: Would you state your name for the record, spelling your first and last names, please.

WITNESS MARTINEZ: Arthur R. Martinez, first name, A-R-T-H-U-R, last name, M-A-R-T-I-N-E-Z.

THE COURT: All right. Mr. Mckenzie, this is your Motion. However, at the last hearing we had Mr. Streitz ask questions to lay the foundation and do you have any objection to that procedure again this time?

MR. MCKENZIE: Well, --

THE COURT: Or do you want to ask questions?

MR. MCKENZIE: Well, I have a question to the Court because the last time we were here I believe you stated Martinez wasn't a witness because he didn't have any discussion or any part of the passing of these notes?

THE COURT: It was my initial understanding that that was so, and so I don't know whether it is so or not. But I have subpoenaed Mr. Martinez, who was your other attorney, to see whether

or not he was involved in any of it.

MR. STREITZ: Your Honor, so we are clear, Mr. McGlennen -- and I would certainly assume he sent a copy to his client, he faxed me an Affidavit dated December 1st claiming that he left everything in the hands of Mr. Martinez during jury deliberation. And so I informed the Court that perhaps they wanted to subpoena Mr. Martinez.

MR. MCKENZIE: That is an Affidavit from who?

MR. STREITZ: Mr. McGlennen. He didn't send you a copy of it?

MR. MCKENZIE: No, I didn't get a copy of that.

MR. STREITZ: I just thought we would short circuit the process.

THE COURT: Do you want my clerk to make a copy for you, Mr. Mckenzie?

MR. MCKENZIE: Oh, please.

THE COURT: And for the benefit of Mr. Martinez, I am going to hand him Exhibit 1, Exhibit 2, and Exhibit 3. Exhibit number 1 are Judge Lynn's notes. Exhibit 2 is the jury question that was presented on October 20th. Exhibit number 3 is a jury question that was submitted on October 21st, both in

the year 1993, because there will be questions no doubt surrounding those exhibits. So Mr. Mckenzie, would you like Mr. Streitz to question Mr. Martinez initially and then you can follow or do you want to ask him the questions to begin with?

MR. MCKENZIE: All right, he can start.

THE COURT: Mr. Streitz, if you want to ask questions to establish foundation.

MR. STREITZ: Sure.

ADVERSE DIRECT EXAMINATION

By Mr. Streitz:

Q. Good morning, Mr. Martinez.

A. Good morning.

Q. We are here because the Supreme Court sent this matter down for an evidentiary hearing regarding the first two notes that a jury in your client's case sent to Judge Lynn during their deliberations back in 1993. For the record, you and Mr. Mike McGlennen were co-counsel, is that correct?

A. That is correct.

Q. And with respect to any notes that the jury sent to Judge Lynn, what is your recollection of those notes?

THE COURT: Why don't we deal with each one at a time. We will deal with number two and then number three.

WITNESS MARTINEZ: Okay. For the record, I am concerned about the attorney/client privilege. If you will compel me to testify, I --

THE COURT: I will compel you to testify, since that is what I have been compelled to do by the Supreme Court.

WITNESS MARTINEZ: Thank you, Judge. The question again, sir?

By Mr. Streitz: (Continuing)

Q. With respect to the first --

THE COURT: Number 2.

By Mr. Streitz: (Continuing)

Q. Exhibit 2. I will have you look at that.
A. (Witness complies).
Q. Do you recognize that particular note?
A. No.
Q. Do you recall if Judge Lynn phoned you to alert you of that note on the afternoon of October 20th, 1993?
A. No.
Q. You don't know if he did?
A. I recall one call, telephone call, with Judge Lynn. It was not pertaining to this.
Q. And do you recall discussing that note at any time with your co-counsel, Mike McGlennen?
A. No.