Q. Okay. If Judge Lynn, who kept contemporaneous notes, as in Exhibit 1 --

MR. MCKENZIE: Excuse me.

THE COURT: Yes, sir.

MR. MCKENZIE: My understanding of contemporaneous notes are the actual transcribing of the trial record, not his side notes in that ledger. So I would object to that. My understanding that those are not part of the actual stenographer's transcript.

MR. STREITZ: I didn't say they were part of the stenographer's --

THE COURT: Maybe we should use a different word, Mr. Streitz.

MR. MCKENZIE: Contemporaneous notes means taking notes at the process of the --

THE COURT: I have instructed Mr. Streitz to ask a different question.

By Mr. Streitz: (Continuing)

Q. Judge Lynn under oath has testified that Exhibit 1 is a portion of a log in which he kept entries of all the events that took place during the course of the State v. Mckenzie trial. Drawing your attention in Exhibit 1 to the notation on 10/20/93 at 2:25 that pertains to Exhibit 2 --

A. I see that.

Q. Okay. And your testimony is you don't recall Judge Lynn talking to you about that note?
A. Are we talking about the 2:25?
Q. Yes, 2:25 in the afternoon?
A. Okay. No, I don't.
Q. Do you have any reason to believe Judge Lynn would be in error in keeping his contemporaneous notes in his trial log?
A. I would have no idea.
Q. You would have no idea?
A. I would have to speculate and guess how Judge Lynn does this.
Q. Are you suggesting that Judge Lynn would be careless in keeping his notes?
A. I am not making any suggestions. I am just saying I wouldn't know.
MR. MCKENZIE: Is he saying that Judge Lynn's notes in his record are part of the trial record, or what is he --
THE COURT: No.
MR. MCKENZIE: I just want to stipulate, have the record stipulate, that these were notes taken outside that really had nothing to do with the stenographer's notes, because I am just trying to --
THE COURT: The record will be clear

that the notes of Judge Lynn that we are referring to are not the stenographer's notes. They are notes that Judge Lynn kept as part of his job as Judge relating to the trial of the case. I think the record can be clear in that regard.

By Mr. Streitz: (Continuing)

Q. Did you and -- well, let's go onto the Exhibit number 3, which we have called the second note here. And that is referred to in Exhibit 1, the Judge's log, as --

A. Are you talking about where on Exhibit 1 of 1:55 and 3:05?

Q. Nine o'clock.

A. Okay. The middle one?

Q. Yes. Do you recall in looking at Judge Lynn's log of events that happened during the deliberation as well as Exhibit 3 the actual note referred to by that entry, do you recall Judge Lynn talking to you about that note?

A. No.

Q. Did Mr. McGlennen ever talk to you about that note?

A. I don't know.

Q. It is possible you --

A. Did Mr. McGlennen talk to me about this note?

Q. Right?

A. The only conversation I remember talking to Mr. McGlennen about the jury notes was there was an event

where we went into court during jury deliberations. And I don't know if I spoke to him by phone or in person, but I do remember talking to him about that incident on the record, but these I don't.

Q. Okay. And you had no problem getting a hold of Mr. McGlennen to talk about the third note?

A. When he was out of -- the only time I guess to distinguish it when it was in court, an in court question when we went on the record, I remember talking to Mr. McGlennen. I know he was traveling at that time. I don't recall the exact days. But if you want to know my whereabouts, I was mostly sleeping for the week in my office with the lights out, because I was exhausted. So I was sleeping in the office and the only conversation I had with Judge Lynn was I would call his office and let him know of my whereabouts if the jury came back. And I let him know on Saturday I was at the Decathlon Athletic Club. And on Saturday he telephoned me and I came in and got the verdict.

Q. After -- so your testimony is you don't know -- you weren't contacted by Judge Lynn with respect to Exhibits 2 and 3?

A. Not that I recall, sir.

Q. Okay. And you say, not that you recall?

A. Meaning I have gone over the file, I have gone over the

events, I have gone over everything I could to see if there is any way I could have -- I would have memorialized something. Mr. McGlennen and you all know I am a stickler for putting things on the record, and that is how I do things. So I don't recall not saying that it could have happened or couldn't happen. To the best of my recollection today, I did not have a conversation with Judge Lynn on Exhibits 2 or 3.

Q. But you can't say that with certainty?

A. I would say I am pretty certain about that.

Q. I guess I am trying to figure out which was it?

A. I would say I am certain.

Q. You are certain? Absolutely certain?

A. As best as I can be, yes. I mean, this was 10 years ago.

Q. I understand that. At what point did you become aware of those two notes?

A. About the notes, again we are talking historically, I would say when I read a newspaper article Mr. Mckenzie was bringing an appeal. It might have been before that when your office -- around that time you sent me a letter with this Exhibit (indicating), a copy of Exhibit 1, and you asked me of Mr. McGlennen's whereabouts and I told you where he was officing.

Q. And you are sure about that?

A. As best as I recall, sir.
Q. Being co-counsel with Mr. McGlennen, would you be privy to motions such as a motion for a new trial?
A. Yes. And to that, I think another lawyer was involved with that. I was not involved with the motion for a new trial.
Q. Two weeks after the verdict you weren't involved in it?
A. From what I recall, Mr. McGlennen and I met right after the verdict, shortly thereafter. And there was a lawyer by the name of Robin Magee who was interested in a new trial motion. And my position was that I was done. I had done my job. I am not going to get involved with that, as best as I can recall. I wasn't happy about the fact another lawyer was coming in. And if they were so interested in doing it, they could do it, but I was done. I was exhausted from the case.
Q. So if the motion -- if there was a motion for a new trial, you were not privy to the grounds for that?
A. There was discussions but I didn't want to be involved with it. There might have been some motions filed. I know there was a lot of talk about that. I was very upset after the verdict and I really didn't want anything to do with it.
Q. Okay. And you do not recall having any discussions back at that time with Mr. McGlennen about any notes or

anything?

A. I don't recall that at this point. I remember that he was filing -- or any motions that were going to be filed, he was going to file them -- or I should say he was going to draft them. I had no desire to get involved with the drafting of any of that stuff.

Q. Okay.

A. And that was mainly again because Ms. Magee had been involved with the case.

MR. STREITZ: I have no further questions at this time.

THE COURT: Mr. Mckenzie, do you have any questions?

MR. MCKENZIE: Yes, ma'am.

CROSS-EXAMINATION

By Mr. Mckenzie:

Q. All right. We are going to go over -- he has already asked you questions about Exhibits 2 and 3. And my understanding is that Mr. McGlennen didn't -- you or Mr. McGlennen did not have any conversations about these notes?

A. I don't recall any such conversations, Mr. Mckenzie.

Q. Let's go to areas I want to talk about. There was a note on October 21, 1993, at 1:55?

A. I think that -- is that Exhibit 3?

Q. No.

MR. MCKENZIE: This is an exhibit I want to mark as an exhibit. It is not marked. I would like to have it marked.

MR. STREITZ: I guess I am not sure of the relevancy of this if that is not one of the two notes that was sent back by --

THE COURT: All right. But we will make the record.

MR. MCKENZIE: If it is in order, it will be marked Exhibit 4.

THE COURT: No, sir, we have got 4. So this will be Exhibit 6.

(Whereupon, Exhibit 6 is marked for identification.)

THE COURT: Exhibit 6 has been marked for identification and this is a note received 10/21/93 at 1:55. And so we will return this to Mr. Martinez.

MR. MCKENZIE: Thank you.

By Mr. Mckenzie: (Continuing)

Q. Do you remember that note or recognize it?

MR. MCKENZIE: Excuse me. Before we start, did you get a chance to look at it?

MR. STREITZ: I have a copy of it.

THE COURT: Did you want it admitted at this time?

MR. MCKENZIE: Yes, please.
THE COURT: Any objections?
MR. STREITZ: No.
THE COURT: It is received.
WITNESS MARTINEZ: Very faintly. The only thing I remember out of this is premeditation.

By Mr. Mckenzie: (Continuing)

Q. Okay. Well, that --
A. I am saying this, I mean when the jury was deliberating, I mean that was our concern was premeditation. As I look at this note, Mr. Mckenzie, I am sorry I don't recall seeing this note.
Q. Okay. Do you recall holding a hearing on October 21, 1993?
A. Regarding this note?
Q. Yeah, regarding that note?
A. What date?
Q. October -- right here the transcript says --
A. Going into court?
Q. Excuse me?
A. Going into court, you mean?
Q. It was dealing with the jury having a question. And I believe it was you and Mr. Streitz?
A. I remember going into court on a question. And all I recall from it is premeditation.

Q. Okay.
A. I remember that being the issue. You know, it was 10 years ago. I don't recall reviewing this note, but I do remember going into court and talking about premeditation.
Q. Okay. At that time, during --
MR. MCKENZIE: I have a transcript of the hearing I would like to have placed into evidence and marked as an exhibit.
THE COURT: Well, where are we going with this?
MR. MCKENZIE: Well, I just want to ask him if he remembers at any point during that hearing did Judge Lynn ever mention that there were other notes besides that one prior to the hearing. And I have the transcript here. I mean, if he wants to, you know, take the time to review it to kind of recollect what happened during that hearing.
THE COURT: All right, to that limited extent we will let it be.
MR. MCKENZIE: I have an extra copy if you want one.
MR. STREITZ: I have seen it before. It is part of the record anyway, Mr. Mckenzie. I just want to make sure what we are introducing here.

the trial?
A. Yes, sir.
Q. Does that include during when a jury has questions of law or to review evidence?
A. I would think so.
Q. As an attorney, is it your I belief, I will say duty, to protect a client's constitutional rights?
A. That is correct.
MR. MCKENZIE: No, more questions.
THE COURT: Mr. Streitz.
MR. MCKENZIE: Oh, I do. I have one more question. No, I think this will be for McGlennen.
THE COURT: Mr. Streitz.

ADVERSE REDIRECT EXAMINATION

By Mr. Streitz:
Q. Mr. Martinez, would you agree that Mr. McGlennen is a seasoned trial attorney?
A. One of the best.
Q. And that he has excellent judgment?
A. Ah, sometimes.
Q. Would you think that if Mr. McGlennen felt he needed to have a client present in response to a jury giving a judge a note during their deliberations that he would exercise good judgment as to whether the defendant should be present or not?

WITNESS MARTINEZ: Would you like me to review this, Judge?

THE COURT: Yes, sir. ~~Transcript,~~ ~~Exhibit Number~~ 7. And you want Mr. Martinez to look at it to see if it refreshes his recollection regarding that hearing?

MR. MCKENZIE: Yeah, exactly.

WITNESS MARTINEZ: (Witness complies).

THE COURT: Okay, Mr. Martinez, you have had an opportunity to review the transcript of that hearing on October 21, 1993. Does it refresh your recollection with respect to that hearing?

WITNESS MARTINEZ: I do recall the hearing after reading it, Judge.

THE COURT: All right. Mr. Mckenzie.

By Mr. Mckenzie: (Continuing)

Q. During that hearing, do you recall Mr. -- excuse me -- Judge Lynn ever mentioning Exhibits 2 and 3?

A. No.

Q. Do you recall Judge Lynn -- well, do you recall Judge Lynn mentioning Exhibit 1?

A. No.

Q. All right. As an attorney, are you aware that a defendant, or the person that you are representing, has a constitutional right to be present at all stages of

A. I can tell you that in this trial particularly Mr. McGlennen and I were in a difference of opinion regarding what was on the record and off the record regarding jury instructions. It was my request all those things would be put on the record. I was pretty firm what that. We divided the work up. Mr. McGlennen would deal with the jury instructions and, as a result, he had the call on that, so I didn't jump into that.

Q. Okay. So in terms of what happened during jury deliberations, you deferred to Mr. McGlennen?

A. Unless I was involved directly. For example, with the one note and when I was called by Judge Lynn for the verdict.

Q. And you had no problem deferring to his judgment?

A. No.

MR. STREITZ: Thank you. I have nothing further.

THE COURT: Mr. Mckenzie, do you have anything else?

MR. MCKENZIE: Could he review this, please? Minnesota Rules of Court. I don't want it in evidence. I just want him to read the Rules.

WITNESS MARTINEZ: Sure, if that is okay with the Court.

MR. MCKENZIE: The highlighted parts.

THE COURT: Rule 26?

MR. MCKENZIE: Yeah, 26.

WITNESS MARTINEZ: Would it be subdivision 19, Mr. Mckenzie?

MR. MCKENZIE: Exactly.

WITNESS MARTINEZ: (Witness complies.) I have read them.

RECROSS-EXAMINATION

By Mr. Mckenzie:

Q. As an attorney, it is your understanding of those Rules are they mandatory with regards to those -- the subdivisions you just read?

A. Let me read them again. (Witness reads Rules.) The reason I would say they are mandatory is because the word "shall" is in there instead of "may."

Q. Okay. So for --

A. At least for paragraph subdivision 9, paragraph 3, wherever the word "shall" is I would say it is mandatory.

Q. If I am not mistaken, that paragraphs talks about --

A. Would you like this back?

Q. Yeah. Subdivision 3 --

MR. STREITZ: Are you talking about additional instructions after the jury retires?

MR. MCKENZIE: Exactly. And that is

dealing with "If the jury after retiring for deliberations desires to be informed on any point of law, the jurors are to notice to the prosecutor and defense counsel should be conducted to the courtroom."

By Mr. Mckenzie: (Continuing)

Q. My understanding of your question is that this specific Rule 3 is mandatory?

A. If it says "shall," I would say yes.

Q. Okay.

A. Mr. Mckenzie, again that is giving you that off of just reading that. I mean, there is other case law out there. I would have to review a legal opinion about the Rule. The Rule has a mandate to it. Whether case law says different, I would have to look at it.

Q. Okay. Did you read subdivision 1, too?

A. Yes, I read them all.

Q. So with regard to all those subdivisions, "shall" means mandatory?

A. Yes. I was on a Rules Committee for 10 years and when we drafted these Rules, we gave as guidance for the court to act in a general way throughout the state. Again, you know, we based that off of case law. The case law will take precedence over the Rule. So the case law could change and the Rule could change. With that caveat, if a Rule says "shall" that is what you

THE COURT: Mr. McGlennen, I just need to advise you as I did Mr. Martinez that Mr. Mckenzie has asked that you be called to testify. So in that respect, the Court is ordering you to testify regardless of your initial concern regarding attorney/client privilege. Is that correct, Mr. Mckenzie?

MR. MCKENZIE: Yes, ma'am.

WITNESS MCGLENNEN: The privilege is waived?

THE COURT: Yes, sir. And also, Mr. Mckenzie, did you want Mr. Streitz to then commence the questioning and then you follow?

MR. MCKENZIE: Yes.

THE COURT: All right. Then we will do it that way.

MR. MCKENZIE: As far as the attorney/client privilege, what aspect of that is waived?

THE COURT: With respect to these two questions. Not with respect to what you two communicated to during the trial. We are going into issues regarding the questions, any communications between you and those questions with respect to those questions, either during the course of jury

a portion of his trial log that he personally kept during the course of the entire trial, and that particular page pertains to two notes. One has been marked Exhibit 2 and that is referenced on 2:15, 10/20. And the second note is referred to on the nine o'clock entry on his log. So that --

THE COURT: On 10/21.

WITNESS MCGLENNEN: So that Exhibit 2 is number one on October 20th?

By Mr. Streitz: (Continuing)

Q. Right. In fact, I think I sent you a copy of Exhibit 1, didn't I?

A. You did.

Q. I did. Judge Lynn has testified under oath that he contacted you by phone and wrote a contemporaneous notation in his jury log -- or his trial log -- that he in fact phoned you with respect to Exhibit 2. Do you see his notation on his log sheet?

A. "Phoned McGlennen - he wants me to just to say they have the law"?

Q. Yes.

A. Yes.

Q. Do you recall Judge Lynn phoning you with respect to what has been marked as Exhibit 2 that particular note?

A. No.

Q. Are you saying that Judge Lynn is wrong in his entry or his testimony in that he phoned you and talked to you about that note?
A. I am saying I have no recollection of any communication from the jury or my response to any question by the court about that, given the circumstances of the jury deliberations.
Q. Okay. And I just want to characterize this the correct way, and I sure you won't let me put words in your mouth, but you are saying you have no independent recollection of that conversation with Judge Lynn?
A. Yes, I am saying that. I was surprised to learn that there was communication from the jury. And so I would have spoken to someone about communication from the jury. It did come as a surprise to me. I have no recall of any questions coming from the jury. I wasn't available during the deliberation.
Q. Well, Judge Lynn is saying he phoned you?
A. I see that.
Q. Do you have any reason to dispute Judge Lynn's testimony?
A. Well, the only -- I think we argued the case on a Monday which was like the 16th. I had longstanding plans to be in California with my daughter that week and I was anxious to leave. The afternoon of my final

arguments, I went over and talked with him. I told him I wouldn't be available during the deliberations. I had longstanding plans and, in fact, I was exhausted from the trial, that anything he needed he would have to see Mr. Martinez about. And I left. So I don't believe on the dates -- I have checked my calendar. I don't believe, Mr. Streitz, that on the date that I was around. I don't have anything to verify that or to show that, but I know -- I talked to my wife about it, I have consulted my calendars. I believe that I left that Tuesday morning which was like the 17th or 18th, a day or so before these notes would have come. Now if he "phoned McGlennen," I didn't have a cell phone in those days. I may have called into the office and there is some possibility that a three-way communication was set up by my secretary. But I have no recollection of that. I certainly can't say that Judge Lynn is wrong in his writing the notes, but he could be referring to Mr. Martinez or he could be -- I just don't know. I don't have an answer for you.

Q. Well, you knew Judge Lynn's reputation?

A. Of course.

Q. And would you agree there would be very -- highly unlikely that Judge Lynn would make notations on such an important trial and to put somebody's name down

when, in fact, he did not talk to them?
A. That would not be within -- with his way of doing business, no.
Q. Now the notes that we are referring to are notes from October 20th. And your testimony has been so far that you thought that the case had gone to the jury a couple days earlier?
A. It seemed to me that they had done so. I don't know. As I say, I think we argued on a Monday, maybe Tuesday. But as soon as that happened, I know that I visited Mr. Mckenzie at the jail and left, and I just wasn't around.
Q. Personally around?
A. No. I remember talking to Mr. Martinez about that and he was saying, oh, look you left me with all the stuff.
Q. Well, Mr. Martinez testified under oath that he had not been contacted by Judge Lynn with respect to Exhibits 2 and 3.
A. Exhibit 3 is the second note?
Q. Yes. And Judge Lynn testified that he talked to you over the phone on both of those notes. Would you have any reason to doubt Judge Lynn's log sheets and testimony with respect to contacting you?
A. I think as I read the 21st where he says he talked to counsel there, didn't he?

Q. Yes. And his testimony was that he talked to you.
A. I certainly don't think I talked to him twice. If there is some way that that first conversation could have taken place, well, I told you what I can say about that. But I certainly -- I think that I would recall two conversations. Mr. Mckenzie called me about this a year or two ago and mentioned that there were -- he asked me the question, do you recall any notes from the jury? And I said, no, I don't recall any communication from them, why? So it was a surprise then and when you sent these things to me it remained a surprise.
Q. Okay.
A. So I don't have an answer for you.
Q. Okay. So Exhibit 3, the second note, and that is referred to on 10/21/93 at nine o'clock on Judge Lynn's log entry, you have no recollection of Judge Lynn contacting you about that particular note either?
A. No.
Q. Again, given Judge Lynn's reputation, do you have any reason to doubt when he comes in under oath and testifies that his recollection is he talked to you about that note at the time that he would be in error?
A. It is not that I have forgotten, I just don't think that happened. I just -- the logistics of it don't seem to bring it back to mind. He does says, "counsel"

on here. And, of course, he could have talked to you and he could have -- were any -- was Pepi brought back to court for any of these?
Q. According to Judge Lynn, no.
A. I know that I certainly when these questions came, I know that I never -- wasn't available to go and consult with him about it. I never did. I never went back to the jail or talked to him. I never would have said that there is a note, what would you like me to say? So I think some of that would stick in my mind, but it simply doesn't.
Q. Knowing Judge Lynn's reputation, are you suggesting that he would have an ex parte communication with respect to these notes?
A. With --
Q. With just counsel for the prosection and not the defense?
A. No, I am not making that suggestion at all.
Q. So with respect to Exhibits 2 and 3, is this the first -- when is the first time you knew about these notes?
A. I think when you sent them to me.
Q. Are you real sure about that?
A. Exhibit 1 you sent to me.
Q. Yes. I am talking about Exhibit 2 and 3 the actual

notes. When was the very first time you recall knowing about those notes?
A. I think that today is the first time I have seen them.
Q. Well, when did you know about those?
A. I think it may have been a year or so ago when Pepi called me and had said -- well, I didn't know about them. I was told about them. He said, did you know that the jury had some questions during the deliberation? And my reply was no.
Q. Would you agree that your memory of events would have been better closer to the time the trial took place then they are 10 years from that?
A. That is an unfortunate fact of life, yes.
MR. STREITZ: What exhibit number are we on?
THE COURT: Exhibit 8.
By Mr. Streitz: (Continuing)
Q. I am showing you what has been marked as Exhibit 8, Mr. McGlennen, taken from the Hennepin County District Court file in this matter, a Motion for a New Trial dated November 8, 1993, an attached cover letter to Judge Lynn dated November 8th with your letterhead on it, and I take it those are your signatures?
A. Yes.
Q. And an Affidavit, a three-page Affidavit, signed