November 8th, 1993. Is that an Affidavit in support of a new trial --

MR. MCKENZIE: Can I review that, please?

THE COURT: You certainly can. And I will have my clerk make a copy.

WITNESS MCGLENNEN: Yes, this appears to be my work.

MR. STREITZ: May I proceed?

THE COURT: I think we had better let Mr. Mckenzie have a copy of them while you are asking the questions.

MR. MCKENZIE: That is Exhibit 8, right?

THE COURT: Yes, sir. If you want to ask him a question specifically not related to the Affidavit or Motion, you can certainly do that. But if you are going to question him regarding that, Mr. Mckenzie needs to have a copy.

(Whereupon, deputy hands photocopies of Exhibit 8 to defendant.)

MR. STREITZ: Mr. Mckenzie, if you look at the second to last page on this stack. I am going to ask Mr. McGlennen some questions regarding number 8.

By Mr. Streitz: (Continuing)

Q. In the last paragraph on page 2 of your Affidavit I

will read, "As the Court is aware, the entire case was tried upon the proposition that Mwati Pepi Mckenzie was one of the shooters. That is clear from the Court's initial recitation of the summary of the case prepared by the government. It is clear from the government's opening and closing statements and offers at trial. It is also apparent from the jury's early questions that they concluded that he was not one of the shooters or, at the very least, there was sufficient reasonable doubt to acquit him as being the principal, leaving the question as to whether he was an aider or abetter." So in your Affidavit approximately two weeks after the trial, you make reference to the jury's first question as a basis -- part of the basis -- for grounds for a new trial, is that correct?

A. It seems so.

MR. STREITZ: I have no further questions.

THE COURT: Are you offering Exhibit 8?

MR. STREITZ: I am, Your Honor.

THE COURT: Mr. Mckenzie, objections to Exhibit 8?

MR. MCKENZIE: No.

THE COURT: All right. It is received. You may inquire.

CROSS-EXAMINATION

By Mr. Mckenzie:

Q. Good morning.

A. Good morning.

Q. Do you recall representing me in 1993?

A. I do.

MR. MCKENZIE: Can I hand him these Rules of Court, please?

(Whereupon, deputy hands to witness.)

THE COURT: Yes, sir. And, Mr. McGlennen, I think he is referring to --

MR. MCKENZIE: 26.03, 19 --

THE COURT: Subdivision 19.

MR. MCKENZIE: Everything that is highlighted.

By Mr. Mckenzie: (Continuing)

Q. Okay, in your conversations with Mr. Streitz, it says you didn't recall Judge Lynn calling you with regards to any of these requests from the jury?

A. That is correct, yes.

Q. Okay. Pursuant to the Rules of Court, is Judge Lynn allowed to communicate with the jury outside the presence of the defendant, or have ex parte communication with the jury?

A. No.

Q. According to Judge Lynn's notes on -- or excuse me -- his log, Exhibit 1, at 2:25 and -- October 20th of 1993 at 2:25 and October 21st at nine o'clock, by reading his entries into his log would you say that he had an ex parte communication with Robert Streitz?
A. It says that he phoned Robert Streitz.
Q. Okay. Would that be considered an ex parte communication with regards to the jury requesting --
A. Well, I don't think I was parte to it.
Q. As you read the Rules 26.03, subdivision 19(1)(2) and (3), as an attorney are you familiar with those Rules?
A. Yes.
Q. Okay. You already stated on October 20th, 1993, at two o'clock, you don't recall receiving a call from Judge Lynn regarding the jury --
MR. MCKENZIE: Oh, excuse me, Ms. Eagon, you said that additional instructions that wasn't really part of --
THE COURT: Of your earlier question, --
MR. MCKENZIE: Yes.
THE COURT: -- Mr. Mckenzie, dealt with the two o'clock request by the jury for individual copies of instructions.
MR. MCKENZIE: Right.
THE COURT: And I indicated that in my

opinion that was an administrative function and just like asking for pencils or paper, or things of that nature. It wasn't for any question of law.

MR. MCKENZIE: All right.

By Mr. Mckenzie: (Continuing)

Q. Do you recall Mr. Lynn notifying you with regards to that jury's request for individual copies of instructions?

A. No.

Q. Okay. As an attorney, are you aware I have a constitutional right to be present at all stages of trial?

A. Yes.

Q. Okay. On October 20th, 1993, at 2:25 -- that would be Exhibit 2 -- your earlier testimony was you did not receive -- or you didn't recollect receiving a call from Judge Lynn with regards to this note?

A. No, I don't recall that.

Q. Okay. Reading that now, would you say that that question is the jury requesting to be informed on a point of law?

A. There is a file stamp over it, so I can't read it all. It says, "We would like some clarifacation [sic] on some of the if possible" --

Q. "Bylaws."

A. Is that what it is supposed to be?
Q. Yeah. That is what the Minnesota State Supreme Court stated to say, too.
A. Yes, it would be.
Q. On October 21, 1993, at 9:15, your recollection was that you weren't -- that you don't recall Judge Lynn calling you with regards to that note, Exhibit 3?
A. No. The note says -- mentions a number of the witnesses and asks for police statements. I don't have any recollection of that note at all.
Q. As you read that note now, would you say that those notes are requesting to review evidence?
A. Yes.
Q. So as you read Exhibit 2 and 3, and that enjoined with the Rules of Court, would you say that there was a hearing supposed to be held in open court with regards to Exhibit 2 and 3?
A. That would have been at the I think the discretion of the Judge. You should have been informed.
Q. Thank you. Do you recollect receiving a letter from me prior to this hearing with regards to those notes and -- I sent you a letter and Affidavit, that is what it was?
A. Yes, I know that we communicated.
MR. MCKENZIE: Okay. I would like to

submit these into evidence or exhibits into evidence. There is actually two.

THE COURT: I am sorry. I have this cough and you were speaking and I didn't hear everything you had to say.

MR. MCKENZIE: I would like to submit these communications from myself to Mr. McGlennen into evidence. I asked him a question of had I contacted him prior to this date, or this hearing, and my reason is it buttresses that I didn't know about this information before I received it with regards to Mr. Streitz. I guess I came to the conclusion that he assumed I knew about these notes years before or sometime directly after my direct appeal, during my direct appeal. So I would like to introduce these notes into evidence.

THE COURT: All right. So we can number them.

MR. MCKENZIE: Okay. There is -- these are the originals. There is two originals. There is one original note and there is one original Affidavit. And here goes the typewritten copies of each one.

THE COURT: Well, I think we don't need the Affidavits, because you are here to testify if you choose.

MR. MCKENZIE: No, the Affidavit was the Affidavit I sent to Mr. McGlennen with regards to his recollection of the notes.

THE COURT: Oh, I am sorry.

MR. STREITZ: Is it a signed Affidavit?

MR. MCKENZIE: No. We are going to get into that.

MR. STREITZ: Well, I guess I would like to look at them before they are received.

THE COURT: Yes.

MR. STREITZ: Well, are you seeking to offer these, Mr. Mckenzie?

MR. MCKENZIE: Yes.

MR. STREITZ: I will object to --

THE COURT: Well, first of all, we have to have them marked. Shall we make them all one exhibit, Mr. Mckenzie?

MR. MCKENZIE: Yes.

(Whereupon, Exhibit 9 is marked for identification.)

MR. STREITZ: Your Honor, I will object to those. They are not signed. I have no idea when they were supposedly drafted and sent. They bear no dates. And Mr. McGlennen is under oath testifying, and I don't know an Affidavit unsigned by him would be relevant to these proceedings.

MR. MCKENZIE: The relevancy is --

THE COURT: Excuse me. Let me just first indicate what this is. There seems to be writings by Mr. Mckenzie to Mr. McGlennen dated September 1st. Actually, two matters dated September 1st. A second yellow paper stating, "Affidavit." And it is "Affidavit of Michael McGlennen" that is unsigned. And then there is a typed non-affidavit of Michael McGlennen that is unsigned. So the Court -- I am sorry. Mr. Mckenzie, you are entitled to argue why I should admit these exhibits.

MR. MCKENZIE: Well, it goes -- it is in regards to the question I asked him if I had contacted him prior to this day about the notes. And he testified that we had had a phone conversation that we discussed the notes and he had no recollection. So what I did was send him an Affidavit to sign, and he never signed it. That is just a copy. So that is all it is for. Just evidence that we had a discussion about these notes.

THE COURT: All right. Perhaps then we will have Exhibit 9 marked. And to the extent that it may assist Mr. McGlennen in refreshing his recollection, I will permit you to use it for that purpose.

MR. MCKENZIE: Okay.

THE COURT: But it is certainly not an exhibit that speaks to the truth of the matter that is in it.

MR. MCKENZIE: Right.

THE COURT: So that I won't admit the exhibit per se, but I will permit you to ask Mr. McGlennen questions with respect to it assisting him in his testimony before the Court this morning.

WITNESS MCGLENNEN: I think I have it, Judge.

THE COURT: All right. Mr. Mckenzie.

By Mr. Mckenzie: (Continuing)

Q. Okay. Do you recall me sending you that Affidavit to sign and a letter along with it?

A. Yes.

Q. Okay. And your response to that Affidavit right now would be?

A. I think it is true. It is -- the reference is three notes. One from -- which I think is Exhibit 2 -- 10/20 at 2:25. One from 10/21 at 9:15, which I think is Exhibit 3. And one from 10/21 at 1:55 p.m., which I don't have it front of me. And I don't know what it is or if it exists. And my response to you was in 2002 that I had no recollection of having seen those notes.

Q. Did you ever inform or contact Arthur Martinez about the notes sent to Judge Lynn from the jury?
A. No.
Q. Did he ever contact you about the notes sent to Judge Lynn?
A. At what time? When they were delivered or recently?
Q. On -- when they were delivered October 20 and October 21st?
A. I know that I probably called back to the office to talk with Arty. But the subject of notes from the jury, I don't know that that came up.
Q. Did you ever have a discussion with Mr. Streitz regarding any of the notes prior to this date?
A. Yes. He and I talked a month ago, or so. He called me and asked me to search out my file and see if I had any notes that I would have made at that time in '93 that would refresh my recollection about these things and check with my calendars, and I did that.
Q. During that discussion, did you ever ask him if he had made any contemporaneous notes with regards to these notes being passed back and forth, and being passed from the Judge to the jury, and his communication with Judge Lynn?
A. No, I didn't ask him.
Q. Did he mention that?

A. No.
Q. As an attorney, is it your duty to insure that a client's constitutional rights are protected at all times during the trial?
A. Yes.
Q. As an attorney, are you aware that it is also the prosecutor's duty to protect a defendant's constitutional rights at all times during the trial?
A. Yes.
Q. Did you ever have any conversations with George Widseth about the notes sent from the jury to the Judge?
A. I don't believe so.
Q. At any time during the dates of October 20th through October 21, 1993, did I ever give you my express permission to waive my presence at any stage of the trial?
A. No.
Q. On October 20th through October 21st, did you or I have any consultation regarding the notes sent to Judge Lynn by the jury?
A. No.
Q. At any time during the jury deliberations were you aware that there was any contact between the Judge and the jury whether verbally or written with regards to the note?

A. I have no recollection.

Q. Were you aware that Robert Streitz had ex parte communications with Judge Lynn regarding these notes?

A. I don't know that now and I didn't know it then.

Q. With regards to this Affidavit, I really didn't have enough time to sit and think about this because I just received it. But the jury questions in here where it states, "It is also apparent from the jury's early questions that they concluded that he was not one of the shooters." That statement, those jury questions, are you talking about the jury questions the hearing that Arthur Martinez had on I believe it was October 31, 1993, at 3:05?

A. It is seems to me from my Affidavit that I am talking about Exhibit 2. And some time after return of the verdict, I learned that they had questioned aiding and abetting. And I do recall that Judge Lynn and I had heated debates over his aiding and abetting instructions. I told him he was directing a verdict. I think we had elevated conversation in chambers. I was very much upset about it. And I know that if I learned later that that was precisely the jury's question, I would have been extremely upset. I am upset today about that instruction. But that doesn't -- even with that, I don't recall a conversation with

him about it. I am -- whether I learned that from Arty or whether I learned that in conversation in the hallway with Judge Lynn after the verdict when I returned, which would have been a couple of weeks after, I don't recall. But it is clear that I am referring to something concerning Exhibit 2. As to the other notes --

Q. Okay. So you are saying that this question here, or this statement I should say, in this Affidavit or Motion for New Trial is referring to Exhibit 2. But you have no recollection of how -- or if you saw this note or received the note, or if you had a conversation --

A. I still believe that I -- well, I know that I didn't see them contemporaneous with their delivery. At the time of their delivery, I didn't see them. It wouldn't have been the practice to go over and look at them. I would have heard about them over the telephone. But it seems to me as you put it together that I am referring to some question by the jury about aiding and abetting.

MR. MCKENZIE: No more questions.

ADVERSE REDIRECT EXAMINATION

By Mr. Streitz:

Q. You were obviously available by phone during deliberation, correct?

A. Not all the time. Like I said, I didn't have a cell phone. I would have had to have gone to California and left -- I think Marcine (phonetic) was our secretary then left her phone number. I probably would have called in myself.

Q. The reason I ask is because you testified you certainly phoned your co-counsel?

A. Yes, I would have phoned him. That would have been the likely procedure.

Q. With respect to the note marked Exhibit number 3, "Would like" -- excuse me -- "Would it be possible to get the original police statements of Loverine Harris, Richard and Olivia Gregory?", would you agree, Mr. McGlennen, that in no way could a judge ever submit evidence to a jury if it had not -- during its deliberations if it had not been received into evidence during the trial?

A. Of course. And I don't believe the original police statements of these three were ever in evidence except maybe some rebuttal, but I don't think they were.

Q. Okay. So your recollection would be there really wasn't anything Judge Lynn could do with respect to that request anyway?

A. He could deny it.

Q. Right. But he couldn't give them evidence that hadn't

been received?
A. No.
Q. With respect to Exhibit 2, the note, "We would like some clarifacation [sic] on some of the" --
A. I have been told that is "bylaws."
Q. "if possible - Pretaining [sic] to First degree Murder Charge - Aiding & Abeting [sic]." If Judge Lynn had, in fact, responded to the note saying to the jury in effect you have the law, what prejudice would that be to any party by giving that answer?
A. Well, I don't mean to be flip, but if it was wrong it would certainly prejudice Mr. Mckenzie. But he had already established the law of the case, and he had delivered the law of the case, and he was telling them to refer to the law of the case that I have given to you.
Q. In your practice, which has been some time, you I am sure have had a jury deliberating and a judge would call you up and say such things as I have a note or the jury has a question, or things of that nature, without the other attorney, the prosecutor, being on the phone with you, correct?
A. Yes, it has happened.
Q. And I suppose one could construe that as ex parte?
A. It is ex parte.

Q. Do you have any quarrel with those type of phone calls?
A. No. It is routine. It is sometimes followed up with a three-way conversation where sometimes you are told to come. But it does happen and you are just being advised, and so I don't take it as asking for advice or rhetoric in conversation about it.
Q. Okay. Mr. Martinez, and I stand corrected if I mischarterize this, has testified that he had not had any conversations with you with respect to Exhibits 2 and 3, the notes from the jury that are referenced in Judge Lynn's log. Yet on November 8th you make reference to not plural jury questions?
A. Yes, I am puzzled by that, too, because there is only one question about aiding and abetting.
Q. But nevertheless in a signed Affidavit you put "questions"?
A. I did. I was somehow -- I know I hadn't seen the note or looked at it, but I had somehow been informed that the jury had questions about that very same thing that I felt was critical to the case and that I told Lynn was critical to the case.
Q. And it very well could have been that Judge Lynn is correct in that he had phone conversations with you about those notes as reflected in his log?
A. I have said what I have to say about that.

MR. STREITZ: I have no further questions, Your Honor.

THE COURT: Mr. Mckenzie?

MR. MCKENZIE: Yes.

RECROSS-EXAMINATION

By Mr. Mckenzie:

Q. With regard to Exhibit 3, was there a hearing supposed to be held with regards to this note and was I supposed to be informed?

A. You, of course, should have been informed. Whether there should have been a hearing was up to Judge Lynn. I think that this question, if my recall serves me, that these were not exhibits before the jury but simply during the course of the trial I had asked Richard or Loverine Harris or Olivia Gregory, didn't you tell the police in your report to them, such and such. That may have peaked the jury to read the whole thing. But they would not have been in evidence, and it would not have been appropriate for Judge Lynn to have delivered them to the jury.

Q. Would it have been appropriate for him to at least hold a hearing and inquire about the question and give me an opportunity to be heard, give you an opportunity to represent me, and at least try to get those statements into evidence so they could review them?

A. Well, your question is a little compound. He would have been required to notify myself or Mr. Martinez and counsel for the State that a note had come. And he would simply tell us that he had planned to tell them no. After that, it would have been my duty to come and inform you of that event. But there would have been little I would of or could have said about this note, as I recall the evidence now.

Q. With regards to I believe it was Exhibit 2, are the elements of the offense supposed to be given to the jury?

A. Yes.

Q. That is mandatory?

A. Yes.

Q. In your practice -- in your years of practice in law, is it routine where there are questions of law involved that a judge does not hold a hearing, contact counsel for both the State and the defendant and inform the defendant?

A. He would have no contact directly with the defendant, but he would contact the lawyer and he would have certainly enlisted my advice about the question, ask me what I would do. And if there was going to be some communication other than what he had already given to the jury, it would require your presence. In other

words, if he was going to add to the previous instruction, clarify it in some way, take our advice about some things, he would have called you back to court and me with you.

Q. Is it your understanding or your recollection that with regards to that question I just asked you was I ever informed?

A. No, not by me.

MR. MCKENZIE: Okay. No more questions.

THE COURT: Anything further?

MR. STREITZ: No, Your Honor.

(Whereupon, the witness is excused.)

MR. STREITZ: What exhibit number are we on, Your Honor?

THE COURT: We would be 10.

MR. STREITZ: Your Honor, at this time, I would offer Exhibit 10. I have given a copy to counsel. It is an Affidavit from Judge Lynn --

THE COURT: "Given a copy to counsel." What about Mr. Mckenzie?

MR. STREITZ: I am sorry, to Mr. Mckenzie.

THE COURT: Thank you.

MR. STREITZ: And I would offer this as an exhibit rather than calling Judge Lynn once more to