the stand and taking him away from his duties.

MR. MCKENZIE: Is that a part of his ledger again?

MR. STREITZ: Yes.

MR. MCKENZIE: Is that what this is?

MR. STREITZ: Yes.

MR. MCKENZIE: Okay. I have a copy. What is the purpose?

MR. STREITZ: It establishes when the jury actually began deliberations, Your Honor.

MR. MCKENZIE: I thought the ledgers and the notes and the other ledgers established that.

THE COURT: I think if you look at paragraph number 4, Mr. Mckenzie, he indicates that the jury began their deliberation on October 19th at 5:05.

MR. MCKENZIE: Okay. No objection.

THE COURT: I gather this is an indication of what the questions were that he received during the course of the jury deliberation.

MR. STREITZ: Yes, Your Honor.

THE COURT: All right. No objection. Exhibit 10 is received in lieu of Judge Lynn's testimony. Now Mr. Mckenzie, you had some other requests.

MR. MCKENZIE: Yeah, I would like to go

over the subpoenas. I feel that my appellate counsel should be here testifying, because I informed him about these notes, Michael Cromett. And he sent me a note basically -- or a letter -- stating he had no recollection of the notes because it was his job to get the Court file. And he did not -- when he received that Court file, he didn't see the notes. And from what the State Supreme Court is saying, they want to know exactly why I wasn't -- why I didn't know about these notes or when I should have known about the notes. And I think his testimony is pertinent to that.

THE COURT: All right. So you have an affidavit from him?

MR. MCKENZIE: No, I have a letter from him.

MR. STREITZ: Yes, Your Honor, and I have no objection to that letter being introduced. In fact, --

THE COURT: I just wanted to make sure that I make a proper record. So if we could just have the -- did you want the letter made an exhibit, Mr. Mckenzie?

MR. MCKENZIE: I would like his testimony.

THE COURT: All right. If I could see

the letter, I will see what it says. For purposes of the record, it is a letter dated July 25th, 2002, by Michael Cromett, Assistant State Public Defender, to Mr. Mckenzie stating, "At this point, I have no specific recollection of any jury questions in your case. Since the standard appellate practice of the office is to obtain a copy of the District Court file and my practice is to review that record completely, if they were in the District Court file I would have reviewed the notes." So you want a subpoena from him? Or what was he going to add to this, or not? Essentially what he is saying is he doesn't remember seeing them and had they been in the file he believes he would have reviewed them.

MR. MCKENZIE: Well, if you don't feel his testimony is necessary, then I would like to submit that as an exhibit.

THE COURT: All right. So this will be Exhibit number 11. It will be part of your file for the evidentiary hearing.

MR. MCKENZIE: Right.

THE COURT: All right. We will have this marked.

MR. STREITZ: And I have no objection, Your Honor. I was going to introduce it.

(Whereupon, Exhibit 11 is marked for identification.)

MR. STREITZ: Your Honor, I should note that that letter was one of the exhibits that Mr. Mckenzie had attached to his original latest post-conviction Petition that you had reviewed and you had denied. It is already part of the record.

THE COURT: And I will indicate then for purposes of the record that the letter is received, Exhibit number 11, is received in lieu of Mr. Cromett's testimony. Anything else, Mr. Mckenzie?

MR. MCKENZIE: Well, since I don't have any letters from Robin Magee or Keith Ellison, Mr. Martinez talked about her doing -- having discussion about the appeal after the conviction. And I believe their testimony is necessary because it -- I mean, it pretty much buttresses that letter that during all those appeals they all received the files, they all went to the District Court file, and the letters weren't there -- or, excuse me, the notes from the jurors weren't in that District Court file.

MR. STREITZ: No, no, no, Your Honor, that is a mis-characterization. No one had said they weren't in there. In fact, Judge Lynn said they were in there at the date they were file stamped.

MR. MCKENZIE: Mr. Cromett is saying

they weren't in there.

MR. STREITZ: That is not what he says.

MR. MCKENZIE: That is what his letter says.

MR. STREITZ: That is not what --

THE COURT: I am sorry, the Court is the one to interpret the letter based upon what it says. So you want to have the testimony of Ms. Magee and Mr. Ellison to deal with the issue of whether or not they have seen these notes and if they were in the file, or could have been in the file, when they took on the appeal?

MR. MCKENZIE: Exactly.

MR. STREITZ: If I may, Your Honor. Michael Cromett did the direct appeal. One of the post-convictions was done by Mr. Ellison and Ms. Magee.

THE COURT: So the post-conviction hearings before Judge Lynn were handled by Ms. Magee and Mr. Ellison?

MR. STREITZ: I believe they did one of them and it wasn't a hearing. It was a Motion post-conviction Petition that I think was denied summarily by Judge Lynn.

THE COURT: Is that your recollection, Mr. Mckenzie?

MR. MCKENZIE: I have the Petition right here. Yeah, it was denied all the way to the State Supreme Court.

THE COURT: You have the Petition there. Could I see it, please.

MR. MCKENZIE: Would you like the brief, too?

THE COURT: No, I don't need the brief.

(Deputy handing Petition to Court.)

THE COURT: I mis-spoke, Mr. Mckenzie. Do you have the brief?

MR. MCKENZIE: Yes.

THE COURT: Could I see it. (Deputy handing brief to the Court.) All right. I have now reviewed the Motion by -- or the memorandum and the brief. What did you want to add now at this point?

MR. MCKENZIE: It just goes back to the question, are you going to subpoena them so they can come testify as to their knowledge about the notes sent from the jury to Judge Lynn?

THE COURT: I am going to assume for purposes of this hearing that their statement would be the same as Michael Cromett. And that will be the Court's reasoning for not subpoenaing them to testify

additionally.

MR. MCKENZIE: With regards to Mike Cromett's letter, a conversation that we had about the interpretation --

THE COURT: Well, you can make an argument and I will give you an opportunity to make your argument.

MR. MCKENZIE: No, I just want to know how the Court is interpreting that letter. You said it was up to the Court.

THE COURT: It is up to me and I have to review it. It just was handed to me, so I need to review it in light of all the evidence that I have heard.

MR. MCKENZIE: Well, I will say this: That my interpretation of the letter is he followed the legal rules of I believe it was appellate procedure in obtaining the District Court file. And in obtaining that District Court file, he went through it thoroughly. Well, it doesn't say in the letter per se thoroughly, but he reviewed the file. And in reviewing that file, he didn't see any of the notes sent from the Judge -- excuse me -- from the jury to the Judge.

THE COURT: And is there any further argument you would like to make?

MR. MCKENZIE: No.

THE COURT: Mr. Streitz.

MR. STREITZ: Your Honor, to complete -- well, I don't know if Mr. Mckenzie has any other witnesses he wants to call?

THE COURT: I think this was his closing. Is that right? Is that correct that you were making no further argument regarding any of the issues that you have raised?

MR. MCKENZIE: Well, I have to wait and see what he is going to say.

MR. STREITZ: Well, the only thing I was going to add, Your Honor, if it would complete the record I would have no opposition to my trial co-counsel back then, Mr. George Widseth, who is present taking over. And if Mr. Mckenzie and the Court has any questions to ask me, I would be more than happy to take the witness stand.

THE COURT: Did you want to ask Mr. Streitz any questions or have Mr. Widseth --

MR. MCKENZIE: If he is willing to take the stand.

THE COURT: All right. And also, Mr. Mckenzie, one thing is critical and this has to do with whether or not -- and we haven't taken your testimony,

but whether or not you knew and when you knew.

MR. MCKENZIE: That Affidavit I submitted to the Court should be sufficient.

THE COURT: All right. So the Affidavit, that is Exhibit number 4 --

MR. MCKENZIE: Exactly.

THE COURT: You want me to consider this in lieu of your testimony?

MR. MCKENZIE: Right.

THE COURT: That you didn't know of these two questions, that you didn't have communication with your attorney about them. And the first that you personally knew about them was when you received the questions in this manila envelope.

MR. MCKENZIE: Exactly.

THE COURT: Mr. Streitz, any additional questions with respect to Mr. Mckenzie, or are you agreeable that this Affidavit can stand as his testimony?

MR. STREITZ: That is fine, Your Honor.

**ROBERT J. STREITZ,**

after having been duly sworn, was examined and testified on his oath as follows:

THE CLERK: Would you state your full name for the record, spelling your first and last

names, please.

WITNESS STREITZ: My name is Robert J., initial J, Streitz, S-T-R-E-I-T-Z.

THE COURT: Mr. Widseth.

MR. WIDSETH: Good morning, Your Honor. Thank you, Your Honor, for recognizing me. For the record, my name is George Widseth. I am an attorney in the Hennepin County Attorney's Office, and I will be taking over the questioning on behalf of the State for the witness, Mr. Streitz. And the record should note that I was co-counsel with Mr. Streitz during the trial proceeding in this matter.

THE COURT: All right. So Mr. Mckenzie, did you have some questions you wished to ask Mr. Streitz?

MR. MCKENZIE: Yeah, I got a question for Mr. Widseth. I would like --

THE COURT: Not Mr. Widseth. Mr. Widseth is the attorney now. Mr. Streitz is the one that is --

MR. MCKENZIE: Yeah, I understand that. I just want him to clarify if he knew anything about these notes passed from Judge Lynn to the jury?

MR. WIDSETH: Your Honor, I will state in lieu of being under oath that Mr. Streitz was

receiving the questions on this, and my conversations were only with Mr. Streitz.

MR. MCKENZIE: So his conversations with Mr. Streitz, did those two ever discuss the notes?

THE COURT: Well, you have got Mr. Streitz here to ask.

ADVERSE DIRECT EXAMINATION

By Mr. Mckenzie:

Q. Good morning.

A. Good morning.

Q. As a -- do you recall prosecuting this case in 1993?

A. Yes.

Q. Okay. Should I refer to you as an attorney or a prosecutor? How would you like me to --

THE COURT: How about Mr. Streitz.

MR. MCKENZIE: Not Mr. Streitz?

THE COURT: Just refer to him as Mr. Streitz.

MR. MCKENZIE: Okay. Thank you.

By Mr. Mckenzie: (Continuing)

Q. All right. As an attorney, --

MR. MCKENZIE: Who is going to start, me or Mr. Widseth?

THE COURT: I am unclear as to where you want to go with this, so --

MR. MCKENZIE: I will let him start.

THE COURT: Well, I will let you start because Mr. Streitz is making himself available for you, and I don't know what questions you want to ask him. I have an intuition but I don't think Mr. Widseth does either in this particular case. In the other case, I knew what the Court was wanting me to look at. And in this case, I think we need to know what Mr. Streitz knew and whether he had communication with Mr. McGlennen. I am sure he didn't have communication with you. Unless Mr. Widseth knows more than I do on this case, I am sure you do since you tried it, but do you have any --

MR. WIDSETH: Your Honor, Mr. Mckenzie did wish to interrogate or question Mr. Streitz, so I am happy to have him initiate this and then I can respond if there is anything to respond to.

THE COURT: Okay.

MR. MCKENZIE: All right.

By Mr. Mckenzie: (Continuing)

Q. I would like to start with the question of did you or Mr. George Widseth at the time of the jury sending these notes to the Judge -- ah, to Judge Lynn, did you ever discuss that with Mr. Widseth?

A. Are you asking me the specific two notes?

Q. All three of them.
A. All three of them?
Q. Well, since this pertains to this specific two notes then, we will go with, what is that Exhibit 2 and 3?
THE COURT: Mr. Mckenzie, maybe it will be easier if you question him first with respect to Exhibit 2 and then later with respect to Exhibit 3.
MR. MCKENZIE: Okay.
By Mr. Mckenzie: (Continuing)
Q. Well, with respect to Exhibit 2, did you ever have any conversation with George Widseth about those notes?
A. At the time that they were given to the Judge?
Q. At the time you and Judge Lynn discussed it, discussed the note, via phone on October 20th I believe it was at 2:25?
A. 2:25 the afternoon of October 20th with respect to Exhibit 2. First of all, I don't know that I would agree with your characterization that there was a discussion about the note.
Q. How would you characterize it then?
A. Well, as I am sure you are aware, this happened a good 10 years ago, and so my recollection as to events that took place 10 years ago may not always be completely precise, so you have to bear with me. However, some of these things are jogging my memory. Any note that I

would have been made aware of that the jury sent to Judge Lynn, I absolutely would have spoken to George Widseth about it.

Q. So you said so when Judge Lynn according to Exhibit 1 at 2:25 p.m., it states specifically here he "phoned Streitz." And then it says, "OK." So during that phone conversation, or should I say after that phone conversation, did you inform George Widseth of that phone conversation with regards to the jury requesting clarification, or just requesting to be informed on a point of law?

A. I am sure that I would have talked to Mr. Widseth about that phone call from Judge Lynn. And I should -- I have no reason to dispute what Judge Lynn's testimony was with respect to that particular note.

Q. So your testimony is you don't recollect that you talked to George Widseth?

A. Again, 10 years ago, I don't recall the exact -- if in fact a 100 percent certainty that I talked to George Widseth about this specific note after Judge Lynn called me. But I can't imagine not talking to Mr. Widseth about that.

Q. During your years of practicing law and coming across situations like this, has it ever been your practice not to contact your -- I believe George Widseth was

your assistant, or co-counsel, during the trial?
A. Yes.
Q. Is that out of your practice to not -- or inform co-counsel of situations like this with regards to, you know, the jury, deliberating juries having questions of law?
A. Well, I mean, in my -- I don't always have co-counsel with me on cases. When I do, if they are handy, I would certainly talk to them. I don't know if Mr. Widseth was directly available to discuss it. There was really nothing to discuss. There is no input I could have. Judge Lynn could not have answered the note in my opinion in any other way than he did. So there is really nothing to discuss.
Q. With co-counsel?
A. Or with the Judge and later with co-counsel.
Q. Here is says, "Phoned - Streitz - OK." What -- that "OK" leads me to believe there was some discussion and you okayed whatever the outcome of this note was, whether he answered it or he didn't answer it?
A. Well, and I have no reason to dispute what Judge Lynn's log entry is here as well as his testimony. I believe, Mr. Mckenzie, what was done was that Mr. McGlennen, your attorney, was phoned first and told Judge Lynn that he wanted the Judge to just say that they have the