law. And then the Judge apparently phoned me and I said, that sounds okay to me, Judge. And that is what the Judge told the jury.

THE COURT: One moment. All right, Mr. Mckenzie, you may inquire. The reporter has her paper jam taken care of.

<u>By Mr. Mckenzie</u>: (Continuing)

Q. So your testimony is that you don't recollect if you talked to George Widseth about the note?

A. I may very well could have.

MR. MCKENZIE: Well, this is directed to you, Your Honor. I am kind of confused because if he says he doesn't -- his practice is, you know, he informs his co-counsel of things of this nature, that would mean I am assuming he talked to George Widseth so now he is a witness, too. Do you understand what I am --

THE COURT: He is not a witness to whether or not you were informed of the jury question and whether or not you were present or whether or not you should have been present. Mr. Widseth is only a witness with respect to any communication Mr. Streitz had with Mr. Widseth. And whether he told Mr. Widseth or not is not relevant to the issue I have to decide about whether you knew.

MR. MCKENZIE: Okay.

By Mr. Mckenzie: (Continuing)

Q. Do you have the Rules of Court in front of you?

A. I do, sir, 26.03.

Q. (1), (2) and (3)?

A. Yes.

Q. And 26.03, subdivision 1?

THE COURT: Subdivision 19, (1),(2), and (3)?

MR. MCKENZIE: Yeah.

WITNESS STREITZ: Yes, I have got them.

By Mr. Mckenzie: (Continuing)

Q. As a prosecutor, are you familiar with those specific Rules?

A. Yes.

Q. And are those Rules mandatory?

A. The Rules of case law interpretation are what govern we as attorneys in trial.

Q. All right. On October 20th, 1993, at two o'clock, when you received the call from Judge Lynn -- no scratch that. That is dealing with the -- oh, okay. The note sent to him from the jury asked for additional instructions. What was your response to that?

A. We are talking about Exhibit 2?

Q. Ah, Exhibit 1 at two o'clock?

A. I don't believe I was ever contacted by Judge Lynn about that.

Q. It says, here, "notified counsel." So it could have been -- so you are saying you don't recollect him ever calling you?

A. If Judge Lynn said he contacted us, I am sure he did. And I mean, I agree with Judge Eagon's characterization that is kind of housekeeping matters. There is really nothing I can add to that. It is just merely the Judge extending the courtesy of telling us they want individualized copies of instructions they already were given, and that is what he did.

Q. Did you review the instructions before he gave them to the jury?

A. Oh, I agree with Mr. McGlennen that we had extensive conversations and debate with the Judge regarding what the State was wanting to have the jury instructed on as well as what the defense wanted the jury to be instructed on. And Mr. McGlennen and Mr. Martinez were present with me and Mr. Widseth during those discussions. And the instructions that the Judge ended up giving to the jury after Mr. Martinez and I argued the case, were the ones that the Judge finally decided were the applicable ones to give based on all the attorneys having our input.

Q. As a prosecutor, are you aware that your duty is to insure that a defendant's constitutional rights are to be protected and he or she is to receive a fair trial?
A. Yes.
Q. On October 20th, 1993, at 2:25, when you received a call from Judge Lynn regarding the jury wanted to be informed on a question of law -- that would be exhibit --
THE COURT: Exhibit 2. Did you have a question, Mr. Mckenzie?
MR. MCKENZIE: Oh, excuse me.
By Mr. Mckenzie: (Continuing)
Q. What was your response to that phone call? What was the conversation about or what conclusion did you come to with regards to how the jury was supposed to -- how he was supposed to inform the jury regarding this question?
MR. WIDSETH: Your Honor, I believe Mr. Streitz has been asked and has answered that question.
THE COURT: Yes, I will -- is that an objection?
MR. WIDSETH: It is an objection, yes.
THE COURT: I will sustain the objection.
By Mr. Mckenzie: (Continuing)

Q. As a prosecutor, when the jury asks to be informed on a point of law, is it the practice of the court or is it a mandated rule that a hearing is supposed to be held in open court and counsel for the State and defense are supposed to be contacted, and the defendant is supposed to be informed?

MR. WIDSETH: Your Honor, I will object on the grounds that as to that question he is asking the witness to make a conclusion of law, which is actually one of the conclusions I believe this Court has to make.

THE COURT: Yes, that is correct. Mr. Mckenzie, that is the job the Supreme Court has given me to decide.

MR. MCKENZIE: All right.

By Mr. Mckenzie: (Continuing)

Q. At the time of the discussions with Judge Lynn regarding the notes in question, and --

THE COURT: Which note are you referring to?

MR. MCKENZIE: Exhibit 2.

THE COURT: Thank you.

By Mr. Mckenzie: (Continuing)

Q. With regards to Exhibit 2, at any time during that conversation did either of you discuss that I had a

right, a constitutional right, to be present?

A. I don't recall if I had that conversation with Judge Lynn at that time.

Q. As a prosecutor, are you aware that a defendant does have a constitutional right to be present at all stages of trial?

A. All critical stages of trial.

Q. On October 21st, 1993, -- what exhibit -- I believe it was marked --

THE COURT: Exhibit 3.

MR. MCKENZIE: No.

By Mr. Mckenzie: (Continuing)

Q. The October 31st -- or excuse me -- the October 21st note at 9:15 -- what exhibit --

A. Exhibit 3.

Q. Okay. With regards to Exhibit 3, -- excuse me. Okay. As a prosecutor, why didn't you insure with regards to Exhibit 2 and Exhibit 3, insure that there was a hearing held in open court pursuant to 26.03, subdivision 19, (2),(3), and 26.03, subdivision 1(1)?

A. I believe that Judge Lynn followed the Rules with respect to those two jury notes by notifying both counsel, seeking their input, and having no choice but to answer in the way he did, which was really not substantive. He really didn't give them an answer

other than say, you have got what you got, I can't give you any more. And so there was no need to go beyond what he did.

Q. Do you consider his communications with the jury, oral or written, as ex parte communication?

A. With the jury?

Q. I mean, there was some communication going back and forth. If you okayed whatever the response was to the jury on October 20th and October 21st, he had to convey that message back to them. So in conveying that message, would you consider that message an ex parte communication?

A. Well, I don't want to quibble over words. I guess when I think of ex parte, I think of conversations between a judge and attorneys involved, not the jury. But in any event, -- and I believe Judge Lynn said his practice would have been to have given them a note with the answer. He did that with the apparent agreement of Mr. McGlennen and myself to just merely tell them they had the law and they had the evidence that they were entitled to, and he can't really give them anything more.

Q. Okay. During the trial when the Judge is sending a message back to the jury, is it a practice of the Court to make copies of the answers for the replies back to

the jury?

A. You know, I guess I can't answer what various judges do in their practices. I don't know. I just heard what Judge Lynn said his practice was.

Q. Would you consider you and Judge -- ah, the conversation between you and Judge Lynn, would you consider those -- in your definition of ex parte, would you consider those ex parte communications with regards to Exhibits 2 and 3?

A. I suppose you could construe those just as ex parte as they were with Mr. McGlennen, but he was phoned first. And I agree with Mr. McGlennen those kind of phone calls happen routinely.

Q. Is it a routine for the trial court to not hold hearings or -- with regards to Exhibits 2 and 3, is it -- would it be routine for the Court not to hold a hearing specifically with Exhibit 2, because that exhibit entails a question of law? Would that be routine for a court not to hold a hearing?

A. In my experience, the way Judge Lynn handled note number two is routine.

Q. As a prosecutor, is it your duty to insure that the Rules of Court are followed or strictly adhered to?

A. It is all of our duties, prosecutors, defense attorneys, and the judge.

Q. Okay. With regards to Rule 26.03, subdivision 19,(2) and (3), shouldn't it have been your duty to make sure, or insure, that there was a hearing held in open court?
A. As I have testified before, given the nature of the two notes in question, Exhibits 2 and 3, I believe Judge Lynn handled those notes appropriately as I believe Mr. McGlennen testified this morning.
Q. Even in that instance, is it still your duty to insure -- was it your duty to ask Judge Lynn, do you think maybe we should have a hearing on this? Maybe we should make sure Mr. Mckenzie is present with regards to having that hearing?
A. Well, first of all, I can't have communications with you. That is your own attorney.
Q. No, I am asking that question as shouldn't you have asked the Judge that?
A. No, because I believe given the nature of the two notes the Judge did, in fact, contact both Mr. McGlennen and myself to apprise us of what the notes were, and I think he followed the Rule.
Q. As a prosecutor -- during the conversations, did you and Michael McGlennen ever have a conference call or a person-to-person call with regards to these notes on these dates?
A. I don't believe we would have had any conversation.

Q. So I can -- can I take that as a no?
A. Mr. Mckenzie, I am not trying to quibble with you here, but that is the best I can do. I can't -- I don't have any recollection of talking to Mr. McGlennen about Exhibits 2 and 3 at the time that Judge Lynn called us.
Q. Okay. As a prosecuting attorney, are you aware that a defendant's presence is required pursuant to Rule 26.03, subdivision 1?
MR. WIDSETH: Your Honor, I will object.
THE COURT: Sustained. We have been over this before, Mr. Mckenzie.
MR. MCKENZIE: No more questions.
THE COURT: Any questions, Mr. Widseth.
MR. WIDSETH: I have a few questions, Your Honor.

CROSS-EXAMINATION

By Mr. Widseth:
Q. Mr. Streitz, how long have you been an attorney?
A. Since 1979.
Q. And most of that time you have been a prosecutor, is that right?
A. Most of the time.
Q. Before that, had you ever done any defense work?
A. Yes, I was a State public defender right out of law school for approximately a year and a half to a year

and three-quarters.
Q. Was that -- did you work on criminal or civil cases?
A. Totally criminal cases and totally appellate work.
Q. So it would be similar work to what Mr. Mckenzie is talking about now?
A. Yes.
Q. These would be appeals of issues that occurred during the course of a criminal proceeding or the course of a criminal trial, that kind of thing?
A. Yes.
Q. And you and I co-counseled on Mr. Mckenzie's case, is that right?
A. That is correct.
Q. And were you aware of whether or not I had any criminal defense background?
A. You were a public defender for several years. I can't remember, but in 1993 my guess would have been at least 10 years or so you had been with the Hennepin County Public Defender's Office.
Q. The two defense counsel for Mr. Mckenzie, Mr. McGlennen and Mr. Martinez, were they new to the criminal court system?
A. No. They were both very seasoned, experienced criminal defense attorneys that I had known for years.
Q. In the course of your work as a prosecutor, you have

had many cases that have gone to trial, is that right?
A. Yes.
Q. And seen many cases where juries have sent a note to the judge?
A. Yes.
Q. And the way that Judge Lynn handled the two notes in question here, was there anything unusual about that from your experience?
A. No. Given the nature of the jury notes, I didn't feel Judge Lynn handled those any differently than judges have been handling them in other cases.
Q. Had you had any experience with Judge Lynn before that time?
A. Yes.
Q. Was he new to the bench?
A. No. Judge Lynn was a prosecutor in the Hennepin County Attorney's Office when I first started with the Hennepin County Attorney's Office, as was Mr. Michael McGlennen. And so I knew him professionally and then he went into private practice where he did I think mostly civil work, but I think he did some criminal defense work, and then he was appointed to the bench.
Q. Now the testimony that you have been listening to today and the testimony at the previous hearing there has been some suggestion that maybe neither Mr. McGlennen

nor Mr. Martinez received a notice that these notes had been given to Judge Lynn. Would it make sense for Judge Lynn, or any judge, to contact only the prosecutor and not contact defense counsel?

A. No, especially on a case like this that was very high-profile.

Q. Why not?

A. Well, it would just be unethical.

Q. Besides that, would it make sense for the Judge to not inform counsel but to write down that he had informed counsel and then put the notes and just a log of the notes into record?

A. No. A judge would be putting his or her career in extreme jeopardy by doing that.

Q. And what would that do regarding any appeal?

A. That would perhaps be grounds for a new trial.

Q. You have already been asked a couple of questions from Mr. Mckenzie regarding Rules of Criminal Procedure. Just to make perfectly clear, the jury's first question, not specifically at issue here, but where they ask for individual copies of instructions, are they getting any new law that they haven't gotten before, or are they merely getting Xerox copies, photocopies, of the law that they had already gotten?

A. They are getting copies of what they have already

gotten. And I suppose it just makes it more convenient for them to each be operating with their own particular packet of instructions, so that they don't have to pass it around if somebody has a question during deliberations.

Q. And it is a typical case where the jury if the judge had a procedure of giving a jury of 12 separate packets of jury instructions, would it be your practice to review each of the 12 copies page by page, or would you review one and assume that the others were exact duplicates?

A. I would have no reason to dispute a sitting judge in Hennepin County if he was giving them copies of what he had already instructed the jury on.

Q. Okay. So I assume you are saying that asking for additional copies does not require a courtroom proceeding?

A. No.

Q. And when jurors are informed they already have the law, would that -- your understanding of the case law and the Rules in 1993 have said that requires a courtroom proceeding?

A. The Rules and the case law in 1993 I believe supported the procedure that Judge Lynn followed with respect to the two notes in question.

Q. And if you had thought that Judge Lynn was doing something that violated the Rules or violated case law or violated the State or Federal Constitution, would you have done something?

A. Absolutely. And not only would I have, but I know you would have, because we worked in tandem and were very concerned about making sure that everything was followed correctly and that the defendant would get a fair trial given the high-profile. Any trial we would do it, but this was certainly a high-profile case.

Q. And would it be accurate to say that when prosecutors who are experienced try a criminal matter that they are not only concerned with prosecuting the case as effectively as they can, but also to make sure that the defendant is given a fair trial and, finally, to make sure that the case is one that would withstand appeals?

A. Absolutely.

Q. The responses that Judge Lynn made to the juror questions, were they unusual responses in any way?

A. No. I don't know whether -- the answer to your question is no. Whether Mr. McGlennen or myself would have wanted to give any other answer other than what Judge Lynn testified he gave, I don't believe Judge Lynn could have.

Q. Okay. Did you recently review the file at the Supreme

Court?

A. The District Court file?

Q. Yes.

A. Yes, I did.

Q. Now that would have been the file that would have been passed over from our District Court over to the Supreme Court for their review as part of their appellate review of this matter?

A. Yes.

Q. You indicated and I believe you offered into evidence an Affidavit from Mr. McGlennen attached to a Motion for a New Trial?

A. Yes, Exhibit 8 I believe.

Q. That is correct. And can you tell me where you found this particular Motion in the attached Affidavit?

A. There were three manila folders that were the District Court file, numbers one, two, and three in a box. And then there was a box of various transcripts of the entire proceeding. In one of the three manila envelopes as I combed through it last week, I came across Exhibit 8 and made copies of it for this proceeding.

Q. And Exhibit 8 as it appears before the Court today is it an exact duplicate of material you found at the Supreme Court?

A. It is.
Q. And does that Affidavit as I recall elude to jury questions?
A. Absolutely.
Q. Can you read off the pertinent language, please?
THE COURT: Counsel, that has been admitted into evidence and Mr. McGlennen has testified from it, so it is part of the Court record.
MR. WIDSETH: All right. Thank you, Your Honor.
By Mr. Widseth: (Continuing)
Q. Mr. Streitz, in 1993 or at any time once Judge Lynn, or if any judge, had called you regarding a jury question, and it appears that counsel from both sides were contacted from both testimony and from his notes, but you were asked the question from a judge relating to a jury question, is it appropriate for you to contact the defendant and let him know there is a jury question?
A. No. The judge will do that.
Q. The judge would call the defendant?
A. Oh, the defendant. I thought you meant defense counsel. I would never -- I can't communicate with a defendant.
Q. Is there clear law that prohibits that?
A. Yes.

Q. Could the judge call over and speak to the defendant?
A. No.
Q. Whose responsibility would it be?
A. Defense attorney's.
Q. Now if you had some defense attorney that didn't know what he was doing, would you maybe suggest to him that he should talk to his client?
A. Not only with respect to that particular issue, but any time that I feel it is necessary to guard the rights of a defendant so that the jury's decision is safeguarded I would point that out.
Q. Would you feel it would have been appropriate for you to tell Mr. McGlennen or Mr. Martinez, say, since you don't seem to know what you are doing maybe you should go talk to your client?
A. Those two attorneys are extremely experienced criminal defense attorneys and know how to try a case, and I don't believe they needed my assistance in those regards.
Q. The term ex parte when I look at the form of what it means and the substance of what it means, and I am wondering if it means to you that a judge cannot talk to either counsel about anything when neither one is present or if it is the substance of communicating some information to one party without communicating that

information to the other party?

A. They cannot do the latter.

Q. Okay. Do you feel that when we are talking about the "latter" that that was done at any time in this matter?

A. No. I believe Judge Lynn contacted the defense attorney first, then he contacted me with respect to the notes.

MR. WIDSETH: I don't have any other questions.

THE COURT: Thank you. Mr. Mckenzie.

ADVERSE REDIRECT EXAMINATION

By Mr. Mckenzie:

Q. As a prosecutor, are you aware that the elements of an offense must be submitted to a jury?

A. Yes.

Q. Exhibit 2, when you are reading that would you say that those are -- that the jury is asking or requesting the elements of these two -- of this I guess this charge or violation?

A. No. They were given the elements of that particular charge.

Q. Okay. So if a jury goes into a jury room and they are doing their business in deliberating and they are confused as to what the law is or the elements are to that case and they ask, or they request, those elements

again, would it be the practice of the Court to resubmit those elements?
A. If the Court can't tell them anything then they have otherwise been provided, it is up to the jury to determine what the words in the elements mean.
Q. You said -- I am summarizing this. I don't want to misquote you. But I believe you said the Judge followed the Rules?
A. I believe Judge Lynn followed the Rules with respect to the notes in question.
Q. You also stated you reviewed the District Court file? Or you said the District Court file, right?
A. The District Court file regarding your case.
Q. Okay. In review of that file, did you ever come across Exhibits 2, 3 and I believe it was 4?
A. They are in there file stamped that they were received back on October 26th, 1993.
Q. So you reviewed them? So you saw these notes prior to this hearing when -- I don't know what date you reviewed this trial?
A. Last week after our first session.
Q. Okay. So you saw these notes in that file?
A. Yes, last week.
Q. You stated that when you were dealing with an attorney, or defense counsel, who was doing something wrong or

not doing something correct, that you would have corrected him?

A. I believe so.

Q. Okay. In your conversations with Judge Lynn, at any time during that conversation did you ever say to him that there should be a hearing held with regards to Exhibits 2 and 3?

A. No.

Q. Do you feel you should have asked that question or guided him in the right direction to make sure a hearing was held with regards to --

MR. WIDSETH: Your Honor, I am going to object.

THE COURT: Sustained. It is an improper question, Mr. Mckenzie. Plus, it has been asked and answered before in a different form.

MR. MCKENZIE: Well, I have no more questions.

(Whereupon, the witness is excused.)

THE COURT: Anything further, Mr. Mckenzie?

MR. MCKENZIE: No, ma'am.

THE COURT: Anything further, Mr. Streitz?

MR. STREITZ: No, Your Honor.

THE COURT: The Court will consider this matter submitted and I will write a written opinion and send it to Mr. Mckenzie and Mr. Streitz. Thank you.

MR. STREITZ: Your Honor, do you want anything more from us, or not?

THE COURT: I don't need anything more. I have had my hearing that the Supreme Court has indicated I needed to have. All right, the matter is concluded.

MR. MCKENZIE: Will I be given a writ back or how long will I stay down here?

THE COURT: You will be given -- I am not holding you. So I think they will be sending you back shortly. I don't know what that means, but it is up to the Sheriff's Department. But I don't think they intend to keep you here very long.

(Whereupon, the proceedings concluded.)

STATE OF MINNESOTA
COUNTY OF HENNEPIN

CERTIFICATE

I, Carole J. Smith, Fourth District court reporter, hereby certify the foregoing one hundred fifty-seven (157) pages are a true and correct transcript of my stenographic notes taken on December 3, 2003, and December 16. 2003, in the city of Minneapolis, county of Hennepin, and state of Minnesota, before the Honorable Diana S. Eagon.

Signed this 23rd day of April, 2004.

Carole J. Smith
Carole J. Smith