00 CV 2350 PAM | JMM

EQUAL PROTECTION (Q)

SCANNED
JUL 2 9 2005
DG
U.S. DISTRICT COURT ST. PAUL

Q

## ARGUMENT

**I. THE PETITIONER IS ENTITLED TO A NEW TRIAL WHEN HIS FUNDEMENTAL RIGHT TO EQUAL PROTECTION IS DENIED IN THE CONTEXT OF THE GRAND JURY SELECTION PROCEDURES.**

**Standard of Review.**

To establish a prima facie showing that an equal protection violation has occured in the context of grand jury selection, the petitioner must establish that a distinctive group is one that is a recognizable, distinct class under-represented in the grand jury venire, and that the selection procedure is susceptible of abuse or is not racially neutral. **Castaneda v. Partida,** 430 US 482, 494.; **Eubanks v. Louisiana,** 97 S.Ct. 1221.

**I. Distinctive Group ; First Element.**

As is apparent that African-Americans in Hennepin County are a distinct class and are always underrepresented, 'in fact grand jury pools are rarley representative of the racial composition of our communities." **Minnesota Supreme Court Task Force on Racial Bias in The Judicial System pg. 32, May, 1993 Task Force Report.** A priam facie violation of the United States Constitutiuon's Equal Protection requirement that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs is clearly established in that the petitioner is an African-American and is a member of this distinct class/group. **Rose v. Mitchell,** 99 S.Ct. 2993; **U.S. v. Horne,** 4. 3d 579 at **588.** Similarily, the Eighth Circuit, the United States Supreme Court had readily acknowledged and establshed that the African-American group underrepresented is a distinctive and identifiable group. **U.S. v. Horne,** 4. 3d. 579 at588 (8th Cir. 1993); **United States v. Douglas,** 795 F. Supp. 909, 912 (N.D. Iowa 1991). Thus, it is well established that the petitioner is part of the distinctive and

identifiable group.

## II. Substantial Under-representation; Second Element.

Petitioner in this instant action presented to the trial court statistical evidence establishing substantial underrepresentation over a significant period of time in Hennepin County. The evidence clearly and explicitly established Africans-Americans constituted 36, 408 or 4.59% of the adult population in Hennepin County **App. A.**[1-2] and only 5 or 1.3% of African-Americans served on Hennepin County grand juries between July 1991-November 1993 **App. B.**, based on their 4.59% in Hennepin County, happenstance is unlikely to produce this massive disparity over a period of three years, a race neutral selection procedure should have produced at least 100 or more African-Americans on grand juries in Hennepin Couty. Hence, the 9 grand juries impaneled in which 5 African-Americans served between July 1991 through Novemeber 1993 (207 grand jurors) clearly shows substantial underrepresentation over a significant period of time when **compared** to the proportion of the group in the total population (36,408) to the proportion called to serve as grand jurors (5).

Similarily, the historical prima facie evidence presented to the court shows that between the years March 1968 through November 1994 shows that African-Americans were substantially underrepresented in Hennepin County grand jury venires over a period of 27 years. **App. C.**[2]

2. With a prima facie case made out the burden shifts to the state to rebut the presumption of unconstitutional action by showing that permissible racially neutral selection criteria and procedures have produced a **monochromatic result. Alexander v. Louisiana**, 405 US at **632.**

In fact, **chance** or **accident**, could hardly have accounted for the continous omission of African-Americans in Heneppin County for so long a period. Hence, the former statistical information is prima facie evidence that African-Americans were substantially underrrepresented over a significant period of time and/or the petitioner has proved by a fair preponderance of the evidence "by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors , over a significant peroid of time." **Castaneda v. Partida**, 430 US 493. that African-Americans have/were substantially underrepresented in grand jury venires in Hennepin County.

## III. Selection Procedure that is Susceptible to Abuse; Third Element.

Once the first stage of the 'random selection" procedure is complete, ( drivers license lists, State identification lists, Voters registration lists are used to compile the master juror list). The jury commissioner then mails to "every" prospective grand juror a qualification questionnaire and summons pursuant to **Jury Management Rule 807 (b) (3)** and the **Fourth Judicial District Jury Administration Plan. App. D. (pg. 2 § 8.**

Jury Management Rule 807 (b) **(3)** states in relevant part;
(b) The notice summoning the person to jury service and the questionnaire eliciting essential information regarding that person **shall** be:
(3) Providing basic backround information including age, **race**, gender..."
**See also. App. D.**

For well over 100 years, it has been well established that the criminal conviction of an African-American cannot stand under the Equal Protection Clause of the Fourteenth Amendment if it is based on an indictment of a grand jury from which Africna-Americans were excluded by reason of their **race.** **Strauder v. West Virginia,** 100 US 303; **Neal v. Delaware,** 103 US 370; **State v. County Bd. of Renville County,** 213 NW 545 (Minn. 1927) (discrimination

against persons qualified to serve as jurors, solely because of their race or color, is a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment). **See Also. State v. Dillard,** 157 NW 2d 75 ( discrimination against a racial group in the selection of grand jury denies persons indicted by that jury equal protection of the law). As far back as March 1968, there has been a consistent process of progressive and disproportionate reduction of the elgible African-Americans elgible to serve on grand juries in Hennepin County compared to the total of African-Americans in the total population at the selection procedure stage (stage two) unitl ultimately all Caucasian grand juries are selected to indict African-Americans as the same is in this instant action. As far back as 1953, the U.S. Supreme Court has expressley recognized that "**race indicium**" on jury questionnaire forms have provided a **clear** and **easy** opportunity for racial discrimination. **Whitus v. Georgia,** 87 S.Ct. 891. In **Whitus**, the court found that the selection system was susceptible to abuse where potential grand jurors were selected from segregated tax digest list, which also coded African-Americans with "c" behind each name.

Analogously, in **Avery v. Georgia**, 73 S.Ct. 891, the court found that the practice of placing potential jurors identification on yellow if they were African-Americans and on white if they were Caucasian. Similarily, the same scheme is being played out in the selection procedures by the jury commissioners in Hennepin County, the grand jury commissioner draws up its jury list from a race neutral procedures then it resorts to asking potential jurors their race at other stages in the selection process.[3]

3. The state may not draw up its jury list pursuantto neutral procedures but then rresort to discrimination at other stages in the selection process. **Batson v. Kentucky,** 476 US 79, 88

this system "obviosly ... makes it easier for those to discriminate who are of mind to discriminate." **Alexander v. Louisiana,** 92 S.Ct. 1221. Anytime a race indicator is visible on a jury questionnaire form that is being used to select prospective grand jurors after they have been randomly selected the opportunitY for discrimination is present and cannot be said it was not resulted to in this action, the actions of the jury commissioners in Hennepin County produces a "**selection procedure** that is susceptible of abuse or is not racially neutral and supports the presumption of discrimination raised by the statistical showing. **Supra at 630.** It is well establsihed as a matter of law that in cases in which the jury commissioners have had access to the **racial identity** of potential grand jurors while enegaged in the selection procedure/process, the U.S. Supreme Court has repeatedly found that the procedures constitutted a system impermissible, susceptible to abuse, and racial discrimination, in fact, the racial desigantion on the qualification forms for Henneeppin County grand jury service is **constitutionally impermissible** in that it provides a clear ans easy opportunity for racial discrimination, even though the mailing list for questionnaires was compiled from race-neutral or non-racial sources, the procedure still remains unconstitutional in that it denied the petitioner equal protection of the laws pursuant to US. Constitutional Amendment XIV, when the state indicted him opposite of the principles set out in **Strauder v. West Virginia,** 100 US 303; **Alexander v. Louisiana,** 92 S.Ct. 1221. **App. E. Rideau v. Whitley,** 237 F. 3d 472 at **488** (5th Cir. 2000) (the racial designation on both the **questionnaire** and the information card provided clear and easy opportunity for racial discrimination).

In this action, the jury commissioner, and other officials responsible for the selection of the grand jury panel, were under a constitutional duty to follow a procedure and/or course of conduct, which would not operate to discriminate in the selection of grand jurors on racial grounds. **Hill v.**

**State of Texas,** 62 S.Ct. 1159 at 1161. The racial indicator on the grand jury questionnaire form is prima facie evidence that they failed in that duty and supports the presumption of discrimination raised by the statistical showing.

Consequently, the indictment in this action must be quashed, this is the law that has been established by decisions/holdings of the United States Supreme Court spanning more than 100 years of the intepretation of **Equal Protection.** Specifically, in **Avery v. State of georgia,** 73 S.Ct. 891, in that case, the jury commissioners selected prospective jurors from the county tax returns, the list is then printed, the names of Caucasian persons on the list are printed in white tickets; the names of African-Americans are printed on yellow tickets, the tickets white and yellow are placed in a jury box. The U.S. Supreme Court opined "even if the white and yellow tickets were drawn from the jury box without discrimination, opportunity was avaliable to resort to it **at other stages in the selection process**"

The methods, and procedures, or rules used in the first stage of selecting grand jurors are non race neutral selection procedures in that all propspective grand jurors selected from race neutral master list are sent questionnaire forms with race indicators or race indiciums annexed to them.

The second stage of the selection procedure is where the unfair or inadequate procedures are used by the jury commissioner which creates a selection procedure that susceptible of abuse and is not racially neutral, there is no other possible/logical reason why African-Americans have been excluded from grand jury venires, and the grand jury venires gooing back as far as 1968. Against this backround the selection procedure or non-race neutral selection procedure by way of he questionnaire forms with the race indicator annexed to them supports the presumptiom of discrimination raised

by the statistical showing, chance and/or elementary principles of probability make it unlikely that a random selection procedure/process would at each stage would have consistently rduced the number of African-Americans in the grand jury venires (July 1991- Nov. 1993). Under such system discrmination purposeful discrimination is prevelant and/or proved and it shows that the jury commissioner has created a defect in the design of the Hennepin County selection system that produces a disproportionate number of single race grand juries, and thus has the same effect as if the exclusion of African-Americans was intentional, this invidious discrimination, whether intended or unintented is devastaing in that it has caused the petitioner his libertym due to his indictment and conviction being unlawfully obtained by an unconstitutionally impaneled grand jury.

The opportunity for discrimination was and is currently present and the state nor the grand jury manager cannot say it was not resorted to, thus, if there has been discrimination, whether accomplished **intentional or unintentionalh, the conviction cannot stand as a matter of law.** Hill **v. State of Texas,** 62 S.Ct. 1159; **Whitus v. State of Georgia,** 87 S.Ct. 643; **State v. Dillard,** 157 NW 2d 75 (Discrimination need not be intantional to fall within the constitutional ban) ( If there has been discrimination, whether accomplished ingeniously or ingenuously, the conviction cannot stand). (Emphasis added). The petitioner has clearly established by a fair preponderance of the evidence that the selection procedures in this instant action has resulted in substantial underrepresentation where African-Americans represent a substantial percentage of the population, and the number of African-Americans slected to serve on grand juries has been gratly disproportionate to the ratio of African-Americans to the whole population that **comparison** supports the presumption of discrimination makes out a priam facie case of discriminatory purpose.

## IV. Equal Protection Violation.

In the courts order and memorandum at pg 5. **App. F.** The court uses the standard set out in **State v. Roan,** 532 NW 2d 563 (Minn. 1995) (Sixth Amendment fair cross section requirment) to evaluate the petitioners equal protection challenge; the courts reasoning and conclusions of law are erroneous.

To illustrate how the court erred as matter of law, the petitioner cites **United States v. Hanson,** 472 F. Supp. 1049 to explicitly show the petitioners claims should have been reviewed under the Equal Protection standard.

The court in its hoding stated in relevant part: "Although defendants have urged a vi9olation of **both** the Sixth Amendment and equal protection principles, they appear to have assumed that the standards under both are the same ... The Sixth Amendment right to a jury trial has been interpreted by the Supreme Court as requiring that gradn and petit juries be drawn from a pool that represents a fair cross section of the community ... Thus, the Sixth Amendment **is** concerned primarily with the defendant's right to be tried by a jury fairly representative of the community, not with the right of a particular minority group to be included in the jury pool, which is a seperate right protected by equal protection and due process principles.." The court goes on to opine, "... Equal protection and due process principles, as applied to jury selection, protect against arbitrary and discriminatory exclusion of jurors becuse of race, creed, national origin, and the like, a practice that is obviously abhorent to our constitutional tradition ... a three step analysis for determining when prima facie violation of Equal protection principles has been establsihed: The defendant must provee that (1) an identifiable, distinct class is involved; (2) that class is substantially under-represented in the source from which jurors are drawn; and (3) the jury selection system at issue is susceptible of abuse..." (Emphasis added).

Analogously, the U.S. Supreme Court opined in **Castaneda v. Partida,** 430 US at 509. "a defendant **has no right** to a representative **grand jury** that reflects a fair cross section of the community ... and the right to a representative grand jury is a federal right that derives not from the requirement of equal protection but from the Fifth Amendments explicit requirement of a gradn jury. That right is similar to the right-applicable to state proceedings- to a representative petit jury under the Sixth Amendment.

To the extent that the Fifth and Sixth Amendments are applicable, adefendant need only show that the jury selection procedure "systematically exclude[s] distinctive groups in the community and thereby fail[s] to be reasonably representative thereof... but in a **state case** in which the challenge is to the gran djury **only the Fourteenth Amendment applies**. (Emphasis added).

Moreover, in **Duren v. Missouri,** 439 US at 362 points out the proper standard for making a fair cross section claim. **Duren** explicitly shows the difference between an equal protection challenge and a fair cross section challenge **Supra at 439 at 366 n. 24** and **n. 26**, thus, it is clear that the fair cross section challenge is **not analogous to proof of a equal protection violation.** Hence, as a matter of law, the court in its memorandum and order pg. 5 abused its discretion when it mischaracterized the petitioners claim, the courts dismissive and strained interpretation of petitioners claim, and not giving full consideration to the substantive evidence petitioner put forth in support of the prima facie case, if the courts genral asertions are accepted as rebutting the petitioners prima facie case, the equal protectin clause would be but a vain and illusory requirement. If the trial court had applied the proper law to the petitioners cause/claims, the petitioner cause would have either been automatically reversed pursuant to precedent case law see.

**Strauder v. West Virginia,** 100 US 303; **Rose v. Mitchell,** 443 US 545; **Alexander v. Louisiana,** 405 US 631; **Castaneda v. Partida,** 430 US 497 and/or granted the proper relief under **Minn. Stat. § 590.04.**

V. Prejudice;

Petitioners cause of action is such that it characterized by the court as being in the catagory of structual errors which defy analysis under the harmless-error standanrd, and that so throughly impugn the structure of the criminal process, that its commission is revisable, a part from justice. **Vasquez v. Hillery,** 474 US at 264. The court stated in **Ford v. Norris,** 67 F. 3d 162 (8th Cir. 1995) "... that constitutional error involving racial discrimination in jury selection is **not subject to harmless error standard...**" the same is applicable to the case at hand in that the structual error effected the entire conduct of the trial from beginning to end. "examples of "structaul defects" include "unlawful exclusion of members of the defendant's race from a grand jury, ..." **Ford v. Norris, 67** F. 3d 162 at 170. Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundementally fair. The same holdings have been held in **Fulminate** court which noted, the court has previously held that the unlawful exclusion of black jurors from grandd jury based on race is a structual error. **Arizona v. Fulminate,** 499 US at 310, the **Vasquez** court stated that 'discrimination in the grand jury undermines the structual integrity of the criminal tribunal itself, and is not amenable to harmless error review." 474 US at 263-64

all of the above mentioned examples and/or cases apply to the petitioners cause which must be analyzed under the plain error standard set out in **Chapman v. State of Claifornia,** 386 US at 44 becuse the petitioners

substantive rights were violated by the impaneling of a grand jury not in accords with the principles set out in **Strauder v. west Virginia,** 100 US 303. this instant action must be reversed. Albeit, the court in **Rose v. Mitchell,** at 566 has established, ad hoc, that the presence **of the prejudicial** requirment necessary to support any claim, does in fact exist. The harm is not only to the accused indicated as he is by a jury from which a segment of the community has been excluded. it is society as a whole. The injury is not limited to the petitioner-there is injury to the system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts **Ballard v. U.S.** 329 US 187 at 195.

Petitioners claim is that he is a victim of racial discrimination, in violation of the Equal Protection Clause of the Fourteenth Amendment, in the selction of the Hennepin County grand jury that indicted him, and has shown by a fair preponderance of the evidence that the excusion of African-Americans in genral and/or from the grand jury that indicted him was devoid of African-Americans and constitutes substantial underrepresentation. Therefore, the purported authoritites upon which the petitioner depends/cites to support his bulwark, are distinguishable by reason of factual and/or lawful basis, thus, if the honorable court deems it necessary to establish the precedent of the "rare case' within the immediate jurisdiction, and alleviate the heavy burdens petitioner must carry in realizing the un-imaparable [end].

WHEREFORE, petitioner requests that the honorable cpurt grant the relief requested and further relief as may be proper.

# MINNESOTA POPULATION STATISTICS

| | 1990 Census | 1995 Estimate | Estimated Growth, 1990-95 | | |
|---|---|---|---|---|---|
| White | 4,130,395 | 4,220,050 | 89,665 | or | 2.17% |
| Black | 94,944 | 121,840 | 26,890 | or | 28.33% |
| Asian-Pacific | 77,886 | 101,280 | 23,394 | or | 30.04% |
| Native American | 49,909 | 57,090 | 7,181 | or | 14.39% |
| Other | 21,965 | 27,310 | 5,345 | or | 24.33% |
| **TOTAL** | 4,375,099 | 4,527,850 | | | |



EXHIBIT
B

E.
APP. A-1

FILED
04 DEC 23 AM 11:12
HENN. CO. DISTRICT
COURT ADMINISTRATOR

## HENNEPIN COUNTY POPULATION STATISTICS

| | Adults, 1990 | | Adults, 1995 (est.) | |
|---|---|---|---|---|
| White | 727,770 | 91.70% | 743,563 | 89.91% |
| Black | 36,408 | 4.59% | 46,772 | 5.65% |
| Asian-Pacific | 17,600 | 2.22% | 22,887 | 2.76% |
| Native American | 8,728 | 1.10% | 9,984 | 1.21% |
| Other | 3,116 | 0.39% | 3,874 | 0.47% |
| **TOTAL** | 793,622 | 100.00% | 827,030 | 100.00% |

EXHIBIT C

910/18058827 8/18/95

APP. A-2

**Hennepin County estimated African American population by age, 1991 to 1999**

| | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 |
|---|---|---|---|---|---|---|---|---|---|
| Under 15 | 22740 | 24481 | 26055 | 27672 | 29057 | 30342 | 31897 | 33868 | 35997 |
| 15 to 19 | 5148 | 5511 | 5970 | 6596 | 7247 | 7863 | 8367 | 9032 | 9625 |
| 20+ | 36625 | 39347 | 42159 | 45153 | 48043 | 50808 | 53764 | 57043 | 60929 |
| Total | 64513 | 69339 | 74184 | 79421 | 84347 | 89013 | 94028 | 99943 | 106551 |

Source: U.S. Census Bureau population estimates. Numbers do not reflect 2000 Census results.
http://www.census.gov/popest/datasets.html
Compiled by Minnesota State Demographic Center staff 4/11/2005
Hennepin_AfrAm1990s.xls

M.P.C.

# Hennepin County Grand Jury Composition by Race

*March 1968 - March 1991*

| | White | Black | Indian | Other |
|---|---|---|---|---|
| March 1968 | 21 | 2 | | |
| Sept 1968 | 21 | 2 | | |
| March 1969 | 21 | 2 | | |
| Sept 1969 | 21 | 2 | | |
| March 1970 | 19 | 3 | | 1 Japanese |
| Sept 1970 | 22 | 1 | | |
| March 1971 | 19 | 4 | | |
| July 1971 | 22 | 1 | | |
| Nov 1971 | 21 | 2 | | |
| March 1972 | 23 | | | |
| July 1972 | 22 | 1 | | |
| Nov 1972 | 22 | 1 | | |
| March 1973 | 21 | 2 | | |
| July 1973 | 21 | 2 | | |
| Nov 1973 | 21 | 2 | | |
| March 1974 | 21 | 2 | | |
| July 1974 | 23 | | | |
| Nov 1974 | 23 | 2 | | |
| March 1975 | 21 | 1 | | |
| July 1975 | 22 | | | |
| Nov 1975 | 23 | | | |
| March 1976 | 21 | 2 | | |
| July 1976 | 23 | | | |
| Nov 1976 | 22 | 1 | | |
| March 1977 | 23 | | | |
| July 1977 | 22 | 1 | | |
| Nov 1977 | 23 | | | |
| March 1978 | 22 | | | |
| July 1978 | 22 | | | 1 Japanese |
| Nov 1978 | 20 | | 2 | 1 |
| March 1979 | 22 | | | |
| July 1979 | 23 | | | |
| Nov 1979 | 23 | | | |
| Mar 1980 | 22 | 1 | | |
| July 1980 | 23 | | | |
| Nov 1980 | 18 | 4 | 1 | |
| March 1981 | 21 | 2 | | |
| July 1981 | 21 | 1 | 1 | |
| Nov 1981 | 22 | 1 | | |
| March 1982 | 21 | 1 | | 1 Vietnamese |
| July 1982 | 23 | | | |
| Nov 1982 | 23 | | | |
| March 1983 | 23 | | | |
| July 1983 | 21 | 1 | | 1 |
| Nov 1983 | 22 | 1 | | |
| March 1984 | 22 | | | |
| July 1984 | 23 | | | |
| Nov 1984 | 23 | | | |
| July 1985 | 23 | | | |
| Nov 1985 | 22 | | | 2 |
| March 1986 | 23 | | | |
| July 1986 | 23 | | | 1 |
| Nov 1986 | 21 | 2 | | |
| March 1987 | 21 | 2 | | |
| July 1987 | 24 | 1 | 1 | |
| Nov 1987 | 23 | | | |
| March 1988 | 23 | | | |
| July 1988 | 21 | 2 | | |
| Nov 1988 | 23 | | | |
| March 1989 | 21 | 1 | | 1 Arab 1 Asian |
| July 1989 | 23 | | | 1 Indian/India |
| Nov 1989 | 19 | 2 | | 1 Spanish Surname |
| March 1990 | 20 | 1 | 2 | |
| July 1990 | 20 | | | |
| Nov 1990 | 23 | | | |
| March 1991 | 23 | | | |
| Total | 1440 (94.86%) | 59 (3.89%) | 7 (.46%) | 12 (.79%) |

EXHIBIT

Source: Hennepin County District Court Administration April 1991

APP. D.

FILED
04 DEC 23 AM 11:12
HENN. CO. DISTRICT COURT ADMINISTRATOR
DEPUTY

# FOURTH JUDICIAL DISTRICT

# JURY ADMINISTRATION PLAN

Revised January 2, 2004

INDEX


| | | Page |
|---|---|---|
| 1. | JURY POLICY STATEMENT | 1 |
| 2. | PROHIBITION OF DISCRIMINATION | 1 |
| 3. | MANAGEMENT OF JURY SELECTION PROCESS | 1 |
| 4. | JUROR SOURCE LIST | 1 |
| 5. | JUROR MASTER LIST | 2 |
| 6. | QUALIFICATION QUESTIONNAIRE/SUMMONS TO APPEAR | 2 |
| 7. | RANDOM SELECTION OF NAMES FOR PETIT JURY SERVICE | 2 |
| 8. | LIST OF PROSPECTIVE JURORS | 2 |
| 9. | RANDOM SELECTION OF NAMES FOR GRAND JURY SERVICE | 3 |
| 10. | DISQUALIFICATION FROM JURY SERVICE | 3 |
| 11. | EXCUSES FROM JURY SERVICE | 4 |
| 12. | EXCUSES FROM JURY SERVICE FOR LEGISLATIVE EMPLOYEES | 4 |
| 13. | DEFERRAL OF JURY SERVICE | 4 |
| 14. | FAILURE TO APPEAR FOR JURY SERVICE | 5 |
| 15. | COMMON POOL OF JURORS | 5 |
| 16. | JUROR ORIENTATION | 5 |
| 17. | JUROR USAGE | 5 |
| 18. | PLACING OF NAMES ON LISTS | 6 |
| 19. | PRESERVATION OF RECORDS | 6 |
| 20. | LENGTH OF SERVICE BY JURORS | 6 |
| 21. | JUROR COMPENSATION | 6 |

## 1. JURY POLICY STATEMENT

It is the policy of the Fourth Judicial District that all persons selected for jury service shall be selected at random from the broadest feasible cross-section of the population of Hennepin County. Qualified citizens have an obligation to serve as jurors when summoned for that purpose. This plan shall apply to both Grand and Petit jurors except where noted.

## 2. PROHIBITION OF DISCRIMINATION

A citizen shall not be excluded from jury service in this county on account of race, color, creed, religion, sex, national origin, marital status, status with regard to public assistance disability, age, occupation, physical or sensory disability, or economic status.

## 3. MANAGEMENT OF JURY SELECTION PROCESS

The Court Administrator of the Fourth Judicial District shall perform the duties and responsibilities as Jury Commissioner under this plan to manage the juror selection process under the supervision and control of the Chief Judge of the District Court.

## 4. JUROR SOURCE LIST

The voters registration list, drivers license list, and state identification list are the source list of prospective jurors.

The Minnesota State Information Systems Office will compare these three lists and duplicate names are considered only once so that each prospective juror has an equal opportunity to serve. The combined list is cross-referenced with the State's vital statistics death records and any matching names are removed from the juror source list.

## 5. JUROR MASTER LIST

From the source list, approximately 40,000 names annually are randomly selected by the computer and maintained as the master list. Additional names may be randomly selected throughout the year whenever an insufficient number of names remains on the master list from which to select prospective jurors.

## 6. QUALIFICATION QUESTIONNAIRE/SUMMONS TO APPEAR

Prospective jurors are mailed a combined Qualification Questionnaire/Summons as shown in Appendix A to appear at a specific time and date for jury service. The combined Qualification Questionnaire/Summons is used to ascertain statutory disqualification and to capture voluntary demographic information. Prospective jurors are instructed to fill out and return the Qualification Questionnaire within ten days of receipt.

## 7. RANDOM SELECTION OF NAMES FOR PETIT JURY SERVICE

A sufficient number of prospective jurors are randomly selected, by computer, from the master list to meet the needs of the court. These jurors constitute the weekly jury pool.

## 8. LIST OF PROSPECTIVE JURORS

All lists used in the jury selection process are maintained locally on Jury Systems Incorporated's, Jury Next Generation computer system. The system is a Local and State Network which is secured and routinely backed-up.

The answers to all questions and demographics on the juror qualification forms are retained on Jury Systems Incorporated's Jury Next Generation computer system. The physical questionnaires are retained by date received.

Juror profiles which include: name, date of birth, race, marital status, occupation, spouse's occupation, annual family income, education level, children's ages, and zip code are routinely made available to attorneys for use during the voir dire process. Other information is available only with a court order.

Names of qualified prospective jurors and the contents of juror qualification forms in the jurors automated file shall be made available to the public upon specific request to the court, supported by an affidavit setting forth the reasons for the request, unless the court determines in any instance that this information in the interest of justice should be kept confidential or its use limited in whole or in part.

## 9. RANDOM SELECTION OF NAMES FOR GRAND JURY SERVICE

Grand jurors are randomly selected, by computer, from the master list. They are mailed a combined Questionnaire/Summons as shown in Appendix B to appear at a specific time and date also explaining the duties and responsibilities of Grand Jury service and outlining the procedure for excuses. The Jury Commissioner will summon a sufficient number of people insure that 23 Grand Jurors and alternates will appear as ordered.

## 10. DISQUALIFICATION FROM JURY SERVICE

The Jury Commissioner, or his designated representative, shall review the qualifications of prospective jurors from the returned Qualification Questionnaire to determine qualifications for jury service. If a person indicates on the Qualification Questionnaire that he or she is any one of the following, he or she is disqualified from service as a juror and shall not be required to serve:

1. Is not a citizen of the United States.
2. Is not at least 18 years old.
3. Is not a resident of Hennepin County.
4. Is unable to communicate in the English language.
5. Is not physically and mentally capable of rendering satisfactory service.
6. Has been convicted of a felony and has not had their civil rights restored.
7. Has served as a state or federal juror anywhere in Minnesota within the past two years.
8. Is a judge currently serving in the judicial branch of government.

A prospective qualified juror who is 70 years of age or older, who requests to be excused shall be excused without evidence of an inability to serve.

## 11. EXCUSES FROM JURY SERVICE

A person may be excused from jury service if:

1. Their inability to receive and evaluate information is so impaired as to make it impossible for them to act as jurors, or
2. They have a continuing, extreme hardship situation which would represent an obvious inability to serve as a juror.

Excuses may be granted by the jury commissioner or his designee. Every effort will be made to defer a juror, rather than grant excuses.

## 12. EXCUSES FROM JURY SERVICE FOR LEGISLATIVE EMPLOYEES

A member, officer or employee of the legislature is excused from jury service while the legislature is in session and service will be deferred to a later date.

## 13. DEFERRAL OF JURY SERVICE

Any Petit Juror summoned according to this plan may ask, either orally or in writing, to be given a deferral. If the reason given is deemed reasonable according to this plan, the juror will be granted a deferral to a more convenient date acceptable to the court by the Jury Commissioner or his designated representative. Reasons deemed reasonable include:

1. Temporary health problems.
2. Conflict with vacation plans.
3. Employment conflicts, such as planned trips or seasonal workload fluctuations.
4. To allow more time to arrange for child care or transportation.
5. To accommodate pre-scheduled medical appointments.
6. Other hardships of a temporary nature.

Any deferred juror will receive a letter to confirm the postponement.

## 14. FAILURE TO APPEAR FOR JURY SERVICE

Prospective jurors who fail to appear pursuant to a Summons or Notice to Appear are contacted by telephone to explain their non-compliance. A letter requesting compliance is mailed to all jurors who fail to appear and were not contacted by telephone. The Chief Judge may issue a Bench Warrant, to be served by the Sheriff, ordering the prospective juror to appear before the court to show good cause for the failure to appear.

## 15. COMMON POOL OF JURORS

Petit jurors summoned to appear according to this plan serve downtown and all suburban locations.

## 16. JUROR ORIENTATION

On their first day of service, jurors are given a Jury Handbook which explains their term of service. They will also view a video presentation further explaining their service. Following this presentation, jury personnel will highlight important information and answer any questions.

## 17. JUROR USAGE

When a judge needs a panel for trial, that judge calls the jury office and requests a specific number of jurors. The jury staff enters the number requested into Jury System Incorporated's Jury Next Generation computer system.

Random and alphabetical lists of the panel jurors and juror profiles are printed for use in the courtroom. An Officer of the Court escorts the panel to the courtroom and places them under the control of the judge.

All judges are trained in the proper usage of jurors throughout the course of the trial.

## 18. PLACING OF NAMES ON LISTS

No name shall be placed on the source list, master list, pool list, Grand Jury list, or Petit Jury venire except pursuant to rule and the provisions of this plan.

## 19. PRESERVATION OF RECORDS

All lists mentioned in this plan are retained by the Court Administrator for the required retention period.

## 20. LENGTH OF SERVICE BY JURORS

A person shall not be required to serve or to attend court for prospective service as a Petit Juror for more than two weeks, except as necessary to complete a specific trial.

## 21. JUROR COMPENSATION

Grand or Petit jurors are compensated for jury service at a rate determined by the Supreme Court for each day of required attendance, plus mileage for round-trip travel between their residence and the Hennepin County Government Center. This compensation is paid out of the State Treasury upon authorization from the Jury Commissioner or his designee.

B. APP. E. 1

You are hereby notified that you have been selected pursuant to the law to serve as a grand juror in the District Court of Hennepin County. You are required to appear at the Hennepin County Government Center, 300 South Sixth Street, in the City of Minneapolis, On:

FILED

04 DEC 23 AM 11:14

Kevin S. Burke, Chief Judge of District Court

DEPUTY
HENN. CO. DISTRICT
COURT ADMINISTRATOR

Report To:

Tear Apart Here. RETURN the lower portion and BRING the upper portion with you.

## Qualification Questionnaire for Hennepin County Grand Jury Service

*Court Rules require that we ask the following questions A) to determine your qualifications for jury duty and B) to ensure efficient management of our jury system. Minnesota Statute §593.40, Subd 4, states that anyone failing to return a jury questionnaire pursuant to the Court's order without good cause is guilty of a misdemeanor.*

GRAND JURY

### Section A:

| Yes | No | |
|---|---|---|
| ☐ | ☐ | Are you a citizen of the United States? |
| ☐ | ☐ | Are you at least 18 years old? |
| ☐ | ☐ | Are you a resident of Hennepin County? |
| ☐ | ☐ | Are you able to communicate in English? |
| ☐ | ☐ | Do you have a physical or mental disability that would affect your ability to serve on a jury? If "Yes," explain here: (A medical statement may be required.) ____________ |
| ☐ | ☐ | Have you ever been convicted of a felony? |
| ☐ | ☐ | If 'Yes,' have you completed your sentence or probation/parole/supervised release? |
| ☐ | ☐ | Have you been on jury duty, in Minnesota, within the last four years? If 'Yes,' when and where ____________ |
| ☐ | ☐ | Are you a Judge of the Judicial Branch? |

If you are age 70 or older you may __serve__ on jury duty OR __you may be excused.__
**Do you wish to be excused?** ☐ Yes ☐ No

*Please print any changes in name/address*

Last Name ____ First Name ____ Middle ____

Address ____

City ____ State ____ ZIP ____

GRAND JURY

### Section B:

**Race: Mark one or more races to indicate what race you consider yourself to be.**
- ☐ American Indian or Alaska Native
- ☐ Asian
- ☐ Black or African American
- ☐ Native Hawaiian or other Pacific Islander
- ☐ White
- ☐ Some othe race

**Are you of Spanish/Hispanic/Latino origin or descent? (mark one)**
- ☐ Yes
- ☐ No

**Marital Status:**
- ☐ Unmarried
- ☐ Married

**Spouse's Occupation:** ____________

**Annual Family Income**
- ☐1 Less than $15,000
- ☐2 $15 - $29,999
- ☐3 $30 - $44,999
- ☐4 $45 - $59,999
- ☐5 $60 - $74,999
- ☐6 $75 - $89,999
- ☐7 $90,000 or greater

**Gender**
- ☐ Male
- ☐ Female

**Ages of Children:** ____________

**Education**
- ☐1 Less than High School diploma
- ☐2 High School diploma or GED
- ☐3 Some college, vocational or other additonal education
- ☐4 Bachelor's/vocational or equivalent degree
- ☐5 Master's/Advanced or equivalent degree

**Home Phone:** (____)____________

**Work Phone:** (____)____________

**Your occupation:** ____________

**Sign and RETURN this completed questionnaire within 10 days.**

**"A person who willfully misrepresents a material fact on a juror qualification form for the purpose of avoiding or securing a service as a juror is guilty of a misdemeanor." You MAY be required to provide additional documentation to support any of the above answers.**

**Signed:** ____________ **Date:** ____________

HC 2808 (1/03)

APP. E. 2

*juror in the District Court of Hennepin County. You are required to appear at the jury assembly room located on the 'A-level' of the Hennepin County Government Center in the City of Minneapolis beginning at 8:15 am on:*

*Kevin S. Burke, Chief Judge of District Court*

FILED
04 DEC 23 AM 11:12
DEPUTY
HENN. CO. COURT ADMINISTRATOR

BRING THIS SUMMONS with you each day of jury duty.

**You may postpone your appearance date ONCE, for up to 6 months. Call 612-348-3158 or submit your request in writing.**

* Important Information found on the back.

Cut Apart Here. **SAVE** the upper portion and **RETURN** the lower portion.

# Qualification Questionnaire for Petit Jury Service

*Court Rules require that we ask the following questions A) to determine your qualifications for jury duty and B) to ensure efficient management of our jury system. Minnesota Statute §593.40, Subd 4, states that anyone failing to return a jury questionnaire pursuant to the Court's order without good cause is guilty of a misdemeanor.*

## Section A:

| Yes | No | |
|---|---|---|
| ☐ | ☐ | Are you a citizen of the United States? |
| ☐ | ☐ | Are you at least 18 years old? |
| ☐ | ☐ | Are you a resident of Hennepin County? |
| ☐ | ☐ | Are you able to communicate in English? |
| ☐ | ☐ | Do you have a physical or mental disability that would affect your ability to serve on a jury? If "Yes,' explain here: (A medical statement may be required.) ______ |
| ☐ | ☐ | Have you ever been convicted of a felony? |
| ☐ | ☐ | If 'Yes,' have you completed your sentence or probation/parole/supervised release? |
| ☐ | ☐ | Have you been on jury duty, in Minnesota, within the last four years? If 'Yes,' when and where ______ |
| ☐ | ☐ | Are you a Judge of the Judicial Branch? |

*Please print any changes in name/address*

Last Name ______ First Name ______ Middle ______

Address ______

City ______ State ______ ZIP ______

If you are age 70 or older you may serve on jury duty OR you may be excused.
**Do you wish to be excused?** ☐ Yes ☐ No

## Section B:

**Race: Mark one or more races to indicate what race you consider yourself to be.**
- ☐ American Indian or Alaska Native
- ☐ Asian
- ☐ Black or African American
- ☐ Native Hawaiian or other Pacific Islander
- ☐ White
- ☐ Some other race

**Are you of Spanish/Hispanic/Latino origin or descent? (mark one)**
- ☐ Yes
- ☐ No

**Marital Status:**
- ☐ Unmarried
- ☐ Married

**Spouse's Occupation:** ______

**Annual Family Income**
- ☐1 Less than $15,000
- ☐2 $15 - $29,999
- ☐3 $30 - $44,999
- ☐4 $45 - $59,999
- ☐5 $60 - $74,999
- ☐6 $75 - $89,999
- ☐7 $90,000 or greater

**Gender**
- ☐ Male
- ☐ Female

**Ages of Children:** ______

**Education**
- ☐1 Less than High School diploma
- ☐2 High School diploma or GED
- ☐3 Some college, vocational or other additonal education
- ☐4 Bachelor's/vocational or equivalent degree
- ☐5 Master's/Advanced or equivalent degree

**Home Phone:** (____)______

**Work Phone:** (____)______

**Your occupation:** ______

**Sign and RETURN this completed questionnaire within 10 days.**

**"A person who willfully misrepresents a material fact on a juror qualification form for the purpose of avoiding or securing a service as a juror is guilty of a misdemeanor." You MAY be required to provide additional documentation to support any of the above answers.**

**Signed:** ______ **Date:** ______

HC 3789 (10/03)